UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN WILLIAMS, ET AL., | : | CASE NO. 3:01CV1398 (JGM) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTINE RAGAGLIA, ET AL., | : | |
| *Defendants*. | : | July 6, 2004 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEVER

INTRODUCTION

This case essentially presents seven separate lawsuits with the only common fact among the plaintiff being that they are all current or former employees of the Department of Children & Families ("DCF"). There are seven remaining plaintiffs in the 36-page, thirty three (33) count, 1878-paragraph Third Amended Complaint (Doc. # 57) that was filed on or about December 16, 2002. The remaining plaintiffs are Ryan Williams, Trevor Johnson, Irene Cohen, Alice Hood, Patricia Williamson, Regina Whilby and Benjamin Ohene.

Williams (Counts One through Three), Johnson (Counts Four through Six), Hood (Counts 14 through 16), Williamson (Counts 17 through 19) and Ohene (Counts 30-32) all allege causes of action pursuant to 42 U.S.C. § 1983 for disparate treatment, 42 U.S.C. § 1981 and Intentional Infliction of Emotional Distress. Cohen (Counts 10 through 13) has an additional count of wrongful discharge in addition to those cited previously. Whilby (Counts 20 through 25) is the lone plaintiff that has added causes of action

pursuant to Title VII (Count 24) and Conn. Gen. Stat. § 46a-60(a)(1) (Count 25) against DCF.

Based on the plaintiffs' depositions and answers to interrogatories, the following charts shows the nature of each case and the individual defendants to whom each case is directed:

| Plaintiff | Claim | Defendants | DCF Location |
|---|---|---|---|
| Williams | heavy case load, unsatisfactory evaluation, written warnings | Marcia Weaver<br>Debra Collins<br>Patricia Simpson<br>Kristine Ragaglia | Middletown<br>Milford<br>Meriden<br>Hartford |
| Trevor Johnson | denied union rep., discipline, heavy case load, unsatisfactory service evaluation | Nancy Wilcox<br>Janet Lyons<br>Gayle Hoffman<br>Mary Solerno<br>Patricia Simpson<br>Debra Collins<br>Kristine Ragaglia | Bridgeport<br>Norwalk<br>Bridgeport<br>Bridgeport<br>Meriden<br>Milford<br>Hartford |
| Cohen | termination, discipline, service rating | Leticia Lacomba<br>James Moore<br>Kristine Ragaglia | Unknown<br>Manchester<br>Hartford |
| Whilby | terminated | Beverly Hubblebank<br>Dorothy Hamilton<br>Judith Kallen<br>Wanda Estrella<br>Kristine Ragaglia | Bridgeport<br>Norwalk<br>Bridgeport<br>Hartford<br>Hartford |
| Ohene | constructive discharge | Michael Wood<br>Dorothy Hamilton | Hartford<br>Norwalk |
| Hood | denied promotion, supervisor did meet with her, threatened with termination, sexual advance | Ada Sanchez<br>James Moore<br>Rudolph Brooks<br>Linda Harris<br>Tara Lewis | Bridgeport<br>Manchester<br>Hartford<br>Hartford<br>Hartford |
| Williamson | denied promotion | Wanda Estrella<br>Kristine Ragaglia | Hartford<br>Hartford |

The nature of claims of the various plaintiffs vary greatly. As the above chart points out, plaintiff Williams claims his rights were violated based on having a heavy caseload, being charged with the misuse of a state vehicle, the denial of a request to be

2

transferred and the receipt of an unsatisfactory service rating. Johnson's claims include, among many items, that his right to petition his union was denied, that he received a verbal warning, that he was charged with poor work performance, that he was wrongfully criticized and received corrective counseling and that he was the recipient of an unsatisfactory service evaluation. He also alleges that he was terminated unfairly based on a poor performance evaluation.

The single claim by plaintiff Cohen was that she was terminated from state service. Plaintiff Hood complained that she was denied medical treatment and that she was the recipient of an unwanted sexual advance by a female supervisor. The lone complaint by Williamson is that she was denied a promotion. Although plaintiff Williamson identified no defendant in the complaint, she testified in her deposition that defendants Estrella, the Director of Personnel, and then Commissioner Ragaglia discriminated against her.

Plaintiff Whilby's complaint is that she was discharged from state service after being accused of misuse of state property. Among the claims of plaintiff Ohene are that he was disciplined for neglect of duty, that he was denied a promotional opportunity and that he was constructively discharged.

