Page 1

```
 1            UNITED STATES DISTRICT COURT
 2              DISTRICT OF CONNECTICUT
 3   - - - - - - - - - - - - - - - - - - x
 4   RYAN WILLIAMS, TREVOR JOHNSON,         :
     NANA OKO DARKO, IRENE COHEN,           :
 5   ALICE HOOD, PATRICIA WILLIAMSON,       :
     SHENEANE RAGIN, REGINA WHILBY,         :
 6   F. JOSEPH OVIDE, JR., and              :
     BENJAMIN OHENE,                        :
 7                    Plaintiffs,           : Civil Action No.
                                            : 3:01CV1398(JBA)
 8                vs.                       :
                                            : September 20, 2002
 9   KRISTINE REGALIA, COMMISSIONER         :
10   CONNECTICUT DEPARTMENT OF              :
     CHILDREN AND FAMILIES, DEBRA COLLINS,  :
11   MARCIA WEAVER, BEVERLY HUBBLEBANK,     :
     DOROTHY HAMILTON, MARY SOLERA,         :
12   JUDITH KALLEN, PHILIPE OBERGON,        :
     WANDA ESTRELLA, KATHERINE KOLUMPUS,    :
13   JANET LA BELLE, JAMES MOORE,           :
     GAYLE HOFFMAN, ADRIENNE BARR, LISA     :
14   DAMOND, CHARLES FRAZIER, RUDOLPH       :
     BROOKS, ADA SANCHEZ, TARA LEWIS,       :
15   LINDA HARRIS, LETITCIA LACOMBA,        :
     PATRICIA SIMPSON, NANCY WILCOX,        :
16   JANET LYONS, BERNADETTE ULUSKI, and    :
     MICHAEL WOOD, IN THEIR OFFICIAL        :
17   And INDIVIDUAL CAPACITIES AND THE      :
     CONNECTICUT DEPARTMENT OF CHILDREN     :
18   AND FAMILIES,                          :
                      Defendants.           :
19   - - - - - - - - - - - - - - - - - - x
20         DEPOSITION of REGINA M. WHILBY
21         Taken at the request of the Defendants
     before Tiffany V. Pratt, a Court Reporter and Notary
22   Public within and for the State of Connecticut,
     pursuant to Notice and the Federal Rules of Civil
23   Procedure at the offices of Miniter and Associates,
     147 Charter Oak Avenue, Hartford, Connecticut, on
24   September 20, 2002, commencing at 2:30 p.m.
25
```

EXHIBIT NO. 2

Page 2

```
 1
    APPEARANCES:
 2
       For the Plaintiffs:
 3
          MINITER AND ASSOCIATES
 4        147 Charter Oak Avenue
          Hartford, Connecticut  06106
 5        (860) 560-2590
             By:  CHRISTINE E. CORRIVEAU, ESQUIRE
 6
       For the Defendants:
 7
          STATE OF CONNECTICUT
 8        OFFICE OF THE ATTORNEY GENERAL
          55 Elm Street
 9        Hartford, Connecticut  06141-0120
          (860) 808-5340
10           By:  JOSEPH A. JORDANO, ESQUIRE
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1           S T I P U L A T I O N S
 2
 3      IT IS STIPULATED by the attorneys for the
     parties that each party reserves the right to make
 4   specific objections in open court to each and
     every question asked and the answers given
 5   thereto by the witness, reserving the right to
     move to strike out where applicable, except as to
 6   such objections as are directed to the form of the
     question.
 7
 8
        IT IS STIPULATED and agreed between counsel
 9   for the parties that the proof of the authority of
     the Notary Public before whom this deposition is
10   taken is waived.
11
        IT IS FURTHER STIPULATED and agreed that the
12   reading and signing of this deposition is not
     waived and any defects in the Notice are waived.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1                    INDEX
 2   WITNESS:                                 PAGE:
     Regina M. Whilby
 3
        Direct Examination by Mr. Jordano        5
 4
              DEFENDANTS' EXHIBITS
 5              (for identification)
 6   EXHIBIT:                                 PAGE:
     3    Training Schedule                    28
 7
     4    E-mails                              39
 8
     5    CHRO release of jurisdiction letter,
 9        10/23/00                             42
10   6    Right to sue letter from Federal EEOC,
          11/19/02                             44
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
 1            (Deposition commenced:  2:30 p.m.)
 2
 3       REGINA M. WHILBY, Deponent, of 94 Liberty
 4   Street, Unit 9, Stamford, Connecticut 06902, being
 5   first duly sworn by the Notary Public, was examined and
 6   testified on her oath as follows:
 7
 8            DIRECT EXAMINATION
 9
10   BY MR. JORDANO:
11      Q   Would you please state your full name and spell
12   your last name for the record?
13      A   Regina M. Whilby, W-h-i-l-b-y.
14      Q   I think you already told us that you live in
15   Stamford.  You've already given that information to the
16   court reporter?
17      A   Yes.
18      Q   Have you ever had your deposition taken before?
19      A   No.
20      Q   It's pretty easy.  I'm going to ask you some
21   questions here.  There are a couple rules we need to follow
22   for the purpose of the record.  You need to audiblize your
23   answers so the court reporter can take down what's said
24   today, and if you forget and you give a head nod yes, no,
25   we'll just ask you is that a yes or no.
```

