Page 1

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE DISTRICT OF CONNECTICUT

3   -------------------------------x

4   RYAN WILLIAMS, ET AL,

5              Plaintiffs,

6      -versus-                  : No. 3:01CV1398(JBA)

7   KRISTINE REGAGLIA, ET AL,

8              Defendants.

9   -------------------------------x

10

11

12

13           Deposition of IRENE COHEN, taken

14  pursuant to The Federal Rules of Civil

15  Procedure, at the law offices of Miniter &

16  Associates, 147 Charter Oak Avenue, Hartford,

17  Connecticut 06106, before Larry Dorfman, LSR No.

18  62, a Notary Public in and for the State of

19  Connecticut, on June 26, 2003, at 1:05 p.m.

20

21

22

23

24

25                            EXHIBIT NO. 3

Page 4

```
 1   I R E N E    C O H E N,

 2         of 89 Melton Drive,

 3         East Hartford, Connecticut 06118,

 4   called as a witness, having been first duly

 5   sworn by Larry Dorfman, LSR, a Notary Public in

 6   and for the State of Connecticut, was examined

 7   and testified as follows:

 8   DIRECT EXAMINATION

 9   BY MR. JORDANO.

10         Q.   Please state your full name and spell

11   your last name for the record.

12         A.   Irene Cohen, C-O-H-E-N.

13         Q.   Ms. Cohen, I'm Joe Jordano and I am as

14   Assistant Attorney General and I represent the

15   Defendants in this case entitled Ryan Williams,

16   Et Al, Plaintiffs versus Kristine Regaglia, Et

17   Al, Defendants, to which I understand you are a

18   plaintiff; is that correct?

19         A.   Right.  You said you represent the

20   defendants?

21         Q.   The defendants, I do.

22              Have you ever been deposed

23   before?

24         A.   No.

25         Q.   It's pretty easy, relaxed.  I am going
```

Williams vs Regaglia

6/26/2003                                                                 Irene Cohen

Page 10

```
1     A.   I know it.
2     Q.   Was it any of the people I mentioned?
3     A.   No.
4     Q.   That was when you were in your
5  training period at the academy?
6     A.   Yes.
7     Q.   When you finished the academy, were
8  you assigned to Hartford?
9     A.   No.
10    Q.   Where did you first begin working?
11    A.   At Willimantic.
12    Q.   Who was your supervisor there?
13    A.   I was still in training.
14    Q.   Okay.
15    A.   I was assigned to the Willimantic
16 region for training.
17    Q.   After you finished your training
18 period?
19    A.   Then I went to Rockville.
20    Q.   Who was your supervisor in Rockville?
21    A.   Janet Labelle.
22    Q.   She was in Rockville?
23    A.   Yes.
24    Q.   She was a social worker supervisor?
25    A.   Correct.
```

Williams vs Regaglia

6/26/2003                                                      Irene Cohen

Page 14
1    supervisor whose name was Gary?
2        A.   Yes.
3        Q.   I am reading off your answers to
4    interrogatories you gave me.
5        A.   Right.  Can I back up?
6        Q.   Sure.
7        A.   After Sue Hamilton it was someone
8    else.
9        Q.   Okay.
10       A.   Someone else and then Dave.
11       Q.   All right.
12       A.   Then Gary.
13       Q.   Gary.  Okay.
14       A.   Then -- no.  Then --  I am sorry.
15   Then Gary.
16       Q.   Then Isabel?
17       A.   No.  Let me think about it.  It was
18   another supervisor.
19       Q.   I noticed in your answers there are a
20   couple of people in the list here that you might
21   have had for a short time.
22       A.   Right.
23       Q.   Other than when you initially began as
24   a case worker, did you ever work for Ms. Labelle
25   again?

```
 1       A.   No.
 2       Q.   So you would have worked for Ms.
 3  Labelle from '94 until '95 at some point?
 4       A.   Yes.
 5       Q.   Then you never worked directly under
 6  her again?
 7       A.   No.
 8       Q.   All right.  Is that a correct
 9  statement?
10       A.   Yes.
11       Q.   All right.  Now, remember, I sent to
12  you through your attorney some interrogatories
13  that you answered for me?
14       A.   Yes.
15       Q.   I asked you to identify the regions
16  where the alleged acts occurred and identify the
17  particular defendants who committed the acts,
18  and you indicate Region 6, now Region 4.  That's
19  Hartford, isn't it?
20       A.   No.  It was Rockville.  Now it's
21  Manchester.  That's all Region 4.
22       Q.   You are claiming discriminatory action
23  occurred in the Rockville office?
24       A.   Correct.
25       Q.   Then you say Region 6?
```

Williams vs Regaglia

6/26/2003                                                      Irene Cohen

Page 18

1   go over that, okay?

2              You indicate here that in 1994,

3   Janet Labelle refused to send documentation for

4   reclassification of plaintiff from trainee to

5   social worker.

6       A.   Yes.

7       Q.   All right.  Now that's when you

8   finished your working test period, and it would

9   have been after that?

10      A.   Yes.

11      Q.   And you were supposed to be a regular

12  social worker?

13      A.   It was before my working test period.

14      Q.   Tell me the background of that

15  incident.

16      A.   What had happened, when I started with

17  DCF, I had had human service experience and

18  finished my Master's degree at that point, and

19  then I was informed that I could apply for full

20  social worker status and not trainee.  I was

21  approved by the personnel department.

22      Q.   All right.

23      A.   Took the test, received a passing

24  grade.  Supervisor had to sign saying that she

25  would agree to it.  She said she would, but she

Williams vs Regaglia

6/26/2003                                                                   Irene Cohen

Page 19

```
 1   left the information and went on vacation.
 2        Q.   All right.
 3        A.   I approached the program supervisor
 4   and said that I believe that the individual,
 5   Janet Labelle, had forgotten, is my words,
 6   forgotten to send the paperwork.  She said, oh,
 7   congratulations, and I will sign off and send
 8   the papers.
 9        Q.   All right.  Did she do that?
10        A.   She did that, and I was approved and
11   got a higher level in social work.
12        Q.   Go ahead.  So your feeling was Ms.
13   Labelle, when she went on vacation, forgot to
14   send the paperwork?
15        A.   I think she left it on purpose.
16        Q.   How long was she going to be on
17   vacation?
18        A.   Two or three weeks.
19        Q.   All right.
20        A.   But it had to be in personnel by a
21   certain time.
22        Q.   Tell me what basis you have to believe
23   that, what evidence you have that she didn't
24   just forget it.
25        A.   Because she said that, oh, you got a
```

Page 20

1  promotion. What are you going to do with all
2  that money? I didn't respond because I didn't
3  think it was a whole lot of money. I didn't
4  think it was that great amount. I was not going
5  from a five figure to six figure salary. So I
6  didn't respond. And there was talk, quotes,
7  that someone else in our group, working group,
8  with her had also applied and was denied.
9       Q.   All right. First of all, what race is
10 Ms. Labelle?
11      A.   Caucasian.
12      Q.   All right. And who is the other
13 person who you understand in your group applied
14 to be a social worker?
15      A.   Caucasian.
16      Q.   Who was that?
17      A.   I can see her face. Maybe I am
18 nervous, I can't remember these names. I can't
19 think of her name.
20      Q.   You at least remember one Caucasian
21 employee who also wanted to be upgraded to
22 social worker, and your understanding is she was
23 denied?
24      A.   Right, because she told me she was
25 denied.