Williams vs Regaglia

6/26/2003                                                Irene Cohen

Page 1

```
 1    IN THE UNITED STATES DISTRICT COURT

 2    FOR THE DISTRICT OF CONNECTICUT

 3    -------------------------------x

 4    RYAN WILLIAMS, ET AL,

 5                Plaintiffs,

 6       -versus-                    : No. 3:01CV1398(JBA)

 7    KRISTINE REGAGLIA, ET AL,

 8                Defendants.

 9    -------------------------------x

10

11

12

13              Deposition of IRENE COHEN, taken

14    pursuant to The Federal Rules of Civil

15    Procedure, at the law offices of Miniter &

16    Associates, 147 Charter Oak Avenue, Hartford,

17    Connecticut 06106, before Larry Dorfman, LSR No.

18    62, a Notary Public in and for the State of

19    Connecticut, on June 26, 2003, at 1:05 p.m.

20

21

22

23

24

25
```

COPY

EXHIBIT NO. 3

1       Q.   All right.  But you were not denied?

2       A.   No.

3       Q.   And, in fact, the paperwork was sent

4   in by your supervisor and you got the promotion?

5       A.   It was sent in by her supervisor, not

6   my immediate.

7       Q.   Tell me what the basis for your

8   contention is that she didn't send it in because

9   of your race.

10      A.   Because she made other comments.

11      Q.   Like what?

12      A.   Some derogatory comments.  I try to

13  forget those kinds of things at the time.

14      Q.   She told you --

15      A.   And she also, when my -- when it's

16  time for her to evaluate me, the first time she

17  evaluated me she gave me good, you know, stuff,

18  appropriate, not superior.  And the second time

19  she tried to, when she did that, she tried to --

20  she put in some negative stuff, talking about

21  when I first came into the union -- I mean to

22  the unit, and that's when I had to get the union

23  and I have that, that's my witness.

24      Q.   Did you have any problems with any of

25  your social worker supervisors after Ms.

Page 22

```
 1   Labelle?
 2        A.   Not my immediate ones that I know of.
 3        Q.   Only one would have been Mr. Moore in
 4   Hartford, but he was a program supervisor; is
 5   that correct?
 6        A.   Correct.  I had other problems with
 7   supervisors in Hartford but after Mr. Moore,
 8   yes, there were others.
 9        Q.   But let's take it, so the only one you
10   had problems with is Ms. Labelle?
11        A.   Right.
12        Q.   All right.  And you claim you had
13   problems with Mr. Moore in Hartford?
14        A.   Yes.
15        Q.   All right.  And any other of your
16   immediate supervisors other than Ms. Labelle do
17   you claim discriminated against you?
18        A.   Yes, but I'm trying to think of her
19   name.  I can't think of her name.  I thought she
20   was unfair, but that was part of with Mr.
21   Moore.
22        Q.   That was all Mr. Moore's period?
23        A.   Yes.  During his period, some, you
24   know --
25        Q.   When do you first start working for
```

Page 23

1    Mr. Moore?

2        A.    In '96 when I went to Hartford.

3        Q.    All right. Was Mr. Moore in charge

4    the whole time you were there?

5        A.    Not the whole time, no.

6        Q.    When did he stop being your program

7    supervisor?

8        A.    Probably in '99.

9        Q.    '99?

10       A.    Yes.

11       Q.    All right. So I'm clear, your

12   problems with Ms. Labelle would have been '93 or

13   '94?

14       A.    Yes.

15       Q.    To '95?

16       A.    Not '93. It was '94. It was after

17   the new year.

18       Q.    To '95?

19       A.    Yes.

20       Q.    Then your problems with Mr. Moore

21   began in '96, in Hartford, to '99?

22       A.    Yes.

23       Q.    And in 1999, did Mr. Moore leave or

24   did he transfer?

25       A.    I understand he was transferred.

Page 24

1   Q.   All right. So he was no longer your
2   program supervisor?
3   A.   Correct.
4   Q.   Now, except for the -- after Ms.
5   Labelle went on vacation, did you approach your
6   program supervisor right away about your
7   paperwork?
8   A.   No.
9   Q.   How much time went by?
10  A.   Probably about a week.
11  Q.   Then you approached the person. Did
12  they send it in promptly, your program
13  supervisor?
14  A.   Correct.
15  Q.   So did you suffer any lost pay or
16  anything?
17  A.   No, because nothing -- Well, no.
18  Q.   All right. So basically --
19  A.   To be honest, I don't know because it
20  started when they get it.
21  Q.   I understand. But you did get it
22  promptly. Who was your supervisor who put it
23  in?
24  A.   I can't think of Anne's last name.
25  Q.   Anne somebody.

Page 34

1   A.   Right.  I would not say it's, as we
2   know, there are some things that are just
3   cultural and the cultural climate of a program
4   that's always unspoken, but you look around and
5   you see what happens.
6   Q.   What is this unspoken thing you are
7   referring to?
8   A.   That people of color do not get
9   promoted, even though they are qualified.
10  Q.   But in terms of your case --
11  A.   Yes.
12  Q.   -- you are not alleging any actions
13  against those others, Ms. Hamilton, Ms.
14  Rothenberg, David, whatever his name is, in
15  terms of mistreatment of you, discrimination?
16  A.   Not direct mistreatment, no.
17  Q.   But in 1997 when David, we don't know
18  what his last name is --
19  A.   Melchione.
20       MR. JORDANO:  Wherever you see
21  the David Melchione in the transcript, indicate
22  his name, David somebody, would you put in
23  Melchione so we know who it is?
24  BY MR. JORDANO:
25  Q.   At some point in '97, Mr. Melchione

```
 1   did an evaluation of you that was positive?
 2        A.   Yes.
 3        Q.   And you allege that Mr. Moore had him
 4   change it?
 5        A.   Yes.
 6        Q.   Tell me the basis for that.  How did
 7   you find that out?
 8        A.   Because it came -- because David said
 9   he changed it, he had him to change it.
10        Q.   Change it to what?
11        A.   To fair.
12        Q.   Fair.
13        A.   And there was some other, change them
14   to fair, mostly fair or something, and one
15   satisfactory, and then some comments, some low
16   comments, negative comments about my work
17   performance.
18        Q.   As a program supervisor, did Mr. Moore
19   have the power to put his own perceptions, his
20   opinions from his observations, into the
21   evaluation?
22        A.   He didn't have direct observation of
23   me as an individual for work experience.  What
24   he would know about me is based on what the
25   supervisor would tell him.  Correct or
```

Page 46

```
1   then termination?
2       A.   Correct.
3       Q.   All right.  Now, Ms. Labelle and Mr.
4   Moore, did they have any involvement in that
5   matter?
6       A.   I don't know.
7       Q.   Well, were you still under Mr. Moore's
8   direction at that time, 2000?  Was he still your
9   program supervisor?
10      A.   No.
11      Q.   He was gone?
12      A.   Yes.
13      Q.   You had not been under Ms. Labelle's
14  direct supervision for a number of years, since
15  '95?
16      A.   Right.
17      Q.   You had Ms. Laluz who was your -- who
18  was the program supervisor above her?
19      A.   Ray Madore.
20      Q.   All right.  Okay.  At some point you
21  say you were fired?
22      A.   Yes.
23      Q.   Who is the person that made that
24  decision, do you know?
25      A.   Personnel.
```