IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                                       :
RYAN WILLIAMS ET AL.                                   :        3:01 CV 1398 (JGM)
                                                       :
v.                                                     :
                                                       :
                                                       :
KRISTINE RAGAGLIA ET AL.                               :
                                                       :        DATE: JUNE 24, 2005
-------------------------------------------------------x
```

RULING ON DEFENDANTS' MOTION FOR [PARTIAL] SUMMARY JUDGMENT

On July 25, 2001, plaintiffs commenced this action (Dkt. #1), followed by an Amended Complaint on December 11, 2001 (Dkt. #31), a Second Amended Complaint on June 12, 2002 (Dkt. #40),and a Third Amended Complaint on December 18, 2002 (Dkt. #57). The seven remaining plaintiffs in the Third Amended Complaint are former employees of the Connecticut Department of Children and Families ["DCF"]; the twenty-one defendants include the DCF and twenty of its supervisors and administrators, including its then Commissioner, Kristine Ragaglia. (Dkt. #57, ¶¶ 3-4). The Third Amended Complaint now includes twenty-six counts, alleging violations of the Fourteenth Amendment and 42 U.S.C. § 1983, 42 U.S.C. § 1981, and intentional infliction of emotional distress by each of the seven plaintiffs against his or her various supervisors (Counts One to Three – plaintiff Williams, Counts Four to Six — plaintiff Johnson, Counts Ten to Thirteen — plaintiff Cohen,[1] Counts Fourteen to Sixteen – plaintiff Hood, Counts Seventeen to Nineteen – plaintiff Williamson, Counts Twenty to Twenty-five – plaintiff Whilby,[2] Counts Thirty to Thirty-two – plaintiff Ohene, and lastly Count Thirty-Three, brought under 42 U.S.C. § 1983 by all

_____

[1] The additional count (Count Twelve) is for wrongful discharge.

[2] The additional counts (Counts Twenty-three through Twenty-five) are for wrongful discharge, and Title VII and CONN. GEN. STAT. § 46a-60(a)(1) claims against defendant DCF.

plaintiffs against all individual defendants).[3]   The only defendants named in Counts Thirty

to Thirty-two are Commissioner Ragaglia and Michael Wood, a DCF Human Resources

Representative. (Third Amended Complaint, ¶¶ 4.A & T, 99-104, 876-938).

On March 3, 2003, the parties consented to trial before this Magistrate Judge.  (Dkt.

#65).   The deadline for the completion of discovery was extended on several occasions,

until June 1, 2004.   (See Dkt. #67 & 5/21/03 endorsement thereon, #70 & 8/14/03

endorsement thereon, ##71-76).   At a settlement conference held on September 29, 2004,

counsel agreed that defendants' Motion for Summary Judgment with respect to plaintiff

Ohene would be filed by January 31, 2005.  (Dkts. ##82, 84-85.  See also Dkts. ##77-81,

83, 86).   After obtaining  two extensions of time (see Dkts. ##87-90), on March 16, 2005,

defendants filed the pending  Motion for [Partial] Summary Judgment, with respect to

plaintiff Ohene, Local Rule 56(a)(1) Statement of Facts, and brief in support.[4]  (Dkts. ##91-

---

[3]On June 10, 2003, defendants' Motion for Default Judgment against plaintiffs Darko and
Ovide was granted (Dkts. ##68-69), thus eliminating Counts Seven to Nine – plaintiff Darko, and
Counts Twenty-Six to Twenty-nine – plaintiff Ovide.

