**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RYAN WILLIAMS, ET AL., | : | CASE NO. 3:01CV1398 (JGM) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTINE RAGAGLIA, ET AL., | : | |
| *Defendants*. | : | DECEMBER 12, 2005 |

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGEMENT AS**
**TO PLAINTIFF  IRENE COHEN**

INTRODUCTION

The plaintiff, Irene Cohen, is a former employee of the State of Connecticut,

Department of Children and Families ("DCF").  On March 13, 2000, the plaintiff was

terminated from DCF for falsifying DCF records regarding an investigation she was

assigned to conduct.  Her lawsuit alleges § 1981 and § 1983 actions against defendants

Kristine Ragaglia, Leticia Lacomba and James Moore.[1]  There is also a state law claim

against the same individual defendants for intentional infliction of emotional distress and

wrongful discharge.

Ms. Cohen also alleges that she was denied promotion because of mediocre

service ratings, but her testimony is that she makes no claims against the supervisors who

issued her the services ratings. However, in discovery the plaintiff produced no

documents substantiating that she had applied for promotions, was qualified, that she was

---

[1]  In his response to interrogatories, from the 20 or so named defendants, the plaintiff identifies **only** Janet Labelle and James Moore as individuals who allegedly committed discriminatory acts. The plaintiff does not identify any wrongful acts by defendants Kristine Ragaglia or Leticia Lacomba, who are apparently named as a nominal defendants, though sued personally. Ms. Labelle is NOT a defendant in this case.

denied, and that someone outside her protected class was selected.  She also produced no

documents showing the that she was similarly situated to someone who was selected for

the position(s) she for which she applied.

Regarding the wrongful termination claim, the plaintiff was terminated in 2000

for misconduct. She grieved her termination through the state grievance process and a

neutral arbitrator ruled that there was just cause to terminate her.

The plaintiff has no claim against her former employer under Title VII because

she has never produced, nor does she allege, that she has obtained a right to sue letter

from the EEOC.  It is uncertain whether the plaintiff even filed a CHRO/EEOC charge of

discrimination to bring herself within the remedy provisions of Title VII.[2]

Much of this plaintiff's testimony shows that she received satisfactory job

evaluations throughout her tenure at DCF. Her real complaint against former supervisors

relate to petty matters such as taking too long to submit paper work for her

reclassification as a social worker back in 1994, or a claim that her supervisor tried to

reduce her service rating in 1998. All of the evidence refutes the plaintiff's claims.

Furthermore, there is a dearth of evidence to support any of the plaintiff's claims as her

own testimony will demonstrate.

## FACTS

The plaintiff, Irene Cohen  was hired by the Connecticut Department of Children

and Families in 1993 as a social worker. (Facts ¶ 1-2).  After finishing her training period

in early 1994, she was then assigned to the DCF Rockville office. (Facts, ¶ 3).

---

[2]  Count 33 of theThird Amended Complaint set forth a claim by all the plaintiff against DCF under Title
VII for a pattern and practice of disciplining black male employees, which does not r on its face to apply to
this **female** social worker.

In February 1994, the plaintiff received a six month probationary service rating. She was rated as satisfactory by her training supervisor Joanne Burgess, MSW. (Facts, ¶ 4). The plaintiff was initially assigned to the DCF Rockville office under the direct supervision of Janet Labelle, a Social Workers Supervisor until sometime in 1995. (Facts, ¶ 5).  Social workers at DCF receive an annual performance evaluation in September of each year.  The evaluation period goes from July 1 to August (of the following year).  A proposed evaluation is prepared by the Social Worker Supervisor and then it is review by the Program Supervisor and Program Director. All three managers must sign off on the final evaluation.  The evaluation includes a comments section that discusses specific areas of performance.  The Program Supervisor must review all of the proposed service rating prepared by the Social Workers Supervisors for social workers in their unit(s). After reviewing the proposed service rating, the Program Supervisor provides input based on his/her observations and if  deemed necessary,  would adjust the service rating up (higher category) or down (lower category). The proposed service rating is then reviewed by the Program Director.  (Facts, ¶ 6-7).