In Count 33 of the Third Amended Complaint, the plaintiffs collectively allege that all of the individual defendants engaged in a pattern of disciplining minority employees with greater frequency than white employees. The defendants have raised various affirmative defenses to the Third Amended Complaint.

Several defendants, Charles Frazier, Adrienne Barr, Phillip Obergon, Katherine Kolumpus, Janet Labelle and Lisa Damond, originally sued, were not included in the

Third Amended Complaint. One of the named defendants, Bernadette Uluski (¶ 2, page 3 of the Third Amended Complaint), however, was NOT cited by any of the plaintiffs in any of the paragraphs as discriminating against them in the Third Amended Complaint.

Six of the seven plaintiffs have named Kristine Ragaglia as a defendant in their respective action. Ragaglia, at the time of the action, was the Commissioner of the Department of Children and Families. The plaintiffs do not allege any specific conduct by Ragaglia, instead, she is simply an add-on defendant.

Only defendants Moore and Estella, both Human Resources personnel, were named as a defendant by three of the plaintiffs. There is no commonality among all the defendants other than they too, as the plaintiffs, are or were employed by DCF.

## ARGUMENTS

I. **THE LACK OF COMMONALITY AMONG THE NATURE OF THE CLAIMS AND THE DEFENDANTS NECESSITATES SEVERING THE CLAIMS TO AVOID UNFAIR CONFUSION AND PREJUDICE TO THE DEFENDANTS.**

The defendants request that the claims of the various plaintiffs be severed into separate trials because what this case essentially comprises is seven different disparate treatment lawsuits against different defendants.[1] It is established law that trial court possess wide discretion to manage its docket. Rule 21 of the Federal Rules of Civil Procedure authorizes the Court to sever claims against any party. This rule is premised on the notion that severance is appropriate if trying all the claims would result in unfair

---

[1] The defendants will challenge on summary judgment all of the claims by the plaintiffs because of a lack of evidence that many of the defendants had any personal involvement in the alleged claims, that many of the alleged act do not constitute an adverse action under the law, and the lack of any substantive showing discriminatory treatment based on race. However, to properly respond to the claims the defendants prefer that the cases be severed at this time.

4

prejudice, expedite the proceedings or provide for convenience. In a complex case with complex issues, justice is often best served if issues are severed. Ismail v. Cohen, 706 F. Supp. 243 (S.D.N.Y. 1989). The issue of prejudice includes the risk that admissible evidence against one defendant could contaminate the minds of the fact finder against other defendants. Then, there is also the additional risk that the presentation of divergent standards and different factual evidence could confuse the jury. Id. See also, Coleman v. Quaker Oats, 232 F.3d 1271 (9th Cir. 2000).

     A good illustration of these principles occurred in the Coleman case. In that case, ten (10) plaintiffs, all former employees of the Quaker Oats Company who were terminated through a reduction in force, sued the company alleging age discrimination. The employer moved to sever the cases, which the district court granted. In affirming the lower court's decision to sever the cases, the Ninth Circuit stated:

> The district court found that Quaker would be prejudiced by having all ten plaintiff's testify in one trial. Moorehouse v. Boeing Co., 501 F. Supp. 390, 393 (E.D. Pa. 1980)( stating that "even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that the defendant laid him off because of his age."). In addition, the district court emphasized the danger of jury confusion. **For each plaintiff, the jury would have had to examine individually his or her employment history as well as the explanations given by Quaker for not retaining him or her, explanations that would require the testimony of each employee's supervisors and raters.** Legal confusion was also likely because the plaintiff's had worked for Quaker in six different states. (Emphasis added).

Id. at 1296.

     The defendants submit that the same reasoning applies to the instant case. In the present case, most, if not all, of the plaintiffs worked in different DCF regions under different supervisors. The is minimal commonality among the defendants, not to mention the vast difference in the nature of the cases. For instance, plaintiff Whilby claims that

she was terminated within two months of her hire because she allegedly violated a work rule regarding the use of state equipment for personal use. Her claims implicate the federal law of Title VII, Connecticut state law and a constitutional claim involving equal protection.