Page 14

1    Q  How did you get interested in applying to be a
2  social worker at DCF? Did you see an ad or did someone tell
3  you about it?
4    A  I'd been in the field prior to DCF for about
5  eleven years, and I decided that I wanted to make a specific
6  amount of money to take care of my children, so rather than
7  continue to go nonprofit, I thought I'd go for the State.
8    Q  And you applied and you were accepted?
9    A  Yes, I was.
10   Q  Did they send you to the academy for training?
11   A  Yes, they did.
12   Q  When did you start working for DCF as a social
13 worker?
14   A  I wasn't a social worker. I was a social worker
15 trainee.
16   Q  Okay. When you started as social worker trainee.
17   A  I want to say I was hired in January, but I have
18 to look at the dates specifically. I know it was only a
19 three-month period.
20   Q  January 2000?
21   A  I'm not sure of the start date.
22   Q  All right. Put a question mark, you're not sure.
23 As a trainee you went to the academy, and then you were
24 assigned to a region, I take it, or may have been assigned a
25 region and then went to the academy?

Page 15

1    A  Right.
2    Q  What region were you assigned to?
3    A  Bridgeport.
4    Q  Did you start working on cases and then go to the
5  academy, or did you go to the academy after being assigned
6  and then got a caseload?
7    A  Never got a caseload.
8    Q  Who at Bridgeport was assigned to be your
9  immediate supervisor, your social work supervisor?
10   A  I have to look in my -- I don't remember her name.
11   Q  You were assigned a supervisor?
12   A  Yes.
13   Q  You might see it in the complaint. When we look
14 at that, it might refresh your memory.
15   A  Okay.
16   Q  So you were assigned someone to supervise you?
17   A  I had a direct supervisor, and then she had a
18 supervisor.
19   Q  Was your direct supervisor, would that have been a
20 social worker supervisor?
21   A  Yes.
22   Q  And above them would have been a program
23 supervisor?
24   A  Yes.
25   Q  And then above that, the program director?

Page 16

1    A  Yes.
2    Q  You went to the academy. How long were you at the
3  academy?
4    A  I only think I was there for about maybe two
5  weeks. I was only employed for like two and a half months.
6    Q  All right. Now, did you work in the region for a
7  while before you went to the academy or did you go to the
8  academy right away?
9    A  Well, we had, like, meetings and trainings. I had
10 just got in. I was a trainee.
11   Q  So you were still in your working test period?
12   A  Yes, I was.
13   Q  I'm going to have you take a moment, if you would,
14 and I'm going to show you what's been marked as Exhibit 1
15 before you got here. And Exhibit 1, I'll represent to you,
16 is a copy of the second amended complaint in this case that
17 also includes yourself. Take a moment and look at that.
18   A  My supervisor's name is Beverly Hubblebank.
19   Q  I'm going to ask you about that. When you're
20 ready, if you would turn to page 2. There you go. Now,
21 look down at the list there and tell me, do you know
22 Mr. Williams?
23   A  You mean Ryan Williams?
24   Q  Yes.
25   A  I don't know anyone on here.