[4]Attached to defendants' Motion for Summary Judgment (Dkt. #91) are the following
twenty-eight exhibits: applicable excerpts from Third Amended Complaint, dated December 16,
2002 (Exh. 1); plaintiff Ohene's Answers to Defendants' First Set of Interrogatories and Requests
for Production, dated July 26, 2002 ["Plaintiff's Responses"](Exh. 2); affidavit of Michael Wood
["Wood Aff't"], dated March 1, 2005 (Exh. 3); affidavit of Lynn Paton ["Paton Aff't"], dated February
23, 2005 (Exh. 4), with Statistical Chart of Incidents of DCF Employee Discipline (Exh. 4A);
affidavit of Dorothea Hamilton ["Hamilton Aff't"], dated February 25, 2005 (Exh. 5); copy of letter,
dated July 18, 1994 from Ineffie Sargent to Benjamin Ohene ["Letter of Employment"](Exh. 6);
copy of memorandum, dated May 15, 1996 from Elizabeth Anderson to Ohene ["Anderson 5/15/96
Memo"](Exh. 7); copy of memorandum, dated May 30, 1996 from Anderson to Annie Christy
["Anderson 5/30/96 Memo"](Exh. 8); copy of memorandum, dated September 5, 1996 from
Anderson to Ohene ["Anderson 9/5/96 Memo"](Exh. 9); copy of memorandum, dated October 2,
1996 from Anderson to Ohene, Jeanette Powell, Reginald Plair and Sean Lilly ["Anderson 10/2/96
Memo"](Exh. 10); copy of undated e-mail from Gayle Hoffman to Ohene, Anderson and Christy
["Hoffman E-mail"](Exh. 11); copy of Performance Appraisal for Ohene, dated October 1996
["10/96 Performance Appraisal"](Exh. 12); copy of memorandum, dated January 19, 1997 from
Anderson to Ohene ["Anderson 1/19/97 Memo"](Exh. 13); copy of memorandum, dated February
7, 1997 from Anderson to Ohene ["Anderson 2/7/97 Memo"](Exh. 14); copy of memorandum,
dated April 10, 1997 from Anderson to Ohene with attachments ["Anderson 4/10/97 Memo"](Exh.
15); copy of letter, dated July 8, 1997 from Christy to Ohene ["Christy 7/8/97 Letter"](Exh. 16);
copy of letter, dated April 29, 1998 from Andrea Routh to Ohene ["Routh 4/29/98 Letter"](Exh. 17);

93).  On April 13, 2005, plaintiff Ohene filed a Motion for Extension of Time until June 27, 2005 (Dkt. #94), which was granted only until May 27, 2005 (Dkt. #95). On June 8, 2005, plaintiff filed another Motion for Extension of Time (Dkt. #96), which was granted only until June 20, 2005 (Dkt. #97).   Plaintiff Ohene has failed to file a timely brief in opposition.

For the reasons stated below, defendants' Motion for Summary Judgment (Dkt. #91) is **granted absent objection.**

## I. DISCUSSION

The standard for summary judgment is well established.  The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Upon motion, following adequate time for discovery, Rule 56(c) requires that summary judgment be entered against a party

> who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

---

copy of Performance Appraisal for Ohene, dated September 30, 1998 ["9/30/98 Performance Appraisal"](Exh. 18); copy of letter, dated August 10, 1999 from Dorothea Hamilton to Ohene ["Hamilton 8/10/99 Letter"](Exh. 19); copy of Performance Appraisal for Ohene, dated September 29, 1999 ["9/29/99 Performance Appraisal"](Exh. 20); copy of Last Chance Stipulated Award, dated February 2, 2001 ["Last Chance Stipulated Award"](Exh. 21); copy of memorandum, dated March 27, 2001 from Cathleen Simpson to Labor Relations File ["Simpson 3/27/01 Memo"](Exh. 22); copy of memorandum, dated May 15, 2001 from Simpson to Investigation File ["Simpson 5/15/01 Memo"] (Exh. 23); copy of letter, dated July 12, 2001 from Simpson to Ohene ["Simpson 7/12/01 Letter"](Exh. 24); copy of excerpts from deposition of Benjamin Ohene ["Ohene Depo."], taken on September 23, 2002 (Exh. 25); copy of excerpts from deposition of Salvatore Luciano, taken on October 28, 2004 (Exh. 26); copy of memorandum, dated June 4, 2001 from Robert Brothers, Jr. to Cynthia Watts Elder (Exh. 27); and affidavit of defense counsel, dated March 9, 2005 (Exh. 28).