In 1994, the plaintiff received a satisfactory service rating. In 1995 she was rated as "fair." (Facts, ¶¶ 8, 10).  Although the plaintiff alleges that  Ms. Labelle tried to reduce her rating in 1994 or 1995,  she admits that that never happened. (Facts, ¶ 11).

In 1995, Ms. Cohen was given a new Social Workers Supervisor named  Sherry Rautenberg.   She worked as a social worker under Ms. Rautenberg until October 1996. The plaintiff does not allege that Ms. Rautenberg took any discriminatory acts towards her.  (Facts, ¶¶ 13-14).  In October 1996, the plaintiff received a satisfactory service

rating from Ms. Rautenberg, who noted that the plaintiff received a written reprimand in September 1996 for exercising poor judgment. (Facts, ¶ 15).

Later in 1996, the plaintiff was transferred to the DCF New Britain Investigations Unit, which had its offices in Hartford. The plaintiff's direct supervisor was Susan Hamilton.  The plaintiff worked under several Social Worker Supervisors while in the New Britain investigations unit. (Facts, ¶ 17).

In July 1997, defendant James Moore was promoted to Program Supervisor for the New Britain investigations unit.  As the Program Supervisor for the New Britain investigations unit, Mr. Moore oversaw several Social Worker Supervisors and numerous Social Workers. The plaintiff, Irene Cohen, was one of the social workers assigned to that unit. (Facts, ¶ 18).  As of July 1997, the plaintiff's immediate supervisor was Social Worker Supervisor Joy Pizzuto. (Facts, ¶ 19).

As the Program Supervisor, Mr. Moore reviewed the proposed service rating prepared by the Social Workers Supervisors for social workers in his unit, including the plaintiff, Irene Cohen.  In his eight plus years as a Program Supervisor since 1997, Mr. Moore reviewed and adjusted the service ratings of numerous white, black and Hispanic social workers. Sometimes he would increase a rating (i.e. satisfactory to good) or lower a rating (i.e. good to satisfactory) that he felt best reflected the employee's performance. The evaluation process includes not only objective measurements, but also subjective elements. (Facts. ¶'s 21-22).

While in the New Britain investigations unit the plaintiff always received a satisfactory or better service ratings. Her ratings by supervisor were as follows:

| 1997 | rating – good | | Joy Pizzuto |
| 1998 | rating – satisfactory | (changed to good) | David Melchionne |
| 1999 | rating - satisfactory | | Andrea Chamberlain |
| 2000 | rating – good | | Isabel LaLuz |

In contrast to the plaintiff's allegations, it was Mr. Moore's experience as a Program Supervisor that black female social workers were promoted to the position of Social Worker Supervisor. For instance, Andrea Chamberlain is a black female who was promoted to a Social Worker Supervisor in the New Britain Investigations unit. (Facts, ¶ 30). To Moore's knowledge, the plaintiff never applied for promotion while in the New Britain Investigations unit. (Facts, ¶ 36). If she had indeed applied for promotion, Moore's input was not solicited.

In December 2000, the plaintiff was placed on paid administrative leave pending an investigation into allegations by a DCF client that she failed to complete an investigation and had falsified DCF records. (Facts, ¶ 38). After completing the investigation, the plaintiff was terminated on March 13, 2001 for falsifying records. The plaintiff grieved her dismissal and an independent arbitrator upheld the termination. (Facts, ¶ 39). At the time the plaintiff was terminated, she was not under the supervision of either James Moore or Janet Labelle. (Facts, ¶ 40).

Plaintiff stated in her deposition that she applied for promotions in 1996 or 1997, but was denied because her evaluations were mediocre. However, she does not make any claim against DCF supervisors Susan Hamilton and Sherry Rauthenberg who prepared the evaluations. (Facts, ¶ 41). Despite this allegation, the plaintiff produced no

documents of any type showing when she applied for promotion, that she was denied, and who was selected for the position or positions.

During the time the plaintiff worked under the supervision of Janet Labelle in the DCF Rockville office and then in the Hartford office under James Moore, she maintained the same job title, duties, wages and benefits. She was never suspended or disciplined in any manner that affected her wages or job duties prior to her dismissal in 2001.  (Facts, ¶ 42).