Contrast Whilby's claim with that of Trevor Johnson, who alleges that a different set of defendants denied him the right to petition his union, gave him a verbal warning, gave him an unsatisfactory service rating and ultimately terminated him for poor work performance.  The evidence on these two contrasting claims, as with all of the other plaintiffs, will unfairly confuse the jury as it struggles to determine which evidence is imputed to which individual defendant.  Furthermore, because the nature of the claim against the individual defendants involve Section 1983 and 1981 claims, the verdict form will necessary require interrogatories relating to the substantive elements of a prima facie case as well as the defense of qualified immunity.  Further complicating the mix of claims is the case of plaintiff Ohene, who voluntarily resigned, but now claims that he was constructively discharged, thereby creating yet another legal standard for such a claim.[2]

Lastly, no doubt  plaintiff's counsel will argue that the underlying commonality among all the cases are the plaintiffs' contentions that African American DCF social workers are disproportionately disciplined as compared to similarly situated white employees. Mindful that this claim has not be brought directly against the agency (DCF), the plaintiffs cannot prove a claim of a civil conspiracy against any of the defendants based on statistical evidence because the plaintiffs have not designated an expert, nor

---

[2]  This plaintiff basically claims that he was treated differently than white employees to the point that he felt harassed and had to quit.  The defendants contest his claims.

have they disclosed through discovery any admissible statistical evidence to support such a claim. It is established law in this circuit that statistical evidence in a disparate treatment case is generally admissible if the requisite foundation is established. Hollander v. American Cyanamid Co., 172 F. 3d 193, 202 (2d Cir. 1999). However, before such statistical evidence is admissible the offering party must establish the reliability of any inferences to be drawn from the statistical evidence. Id. at 203.

In the Hollander case, the plaintiff brought an age discrimination claim for wrongful termination. In support of his case, the plaintiff sought to offer the statistical reports of an expert who had analyzed the terminations at the defendant's plant and was prepared to opine within a high degree of statistical certainty that age was a determining factor in the plaintiff's termination. Finding the expert's opinion based on raw statistics to be unreliable, the trial court excluded the experts' testimony. On appeal, the Second Circuit Court of Appeals affirmed the trial court ruling. Acknowledging the unreliability of raw statistics, the Court of Appeals stated the following:

> However, the Report's inference of discrimination **solely on the basis of the raw numbers is impermissible in the absence of any attempt to account for other causes of the . . . anomaly.** . . . Highlighting Gaudard's failure to account for explanations other than discrimination is the fact that both 60-69 and 70-79 level 9+ workforce increased moderately over the course of those years. In short, data presented by Gaudard's in this part of the report does not make it any more or less likely that Cyanamid is liable for age discrimination. (Emphasis added).

Id. at 203.

Similarly, in Delgado v. Achieve Global, 2000 Conn. Super LEXIS 3184 (November 15, 2000, Melville J), the Superior Court in the Judicial District of Fairfield at Bridgeport followed the reasoning in the Hollander case to exclude statistical evidence in a race discrimination case. The Superior Court's statement on this point is instructive.

7

In regard to the plaintiff's race discrimination claim, the plaintiff submitted an affidavit in which he avers that **he was one of the only Hispanics at the defendant's Stamford office**, that another Hispanic employee was denied a promotion, and that the defendant hired an unqualified male over a qualified black female. In addition he submitted a copy of the defendant's EEOC report for 1990 and its Affirmative Action Program for 1991. "Disparate treatment plaintiffs may introduce statistics such as circumstantial evidence of discrimination." Hollander v. American Cyanamid Co., 172 F.3d 192, 202 *cert. denied*, 120 S. Ct. 399, 145 L. Ed. 2d 311 (2d Cir. 1999). "However . . . [inferences] of discrimination, solely on the basis of the [*20] raw numbers is impermissible in the absence of any attempt to account for other cause of the . . . anomaly." 172 F.3d at 203. (Emphasis added).

Even if such evidence were admissible against the agency, that would necessarily work an unfair prejudice against the individual defendants who have no control over the discipline or personnel actions that occur outside their respective regions. How do the plaintiff's intend to impute to each individual defendant agency-wide personnel decisions? It takes no effort to imagine the confusion for the jury if such evidence were admissible.

## **CONCLUSION**

For all of the foregoing reasons, the court should grant the motion to sever and permit the cases to go forward separately. Furthermore, the defendants request a status conference with the court to discuss the status of each case.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-mail: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

The undersigned does hereby certify that on this 6th day of July, 2004 a true and accurate copy of the forgoing Defendants' Memorandum of Law in Support of Motion to Sever was sent by First Class United States mail, postage prepaid, to:

Christine A. Corriveau, Esq.
Miniter & Associates
100 Wells Street, Suite 1-D
Hartford, CT 06103

_____
Joseph A. Jordano
Assistant Attorney General

9