Page 17

1    Q  All right. Okay.
2    A  I know my cousin.
3    Q  Who is your cousin?
4    A  Shenean Ragin.
5    Q  Okay.
6    A  But she's no longer a part of this.
7    Q  I understand, but you recognize her name?
8    A  Yeah.
9    Q  Did you ever work with any of the plaintiffs in
10 the short time you were with DCF?
11   A  Can I backtrack a little?
12   Q  Sure.
13   A  You asked me do I know them. I know them now, but
14 prior to this --
15   Q  Prior to the lawsuit?
16   A  That's what you mean, right?
17   Q  Yes, prior to the lawsuit.
18   A  No, I didn't know anyone other than my cousin.
19   Q  Prior to your time you were separated at DCF, did
20 you work with them?
21   A  No.
22   Q  You're missing a page here, so I'm going to show
23 you my copy. Now, on page 3 -- your 3 is missing. We
24 missed a page when we copied -- you'll see beginning on A
25 right on through to 4DD, you'll see the defendants in this

Page 22

1  Ms. Kallen, was she a program supervisor?
2    A   I really don't know what their titles are.
3    Q   All right. And then Ms. Estrella.
4        You allege in paragraph 80: While a social worker
5  trainee, plaintiff Whilby was required to participate in
6  various training courses, on or about March 6, 2000, and
7  again on March 9, 2000. What type of courses were these?
8  Were these at the academy?
9    A   Yes.
10   Q   What types of courses were they?
11   A   The ones that they're talking about are the
12 computer trainings, which is the LINK.
13   Q   The LINK system?
14   A   But I took more than LINK.
15   Q   What else did you take?
16   A   We did a cultural diversity class, and I can't
17 remember the others. There's a whole calendar of classes.
18   Q   But the one on the computer was the LINK system?
19   A   Yes.
20   Q   The other ones were part of your overall training?
21   A   Yes.
22   Q   Then you allege in paragraph 81: Plaintiff Whilby
23 attended training classes in Hartford, Connecticut with
24 seven other social worker trainees under defendant Sharpe's
25 and Desmond's instruction, respectively. That would be

Page 23

1  Lisa Desmond, if I'm correct, right?
2    A   No.
3    Q   Okay. It was not Lisa Desmond?
4    A   No.
5    Q   Who are you referring to there?
6    A   There's a teacher. His last name was Desmond, and
7  it's a male.
8    Q   It's a male?
9    A   Yes.
10   Q   And then Miss Sharpe, what was her name?
11   A   Ramona Sharpe.
12   Q   Now, you say defendant Sharpe and Desmond. If you
13 look back here, if you would on this list --
14   A   They're not on that list.
15   Q   They're not on the list, are they?
16   A   No.
17   Q   Putting that aside for a moment, then you say
18 here, pursuant to Sharpe's -- I'll delete the word defendant
19 for the purpose of just reading it -- pursuant to Sharpe and
20 Desmond's direction, plaintiff Whilby and others were
21 required to access various web sites via the Internet to
22 learn use of said medium; is that correct?
23   A   I don't know what "medium" is.
24   Q   It means to learn how to use the computer, the
25 Internet.

Page 24

1    A   Yes.
2    Q   Did they direct you to various DCF sites to see
3  what the services were?
4    A   No.
5    Q   Do you know what web sites they sent you to?
6    A   They were just basically saying to surf the
7  Internet, mostly -- I mean, they -- just get comfortable,
8  because everyone there were pretty much beginners, so some
9  of the sites that were written on the board were Yahoo.com,
10 because that's a search engine, and, you know, other
11 people -- it was a very mixed class. Some people knew,
12 like, about electronic e-cards. At that point in my -- I
13 had never seen an electronic e-card.
14   Q   How many people in this class? About seven
15 others?
16   A   Yes.
17   Q   Do you remember who they were?
18   A   No.
19   Q   And then you say: Neither Sharpe nor Desmond
20 instructed plaintiff Whilby or other trainees that accessing
21 the Internet or checking private e-mail accounts was not
22 acceptable pursuant to DCF rules and regulations. Do you
23 see that? That's paragraph 84.
24   A   You're asking me if that's true or false?
25   Q   Yes. Is that accurate? It's an allegation that

Page 25

1  you made in this?
2    A   They never said we couldn't go on the Internet.
3  They told us to go on the Internet.
4    Q   Did they give you any parameters during the
5  training about what would be the proper or improper use of
6  DCF computers?
7    A   No.
8    Q   How long was the training class?
9    A   I don't remember specifically. Maybe like an hour
10 and a half.
11   Q   After the class, did you go back to your job or
12 did you continue to the academy?
13   A   You would be at the academy for two days and
14 then --
15   Q   At the office?
16   A   Yes, back and forth like that.
17   Q   How long after the training classes were you
18 separated from employment? Hours? Days? Weeks?
19   A   I don't understand the question.
20   Q   Well, you indicate that on the 6th and 9th of
21 March you went for the training.
22   A   Okay.
23   Q   And that part of that training was the computer
24 class where you -- you told me you were taught how to use
25 the computer system and you were told to search the net to