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." FED. R. CIV. P. 56(c).  "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970), quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  "If reasonable minds could differ as to the import of the evidence, . . . the moving party simply cannot obtain summary judgment."  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)(citations & internal quotation marks omitted).  Thus, the party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact."  Adickes, 398 U.S. at 153.

As stated above, plaintiff Ohene has failed to file a timely brief in opposition to defendants' Motion for Summary Judgment or Local Rule 56(a)2 Statement.  Federal Rule of Civil Procedure 56 provides that if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, if appropriate, shall be entered against" him. FED. R. CIV. P. 56(e)(emphasis added).   The Second Circuit has made clear that when a nonmoving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)(citation omitted). If the moving party's evidence does not satisfy the burden of production, "then summary judgment must be denied even if no opposition evidentiary matter is presented." Id. (internal quotations, citation & emphasis omitted).

4

If a non-moving party fails to file a counter statement, the facts in the moving party's Local Rule Statement are deemed admitted.  See D. CONN. L. CIV. R. 56(a)1("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2."); see also Booze v. Shawmut Bank, Conn., 62 F. Supp. 2d 593, 595 (D. Conn. 1999)(discussing statements of fact required by motions for summary judgment sought pursuant to former Local Rule 9(c)(1) and 9(c)(2)).  The Second Circuit requires, however, that there be support in the record for the unopposed Rule 56(a) statements before such statements may be accepted as true.  See Giannullo v. City of New York, 322 F.3d 139, 140, 143, n.5 (2d Cir. 2003); see also Vermont Teddy Bear, 373 F.3d at 244.  Thus, an "unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." Vermont Teddy Bear, 373 F.3d at 244 (internal quotations & multiple citations omitted).  The district court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."  Id. at 246 (citations & internal quotations omitted).

###     A. FACTUAL BACKGROUND

Because plaintiff has failed to file a Rule 56(a)2 counter statement to defendants' Rule 56(a)1 statement of facts, the following factual summary is drawn from defendants' Local Rule 56(a)1 Statement of Facts, filed March 16, 2005 (Dkt. #92) ["Defendants' Statement"], and the accompanying affidavits, depositions and exhibits. (See Dkt. #91). See Giannullo, 322 F.3d at 140, 143, n.5.  Such factual summary, therefore, does not represent factual findings of the Court.

On July 18, 1994, DCF hired plaintiff, a black male originally from Ghana, as a social

worker trainee and subsequently assigned him to the Bridgeport office in the southwest region of DCF.  (Defendants' Statement ¶¶ 1, 6; Ohene Depo. at 11, 22; Letter of Employment).  Plaintiff's initial supervisor was Dee Rice and after seven months, plaintiff was transferred to a DCF Treatment Unit within the Bridgeport office.  (Defendants' Statement ¶¶ 7-8; Ohene Depo. at 12).  Although plaintiff first was supervised by a white male Social Worker Supervisor, from 1995 through part of 1998, Elizabeth Anderson, a black female, supervised plaintiff in the Treatment Unit.  (Defendants' Statement ¶¶ 8-9; Ohene Depo. at 13-16, 33, 37).  Between May and October 1996, Anderson counseled plaintiff to complete work in a timely fashion, to complete overdue work, and asked plaintiff to remedy deficiencies in his completed work by closing files in a timely manner. (Defendants' Statement ¶¶ 11-13; Anderson 5/15/96 Memo; Anderson 5/30/96 Memo; Anderson 9/5/96 Memo; Anderson 10/2/96 Memo; Hoffman E-mail).