## ARGUMENTS

### JANET LABELLE IS NOT A NAMED DEFENDANT

Plaintiff's claim based on alleged conduct by Janet Labelle is not actionable because she is not a named defendant. Assuming arguendo that Janet Labelle somehow violated the plaintiff's rights in 1994, which the evidence refutes, there is no evidence that can impute her conduct to the named defendants.  Furthermore, the discrete act (changing a service rating) that the plaintiff attributes to Labelle occurred in 1994-95, well beyond the three years statute of limitations under § 1983.  Langer v. Town of Trumbull, 34 Fed. Appx 816, 2002 U.S. App. LEXIS 9787 (2d Cir. 2002)(three-year statute of limitations applies to § 1983 actions).

### THE PLAINTIFF CANNOT PROVE A CONSTITUTIONAL CLAIM PREMISED ON A VIOLATION OF HER RIGHT TO EQUAL PROTECTION

As the court is well aware,  Section 1983  does not create any new substantive rights, but merely provides a federal cause of action for the violation of certain federal rights.  M. H. By, Through and With His Parents and Next Friends, Mr. And Mrs. H. v. Bristol Board of Education, 169 F. Supp. 21 (D. Conn. 2001); Mrs. W. v. Tirozzi, 832

F.2d 748, 754 (2d Cir. 1987). In order to prove violation of her Fourteenth Amendment

right to equal protection under the law, the plaintiff must prove the following elements:

(1) she, as compared with other similarly situated individuals, was selectively treated; and

(2) this selective treatment was motivated by an <u>intention</u> to discriminate based on

impermissible considerations such as race or by a malicious or bad faith intent to injure

the person. <u>Muller v. Costello</u>, 187 F.3d 298, 309 (2d Cir. 1999); <u>Page v. Connecticut</u>

<u>Department of Public Safety,</u> 185 F. Supp.2d 149 (D. Conn. 2002).  "Proof of racially

discriminatory intent or purpose is required to show a violation of the Equal Protection

Clause."  <u>Village of Arlington Heights v. Metropolitan Housing Authority,</u> 429 U.S. 256,

265, 97 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); <u>Patterson v. County of Oneida</u>, 375 F.3d

206 (2d Cir. 2004).  In order to prove a prima facie case of race discrimination that

violates equal protection, Cohen  must demonstrate that she was treated differently from

other similarly situated employees *because of her race*. See, <u>Annis v. County of</u>

<u>Westchester</u>, 136 F.3d 239, 245 (2nd Cir. 1998), citing <u>Sims v. Mulchay</u>, 902 F.2d  524,

539 (7th Cir. 1990).  As the Supreme Court has stated:

> The requirement of discriminatory intent or purpose  "... implies that the decision
> maker, . . . Selected or reaffirmed a particular course of action at least in part
> 'because,' not merely 'in spite of' its adverse effects . . . upon a member of a
> protected group."

<u>Personnel Administrator of Massachusetts v. Feeney</u>, 442 U.S. 256, 279, 99 S. Ct. 2282,

2296, 60 L.Ed.2d 870 (1979).

Additionally, as part of her burden of proof to establish a Section 1983 violation

of her constitutional right to equal protection, the plaintiff must also prove that the

**defendants** "caused" the deprivation of her rights.  <u>Taylor v.  Brentwood Union Free</u>

School District, el al., 143 F.3d 679 (2d Cir 1998), citing Martinez v. California, 444 U.S. 277, 285, 100 S. Ct. 553, 62 L.Ed.2d 481(1980).

In the present case, the plaintiff cannot show that the three defendants in this case that Cohen identifies in her pelading, Kristine Ragaglia, Leticia LaComba and James Moore, intentionally violated her constitutional rights by treating her differently than similarly treated employees BECAUSE of her race.

Regarding her claim relating to her annual service ratings, the DCF records show that the plaintiff always received acceptable service ratings. Her chief complaints relate to petty matters such a delay in upgrading her position in 1994 or alleged "attempts" to reduce her service ratings in 1997 or 1998, which never actually occurred. (Facts, ¶¶ 8-37).   In short, the plaintiff suffered no adverse employment action related to her service ratings that can be attributed to the named defendants who have been suited individually. The law is clear that a satisfactory service rating is not an adverse action.  Meredith v. Beech Aircraft Co., 18 F.3d 890, 896 (10th Cir. 1994) (satisfactory marks in overall evaluation, although lower than previous evaluations, does not constitute employment action).  Spears v. Missouri Dept. of Corrs. & Human Res., 210 F.3d 850 (8th Cir. 2000) (performance evaluation from "highly successful" to "successful" not an adverse action).