Page 26

1   get comfortable with it?
2       A   Right.
3       Q   Then my question is: What day were you actually
4   let go from DCF?
5       A   Isn't there the date -- March 15 I believe it was.
6       Q   Is it March 15?
7       A   Yes.
8       Q   Okay. So it would have been -- if the 9th was
9   your second day of training, it would have been seven days
10  later, about a week?
11      A   Oh, it says here attend a meeting at DCF -- I
12  think it was -- I don't remember the exact date that I was
13  terminated. I have my letter. I have all the information
14  here.
15      Q   You want to look at that to refresh your memory?
16      A   No, that's okay. You said you're going to go
17  there.
18      Q   We can go over it. Sure.
19      A   Oh, God.
20      Q   Now, you allege here that you attended another
21  training class on the 13th of March 2000. That's paragraph
22  85.
23      A   Yes.
24      Q   And then you claim that during class breaks said
25  trainees continued to access various web sites, including

Page 27

1   personal e-mail accounts with defendant Sharpe looking on?
2       A   Yes.
3       Q   Then you say: At this time, for the first time,
4   defendant Sharpe instructed plaintiff Whilby and other
5   trainees that they were not permitted to access the Internet
6   while on break?
7       A   Yes.
8       Q   So you were given some instructions about what to
9   search, but that's the first time you heard about it,
10  correct, on the 13th?
11      A   The 13th. The reason why she said it is because
12  people were basically doing what they had been doing all
13  along.
14      Q   Okay. And then you indicate that on the 14th you
15  were asked to appear for a meeting at DCF with Hubblebank,
16  Hamilton and Kallen; is that correct?
17      A   Yes. And there was also the lady from -- when
18  you're being terminated from your job, she's the union
19  representative; there was a union representative there.
20      Q   Okay. Do you remember her name?
21      A   No. She just looked like a biker. They couldn't
22  really represent me, because I -- she was just there.
23      Q   Okay. Now, do you feel comfortable that the
24  training sessions were on the 6th and the 9th and the 13th
25  of March?

Page 28

1       A   No.
2       Q   What dates do you think the training sessions were
3   regarding the training?
4       A   I would have to look at the -- I would need the
5   calendar to see -- you know, they have the calendar. I know
6   the calendar was a part of one of my things.
7       Q   Do you have that with you today? You can go back
8   and tell me that?
9       A   Yes, I do.
10      Q   Why don't you pull out what you have so we can
11  nail down some of these dates.
12          THE WITNESS: Do you want to see that?
13          MS. CORRIVEAU: Yes.
14          MR. JORDANO: Why don't we go off the record for a
15  minute.
16          (Off the record: 2:58 p.m. to 3:03 p.m.)
17  BY MR. JORDANO:
18      Q   Ms. Whilby, you had a chance to confer with your
19  counsel, correct?
20      A   Yes.
21      Q   I see you took a document out.
22          MR. JORDANO: Is it okay if we mark this?
23          MS. CORRIVEAU: Sure, or she can just use it to
24  refresh her recollection.
25          (Defendants' Exhibit 3 marked for

Page 29

1   identification; Training Schedule.)
2   BY MR. JORDANO:
3       Q   I'm showing you what's been marked Defendant's 3
4   for identification. What is that?
5       A   This is the schedule.
6       Q   Training schedule?
7       A   Yes.
8       Q   When you were employed by DCF?
9       A   Yes.
10      Q   Does that schedule indicate what dates computer
11  training occurred?
12      A   Yes.
13      Q   Could you tell me what those dates were?
14      A   The 16th.
15      Q   Of what month?
16      A   March.
17      Q   All right.
18      A   3/13.
19      Q   3/13?
20      A   Yes.
21      Q   Was there any training on 3/6 or 9?
22      A   Cancelled. 9 was cancelled.
23      Q   So 3/6, how about on 3/6?
24      A   Yes.
25      Q   So there was computer training on the 6th, the