Also in October 1996, Anderson provided plaintiff with a performance appraisal of his work for the period February 1995 to September 1996; Ms. Anderson rated plaintiff as satisfactory, but noted several areas of concern pertaining to plaintiff's judgment, quantity of work and his ability to accept supervision and maintain accurate client narratives. (Defendants' Statement ¶ 14; 10/96 Performance Appraisal, at 3-4). Between January 19, 1997 and April 29, 1998, plaintiff received additional interoffice memoranda reminding him of the responsibilities associated with his position, as well as a warning for threatening a Program Supervisor; in September 1998, plaintiff received another evaluation, this time achieving a rating of "fair," which noted several problems with plaintiff's work.  (Defendants' Statement ¶¶ 15-20; Anderson 1/19/97 Memo; Anderson 2/7/97 Memo; Anderson 4/10/97 Memo; Christy 7/8/97 Letter; Routh 4/29/98 Letter; 9/30/98 Performance Appraisal).  Plaintiff complained about Anderson in response to this evaluation and was then reassigned to

6

another training unit, within the same office, retaining the same job title, classification and pay rate. (Defendants' Statement ¶¶ 21-22; Ohene Depo. at 16, 24-25, 43-46, 62-63). There, he was supervised by another black female, Jacqueline Adams, who in turn was supervised by Program Supervisor Dorothea Hamilton, a white female. (Defendants' Statement ¶¶ 21 & 23; Ohene Depo. at 62-63, 33; Hamilton Aff't ¶¶ 6-7).

On August 10, 1999, plaintiff was issued a letter of warning for continued failure to complete work in a timely manner and for poor attendance; he then received an unsatisfactory performance appraisal by Adams in September 1999. (Defendants' Statement ¶¶ 24-25; Hamilton 8/10/99 Letter; 9/29/99 Performance Appraisal). Plaintiff was transferred to a treatment unit, where Hamilton directly supervised him for a short time, after Patricia Goyette, a black female, retired. (Defendants' Statement ¶¶ 26-27; Ohene Depo. at 62-63, 40). During that time, in 2000, Hamilton interviewed one of plaintiff's clients and determined that plaintiff had been untruthful about making home visits he had described in case narratives. (Defendants' Statement ¶¶ 28-29; Hamilton Aff't, ¶ 10; Ohene Depo. at 65). On March 21, 2000, DCF terminated plaintiff for poor work performance, but following plaintiff's grievance, on February 2, 2001, plaintiff and DCF entered into a "Last Chance Stipulated Award," under which plaintiff was reinstated into his former position in exchange for his agreement not to sue the State of Connecticut regarding his termination. (Defendants' Statement ¶¶ 30-31; Ohene Depo. at 63-66; Last Chance Stipulated Award).

Plaintiff was then transferred to the Norwalk DCF office as a part of this agreement, where he was supervised by Phyllis Gilliam, a black female. (Defendants' Statement ¶¶ 32 & 34; Last Chance Stipulated Award, ¶ 3; Ohene Depo. at 17, 41, 42, 69). That same month, February 2001, a client's allegation that plaintiff had cursed at a client's son during a home visit was sustained upon investigation, and plaintiff was given formal counseling

7

about his behavior.  (Defendants' Statement ¶ 35; Simpson 3/27/01 Memo).  Later that month, plaintiff received an unsatisfactory service evaluation from Gilliam.  (Defendants' Statement ¶ 36; Ohene Depo. at 41-42, 67).  In April 2001, plaintiff was charged with neglect of duty, poor role modeling and poor judgment in relation to an instance where he neglected to visit the home of a child re-united with his/her family and failed to follow through on a recommended treatment plan. (Defendants' Statement ¶ 37; Simpson 5/15/01 Memo).  In July 2001, plaintiff voluntarily resigned from DCF after being scheduled for a pre-disciplinary hearing to discuss the investigation into his recent conduct, and after being placed on administrative leave with pay.  (Defendants' Statement ¶¶ 38-39; Simpson 7/12/01 Letter; Ohene Depo. at 26-27).