With regard to her claim about promotions in 1996,  as a preface these claims are barred by the three year statute of limitations for Section 1983 and 1981 actions.  The initial complaint was filed on July 24, 2001, some five years after the last promotion date the plaintiff describes in her deposition as 1996. (Ex. 1, pp. 56:10-15).  Even if there was an incident within the statutory period of limitations, nowhere in discovery did the

8

plaintiff produce  any written documents or information showing that she was treated

differently than similarly situated non-minority employees. When asked in her deposition

about the denial of promotions she alleged applied for, she  stated:

> Q:      Tell me what people you are comparing yourself to
>
>          when you say that you were that you were entitled
>
>          to be qualified for promotion but white people, coworkers,
>
>          received it. To whom were you comparing yourself?
>
> A:      I would need to see a list of the coworkers who were in the office
>
>          at that time. Then I can tell you.

(Ex. 1, p. 41:5-15).  Later on the plaintiff mentioned a female employee named Joy who

she claims was promoted, but she could not provide the last name.   In her responses to

interrogatories asking for detailed information about when she applied for and was denied

promotions, she simply stated: "Plaintiff was wrongfully denied promotions for which

she was qualified for, which plaintiff's white co-workers received."  However,  the

plaintiff has never supplemented  this  answer to the interrogatory or the plaintiff's

deposition testimony with any factual information supporting this aspect of her claim.

There is no evidence implicating  defendants Ragaglia, LaComba and Moore in the

alleged denial of promotion.

   Then there is the issue of her termination in 2001 for falsifying DCF records.

Again, there is no evidence of unequal treatment towards the plaintiff. The evidence

shows that in December 2000 a client complained that the plaintiff had never conducted

the mandated in-person interviews that resulted in a substantiated finding of abuse, which

was later reversed when the plaintiff's documentation of such visits proved false.  The

plaintiff grieved her termination and a neutral arbitrator found just cause for her

dismissal.  When asked at her deposition which defendant made the decision to fire her,

she responded: "Personnel."  She did not attribute her termination to a single named

defendant. (Ex. 1,  pp. 46:23-25).

In short, there is insufficient evidence upon which  a reasonable jury could find

that the plaintiff's constitutional rights were violated by defendants Ragaglia, Lacomba

and Moore.

### THE PLAINTIFF'S CLAIM AGAINST THE INDIVIDUAL DEFENDANTS FAILS FOR A LACK OF PERSONAL INVOLVEMENT.

In the present case, the defendants ask the court to pay particular attention to the

personal involvement requirement under Section 1983 for two reasons.  First, the

plaintiff's allegations relating to alleged acts committed by Janet Labelle are barred

because this person is not a named defendant.  Second, the plaintiff cannot carry her

burden of proof showing sufficient personal involvement by defendants Kristine

Ragaglia, Leticia Lacomba and James Moore.

In order to establish the individual liability of a defendant in his/her individual

capacity under § 1983, the plaintiff is required to show the personal involvement of the

defendant in the denial of equal protection. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.

1987); Estate of Walker v. City of Bridgeport, 676 F. Supp. 442, 446 (1986); Bapat v. Ct.

Dept. Of Health Services, 815 F. Supp. 525 (D.Conn.1992).  In order to establish

personal involvement, the plaintiff is required to prove that the defendant (1) directly

participated in the violation; (2) failed to remedy the violation after learning of it through

a report or appeal; (3) created a custom or policy fostering violation or allowed the

custom or policy to continue after learning of it; or (4) deliberate indifference to known

constitutional violations. Provost v. City of Newburgh, 262 F.3d 146, 154-55 (2d Cir.

2001). A plaintiff must thus allege a tangible connection between the acts of the

defendant and the injuries suffered.  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986).