Defendant Michael Wood, a black male, is currently employed as a Principal Personnel Officer for DCF; from 1996 to 1998, he served as Personnel Officer 2 assigned to DCF southwest region, which includes DCF offices in Bridgeport, Norwalk and Stamford and he never supervised plaintiff.  (Defendants' Statement ¶¶ 2-3; Wood Aff't ¶¶ 2-6).  Wood's  only interaction with plaintiff was to hear various grievances plaintiff filed prior to June 1998; defendant Wood had no authority to discipline plaintiff.  (Defendants' Statement ¶ 42; Wood Aff't, ¶¶ 6-8, 10 & 12).  Plaintiff does not identify any wrongful acts by defendant Ragaglia.  (Defendants' Statement ¶ 75; Plaintiff's Responses, Interrogatory No. 3).

B. DEFENDANTS' MOTION

Defendants assert that plaintiff cannot prove a constitutional claim premised on a violation of his right to equal protection (Dkt. #93, at 6-10); plaintiff's claim against the individual defendants under 42 U.S.C. § 1983 fails for a lack of personal involvement (id. at 10-16); plaintiff's Section 1981 claim fails because Section 1983 is the exclusive federal remedy for the alleged violation of his constitutional rights (id. at 17-19); plaintiff's Section

8

1981 claim fails to state a claim upon which relief can be granted (id. at 19-20); there is no legal basis for imputing liability among all the defendants in their personal capacity (id. at 21-24); and defendants are entitled to judgment in their favor on plaintiff's state law claim of intentional infliction of emotional distress. (Id. at 24-25).

### 1. COUNT THIRTY – EQUAL PROTECTION CLAIM AGAINST DEFENDANTS WOOD AND RAGAGLIA

In Count Thirty of the Third Amended Complaint, plaintiff alleges that he was subjected to disparate treatment in his work environment resulting from his race, ethnic origin and gender, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, in particular he was wrongfully denied a promotion to Social Work Supervisor by defendant Wood, he was wrongfully disciplined, he was subject to disparate treatment, and he was wrongfully terminated. (At 13-14, 32-33). Defendants argue that under the present facts, plaintiff cannot meet his prima facie burden of proof under Section 1983 to show that his treatment was racially motivated or that defendants caused the deprivation of his rights. (Dkt. #93, at 7).

To state a claim under the Equal Protection Clause for selective enforcement, plaintiff must allege that (1) he, compared with other similarly-situated individuals, was selectively treated, and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)(citations & internal quotation marks omitted). With respect to the second element, "this Circuit has traditionally required that a plaintiff alleging selective treatment show an illicit motivation or animus on the part of the defendant." Zavatsky v. Anderson, No. Civ.3:00 CV 844(AVC), 2004 WL 936170, at *8 (D.

Conn. Mar. 9, 2004), citing Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001).

Additionally, both elements are necessary to state a claim and a "demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith." Crowley v. Courville, 76 F.3d 47, 53 (2d Cir. 1996).

As previously indicated, the only two defendants named in Count Thirty are defendants Wood and Ragaglia. Plaintiff alleges that defendant Wood, a black male, intentionally violated his constitutional rights by treating him differently than similarly situated employees because of his race, gender or ethnic origin. According to defendants, defendant Wood had no supervisory authority over plaintiff and had the minor role of reviewing grievances that plaintiff filed. (Dkt. #93, at 9; Wood Aff't, ¶¶ 4-8, 10 & 12). Plaintiff does not contend otherwise. Additionally, Wood's responsibility in the southwest region of DCF ended in 1998, so any allegations extending beyond that date, could not involve him. (See Wood Aff't, ¶¶ 4-6 & 11). As defendants indicate, plaintiff fails to allege any wrongdoing, even in a supervisory capacity, against defendant Ragaglia in this count. (Dkt. #93, at 1 n.1; Plaintiff's Response, Interrogatory No. 3).

In his deposition testimony, and in his discovery responses, plaintiff claims he was subject to disparate treatment by defendant Hamilton; however, defendant Hamilton is not listed in any of plaintiff's Counts. (Ohene Depo. at 34; Plaintiff's Response, Interrogatory No. 3). Moreover, according to defendants, defendant Hamilton only directly supervised plaintiff for two weeks, and plaintiff failed to allege any specific disciplinary action taken by defendant Hamilton against him as compared to other workers. (Dkt. #93, at 8; Ohene Depo. at 34, 40).