  Consistent with the requirement that personal involvement is required for a claim

under § 1983, the Supreme Court has ruled that the general doctrine of *respondeat*

*superior* does not suffice to state a claim under § 1983.  Monell v. New York City Dept.

of Social Services, 436 U.S. 658, 692-95 (1978).  An official cannot be held liable merely

because he or she occupies a high position in the government agency hierarchy.  Colon v.

Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).  It is well settled law that individual liability

cannot be founded on their official position alone.  Horowitz v. Anker, 437 F. Supp. 495,

504 (E.D.N.Y. 1977), aff'd mem. 578 F.2d 1368 (2d Cir. 1978); McKinnon v. Patterson,

568 F.2d 930, 934 (2d Cir.), cert. denied, 434 U.S. 1087 (1977); Williams v. Vincent, 508

F.2d 541, 546 (2d Cir. 1974).

  The plaintiff has no evidence that either defendants Ragaglia, LaComba or Moore

were personally involved in an alleged violation of her constitutional rights.  Evidence

linking these defendants to improper intentional  conduct is lacking.  The plaintiff admits

that the issue of her service rating is limited to DCF employees James Moore and Janet

Labelle.

  The plaintiff's failure to promote claim fails because she could point to no

specific defendant to whom she attributes any conduct involving this matter. Although

the plaintiff claims that white female employees were promoted over her, to impute

liability for discriminatory conduct to defendants Ragaglia or LaComba, the plaintiff

must show actual personal involvement or one of the following: (a) failure to take

11

corrective action after learning of a subordinate's unlawful conduct; (b) creation of a

policy or custom fostering the unlawful conduct; (c) gross negligence in supervising

subordinates who commit unlawful acts; and (d) deliberate indifference to the rights of

others by failing to act on information regarding the unlawful conduct. Hayut v. State

University of New York, 352 F.3d 733, 753 (2d Cir. 2003).

      In Hayut, the plaintiff, at student at SUNY, brought a section 1983 action against

several officials from SUNY alleging sexual harassment by an instructor upon a female

student. He offered no evidence showing direct personal involvement by the defendants

in the alleged unlawful discrimination. Instead, he argued on summary judgment by

simply asserting that sex discrimination "was rampant" and that the defendants "knew of

should have known about many instances of instructors . . . who exhibited bizarre,

disturbing, harassing and discriminatory behavior." Id. at 753.   Rejecting this argument

because the evidence amounted to the plaintiff's unfounded conclusory assertions, that

Court of Appeals court affirmed the summary judgment.

      The same logic applies to the current action. The plaintiff's basic argument is that

the unspoken culture at DCF is that black people do not get promoted. (Ex. 1, pp. 33:23-

34:9).  However, two factor disprove this claim. First, she provided no evidence in

response to discovery to substantiate this claim that the defendants were ware of any

discriminatory acts by subordinates.  Second, the promotion of a black female from

within the New Britain Investigations unit named Andrea Chamberlain, who actually

supervised the plaintiff in 2000,  is prima facie evidence that black females were

promoted.

Furthermore, any argument at this late juncture suggesting a pattern and practice

is equally unavailing because sporadic acts over several years are not sufficient to

establish and policy or custom. <u>EEOC v. McDonnell Douglas Corp.</u>, 191 F.3d 948 (8th

Cir. 1999)(pattern and practice requires that employer "regularly and purposefully"

treated members of protected class less favorably and that unlawful discrimination was

the employer's "regular procedure and policy." Sporadic acts are insufficient.).  Under

such a theory, a plaintiff must prove that the defendants were aware of an illegal custom

or practice.  <u>Gaston v. Couglin</u>, 249 F.3d 156, 165-66 (2d Cir. 2001).

In sum, there is no evidence that the plaintiff suffered a constitutional deprivation

that can be imputed to defendants Ragaglia, LaComba or Moore.

**THE PLAINTIFF'S SECTION 1981 CLAIM FAILS BECAUSE SECTION 1983 IS THE EXCLUSIVE FEDERAL REMEDY FOR THE ALLEGED VIOLATION OF HIS CONSTITUTIONAL RIGHTS.**

Section 1981 provides, in relevant part,

> All persons within the jurisdiction of the United States shall have the
> same right ... To make and enforce contracts, ... And to the full and
> equal benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by **white citizens** ...