Even giving plaintiff every benefit of the doubt that his Count Thirty includes all his direct supervisors who took any form of disciplinary action against him, plaintiff testified at

his deposition that he is aware of at least one white male social worker who received an unsatisfactory service rating for poor work performance    (Defendants' Statement ¶ 47; Ohene Depo. at 56-57).  Plaintiff's deposition testimony does not reveal any white females with whom he compares himself.  Additionally, during plaintiff's tenure in the Bridgeport office, plaintiff admits that numerous workers were criticized for work deficiencies, regardless of race, gender or ethnicity.  (Defendants' Statement ¶ 46; Ohene Depo. at 56-57; Paton Aff't, ¶ 11).  Plaintiff received poor work performance evaluations from each of the three black supervisors under whom he worked over a thirty-three month period. (Defendants' Statement ¶¶ 15-20, 24-25; Anderson 5/15/96 Memo; Anderson 5/30/96 Memo; Anderson 9/5/96 Memo; Anderson 10/2/96 Memo; Hoffman E-mail; 10/96 Performance Appraisal; Anderson 1/19/97 Memo; Anderson 2/7/97 Memo; Anderson 4/10/97 Memo; Christy 7/8/97 Letter; Routh 4/29/98 Letter; 9/30/98 Performance Appraisal; 9/29/99 Performance Appraisal; Ohene Depo. at 41-43, 67).  Moreover, although plaintiff was terminated for poor work performance while working under Hamilton, who is white, plaintiff was subsequently reinstated pursuant to the "Last Chance Stipulated Award." (Defendants' Statement ¶¶ 23, 30-31; Ohene Depo. at 33, 63-65; Last Chance Stipulated Award).  In July 2001, plaintiff voluntarily resigned from DCF and was not terminated. (Defendants' Statement ¶ 39; Ohene Depo. at 26-27).  With respect to plaintiff's claim that he was denied a promotion, such allegation is equally without merit because plaintiff never applied for a promotion and because plaintiff conceded that Wood (and Adams, Anderson and Hamilton) did not deny him a promotion.  (Defendants' Statement ¶¶ 40-41; Ohene Depo. at 29-30, 33-34).

Thus, viewing inferences that may be drawn from the underlying facts contained in defendants' materials in the "light most favorable to the party opposing the motion,"

11

<u>Adickes</u>, 398 U.S. at 158-59 (citation omitted), plaintiff's Count Thirty does not survive summary judgment.

<u>2. COUNT THIRTY-ONE – SECTION 1981 AGAINST DEFENDANTS WOOD AND RAGAGLIA</u>

In Count Thirty-One of the Third Amended Complaint, plaintiff alleges that defendants Wood and Ragaglia knew of ongoing discrimination against plaintiff and failed to remedy the wrong while occupying positions in which they were required to do so, due to plaintiff's race, in violation of 42 U.S.C. § 1981. (At 33).

Defendants correctly observe that "when a person's rights protected by § 1981 are violated by a state actor (as opposed to a private person), the aggrieved party has a cause of action pursuant to 42 U.S.C. § 1983, not 42 U.S.C. § 1981." <u>Smith v. Conn. Dep't of Corr.</u>, No. 3:03 CV 386(AWT) , 2003 WL 22834676, at *2 (D. Conn. Nov. 25, 2003); <u>see also Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701 (1989); <u>Coger v. State of Conn. Dep't of Admin. Servs.</u>, 309 F. Supp. 2d 274, 281 (D. Conn. 2004). The U.S. Supreme Court had held that § 1983 provides "the <u>exclusive</u> federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." <u>Jett</u>, 491 U.S. at 733 (emphasis added). Furthermore, 42 U.S.C. § 1983 is "a method for vindicating federal rights elsewhere conferred," <u>Baker v. McCollan</u>, 443 U.S. 137,144 n. 3 (1979), "such as those conferred by § 1981." <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 225 (2d Cir. 2004).