42 U.S.C. § 1981 (emphasis added).

The plaintiff has sued the defendants in their individual capacities for a violation

of her rights guaranteed by Section 1981.  However, since the plaintiff's claims involve a

"state actor,"  the District Court must conclude that the plaintiff's exclusive remedy lies

in his action under 42 U.S.C. § 1983.  The rule of law was first set out by the Supreme

Court in the case of  <u>Jett v. Dallas Independent School District</u>,  491 U.S. 701, 109 S. Ct.

2702, 105 L.Ed.2d 598 (1989).  In <u>Jett</u>, the Supreme Court examined the relationship

between Section § 1983 and § 1981.  Concluding that in enacting Section 1983 Congress

intended that it was enacting the exclusive remedy against state actors for the violation of

constitutional rights, the Court stated:

> The historical evidence surrounding the revisions of 1874 further indicates that Congress thought that the declaration of rights in § 1981 would be enforced against state actors through the remedial provisions of § 1983.

Id. at 733-34.

As the district court noted in its opinion in 1991, Congress amended section

1981 to include a provision that reads: "The rights protected by this section are protected

against impairment by nongovernmental discrimination and impairment under color of

State law." 42 U.S.C. § 1981(c). Subsequently, plaintiffs have argued unsuccessfully to

other Circuit Courts that the amendment to § 1981 overruled Jett.  However, the Fourth,

Fifth, Eighth and Eleventh Circuits have concluded that the amendment to section 1981

did not change the rule set forth in the Jett case.  After examining the legislative history

of the amendment, these circuits concluded that the purpose of the amendment was to

clarify that Section 1981 applies to nongovernmental entities, not to reverse or alter the

holding in Jett.  See, Oden v. Oktibbeha County, 246 F.3d 458 (5th Cir. 2001);  Butts v.

County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000); Dennis v. County of Fairfax, 55

F.3d 151, 156 n. 1 (4th Cir. 1995);  Cerrato v. San Francisco Community College Dist.,

26 F.3d 968 (9th Cir. 1994); Williams v. Little Rock Mun. Water Works, 21 F.3d 218

(8th Cir. 1994).

In Felton v. Polles, 315 F.3d 470 (5th Cir. 2002), the Fifth Circuit determined that

the rule set out by the Supreme Court in Jett equally applies to state officials sued in their

individual capacity. In so holding, the Fifth Circuit reasoned that the Supreme Court did

not make a distinction between state entities and individuals acting pursuant to color of

14

state law.  Following the sound reasoning of the court in <u>Felton</u>, the district court

concluded that the plaintiff could not maintain a § 1981 action.

> **PLAINTIFF'S § 1981 CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Even if this court were to find that the plaintiff has standing to sue under § 1981,

there is yet an additional basis to reject the plaintiff's § 1981 claim, namely her claim

fails to state a claim upon which relief can be granted.  To state a claim under § 1981, a

plaintiff must allege and prove: (1) [that she] is a member of a racial minority; (2) an

intent to discriminate on the basis of race by the defendant; and (3) [that] the

discrimination concerned one or more of the activities enumerated in the statute (i.e.,

make and enforce contracts, sue and be sued, give evidence, etc.). <u>Mian v. Donaldson,</u>

<u>Lufkin & Jenrette Sec., Corp</u>., 7 F.3d 1085, 1087 (2d Cir. 1993).  A section 1981 action

must allege "that the defendants' act were purposefully discriminatory ... and racially

motivated." <u>Albert v. Carovano</u>, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc)(citations

omitted).  As discussed in this brief, the plaintiff can put forth no evidence that

defendants Ragaglia, Lacomba or Moore towards her in a discriminatory manner because

of her race. <u>Abramowitz v. Inta-Boro Acres, Inc.</u>, 1999 U.S. Dist. LEXIS 2005

(E.D.N.Y. 1999).

In this Circuit, complaints relying on civil rights statutes are insufficient if they

merely include a "litany of general conclusions ..." <u>Hall v. Dworkin</u>, 829 F. Supp. 1403,

1412 (N.D.N.Y. 1993)(citing <u>Barr v. Abrams</u>, 810 F.2d 358, 362 (2d Cir. 1987). Cf.