Even assuming <u>arguendo</u> that plaintiff can maintain a § 1981 claim against state actors, plaintiff must allege and prove that the individual defendants' acts were "purposefully discriminatory and racially motivated." <u>Albert v. Carovano</u>, 851 F.2d 561, 571-72 (2d Cir. 1998)(multiple citations omitted). For the reasons stated in Section I.B.1 <u>supra</u>, plaintiff cannot sustain his burden of proof to state a claim under 42 U.S.C. § 1981, so that Count

Thirty-One similarly does not survive summary judgment.

### 3. COUNT THIRTY-TWO – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count Thirty-Two of the Third Amended Complaint, plaintiff alleges that defendants Wood and Ragaglia intended to inflict emotional distress, or knew or should have known that emotional distress was likely to occur as a result of their conduct; they acted maliciously, in bad faith, with improper motive and with reckless disregard for the consequences that their actions would have on plaintiff; their conduct was extreme and outrageous; and plaintiff's emotional trauma was severe and as a result, plaintiff suffered anxiety, humiliation, embarrassment and emotional distress. (At 34).

Under Connecticut law, the common law tort of intentional infliction of emotional distress requires that four elements be established: (1) the defendant intended to inflict emotional distress or knew that it would result; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the plaintiff's distress; and (4) the plaintiff's resulting emotional distress was severe. Petyan v. Ellis, 200 Conn. 243, 253 (1986)(multiple citations omitted). Extreme and outrageous conduct is that which "go[es] beyond all possible bounds of decency, [is] regarded as atrocious, and [is] utterly intolerable in a civilized society." Appleton v. Board of Ed. of the Town of Stonington, 254 Conn. 205, 211 (2000)(quotations & citation omitted). It does not include conduct that is "merely insulting or displays bad manners or results in hurt feelings." Id. (citation omitted).

As discussed in detail in Section I.B.1. supra, plaintiff received unsatisfactory performance evaluations, and received letters of warning in response to his work-related deficiencies and client complaints over a nearly five year period, despite continuous counseling by his supervisors. (Ohene Depo. at 40-41, 63-65, 67; Anderson 5/15/96 Memo;

13

Anderson 5/30/96 Memo; Anderson 9/5/96 Memo; Anderson 10/2/96 Memo; Hoffman E-mail; 10/96 Performance Appraisal; Anderson 1/19/97 Memo; Anderson 2/7/97 Memo; Anderson 4/10/97 Memo; Christy 7/8/97 Letter 4/29/98 Letter; 9/30/98 Performance Appraisal; Hamilton 8/10/99 Letter; 9/29/99 Performance Appraisal; Last Chance Stipulated Award; Simpson 3/27/01 Memo; Simpson 5/15/01 Memo). Defendants made attempts, way beyond what was necessary, to provide guidance to plaintiff to rectify his behavior. It is clear that official reprimands and procedural responses, especially to client accusations, are simply not conduct that arises beyond "all possible bounds of decency." Appleton, 254 Conn. at 211. Therefore, Count Thirty-Two does not survive summary judgment.[5]

## II. CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (Dkt. #91) is **granted absent objection**.[6]

Dated this 24th day of June, 2005, at New Haven, Connecticut.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

---

[5]Although not addressed in defendants' motion and brief (Dkts. ##91 & 93), plaintiff Ohene is included in Count Thirty-three, brought by "all [p]laintiffs against all individual [d]efendants," which alleges a § 1983 violation for having created "a chilling effect across each workplace of [DCF], wherein highly disproportional amounts of discipline and verbal harassment are dispensed upon African American male employees, the consequences of which create an overwhelming atmosphere of fear designed to discourage black males from seeking to improve their position." (At 34-35).

For the reasons stated in Section I.B.1. supra, the facts do not support these claims with respect to plaintiff Ohene.

[6]Counsel shall contact the Magistrate Judge's Chambers to schedule a status conference to address the remaining six plaintiffs and whether a continued settlement conference would be appropriate.

14