<u>Martin v. N.Y. State Dep't of Mental Hygiene</u>, 588 F.2d 371, 372 (2d Cir. 1978)("a

complaint consisting of nothing more than naked assertions fails to state a claim").

Instead, "on a claim under § 1981, a plaintiff must show both that she was subjected to

intentional discrimination, and that this discrimination interfered with a contractual relationship." Krulik v. Board of Educ. of City of New York, 781 F. 2d 15, 23 (2d Cir. 1986)(internal citations omitted).

In the present case, the only act that interfered with the plaintiff's employment was her dismissal in 2001.   Assuming that the plaintiff's dismissal could be imputed to defendants Ragaglia or LaComba, there is no evidence to refute the legitimate non-discriminatory reason for the plaintiff dismissal.

**THE DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON PLAINTIFF'S STATE LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

It is well settled that, in order to state a claim of intentional infliction of emotional distress, "[i]t must be shown:  (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe."  Petyan v. Ellis, 200 Conn. 243, 253-54 (1986). "Liability for intentional infliction of emotional distress has been found only where conduct exceeds all bounds usually tolerated by decent society and is so outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind." DeLaurentis v. New Haven, 220 Conn. 225, 267 (1991). "The issue of whether a defendant's conduct is extreme and outrageous is a question to be determined by the court in the first instance."  Only where reasonable minds can differ does the question become an issue fort he jury to decide.  Petyan v. Ellis, 200 Conn. at 243.

16

In the recent case of <u>Majewski v. Bridgeport Board of Education</u>, 11 Conn. Ops.

230 (February 2005), the plaintiff alleged that she was harassed at work and suffered

emotional distress.  The type of acts she complained of included such things as being

hugged and kissed, being questioned about her sexual orientation, being removed as the

"teacher in charge" which forced her to resign as a union representative,  and being called

a "pompous arrogant bitch."  The defendant moved to dismiss the claim of intentional

infliction of emotional distress. The court agreed, finding that the alleged acts did not

meet the standard to prove intentional infliction of emotional distress.

In the present case, there were no acts by any of the individual defendants that

could remotely rise to the level required by Connecticut law.  The law does not shield an

employee from discipline for work related deficiencies. There are no allegations that

Kristine Ragaglia, Leticia Lacomba or James Moore did anything egregious towards the

plaintiff. The allegations that James Moore wanted her service rating reduced, even if

true, hardly rises to the level of an intentional tort. There is no evidence against

defendants Ragaglia, LaComba and Moore that can support such a claim.

### THERE IS NO CAUSE OF ACTION AGAINST THE INDIVIDUAL DEFENDANTS FOR WRONGFUL DISCHARGE

The plaintiff's wrongful discharge claim fails because she does not allege, nor can

she prove, that she was employed **by the defendants in their individual capacities**.  It is

axiomatic that before a person can be wrongfully discharged from employment they must

be employed by the defendant(s). In the present case, nowhere is it alleged that any of the

individual defendants employed the plaintiff.  In contrast, what the plaintiff actually

pleads that she was employed by DCF from 1993 to 2001. (Ex. 3, ¶ 5).  Accordingly,

what the plaintiff has done is premise her claim against the individual defendants based

17

on the conduct of the defendants in their **official capacities**. However, such a claim is

defective because such a claim must be directed against the state, and therefore, is subject

to the jurisdiction of the Connecticut Claims Commissioner. (C.G.S. § 4-141).  As such,

the count for wrongful discharge must be dismissed as against the individual defendants,

who have only been sued personally.

**CONCLUSION**

For all of the above reasons, the defendants' motion for summary judgment

should be granted in its entirety.


DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:     _____

Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
email: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

The undersigned hereby certifies that on the  12th   day of  December, 2005, a

true and accurate copy of the foregoing was sent by United States mail, first class postage

prepaid, to the following:

Francis A. Miniter, Esq.
Miniter & Associates
100 Wells Street, Suite 1-D
Hartford, CT  06103


 

_____
Joseph A. Jordano
Assistant Attorney General