UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN WILLIAMS, ET AL., | : | CASE NO. 3:01CV1398 (JGM) |
|    *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTINE RAGAGLIA, ET AL., | : | |
|    *Defendants*. | : | DECEMBER 12, 2005 |

**DEFENDANTS' RULE 56(a)1 STATEMENT OF FACTS
REGARDING PLAINTIFF IRENE COHEN**

1.  The plaintiff, Irene Cohen is a resident of the state of Connecticut. (Ex. 1, Deposition of Irene Cohen, dated June 26, 2003, p. 5:13-15).

2.  She was hired by the Connecticut Department of Children and Families ("DCF") in 1993 as a social worker. (Ex. 1, p. 9:17-18).

3.  After finishing her training period in early 1994, she was then assigned to the DCF Rockville office. (Ex. 1, p. 10:17-19; p. 11:21-12:1).

4.  In February 1994, the plaintiff received her annual service rating. She was rated as satisfactory by her training supervisor Joanne Burgess, MSW. (Exhibit 4, Six Month Service Rating, dated February 23, 1994).

5.  The plaintiff was then assigned to the DCF Rockville office under the direct supervision of Janet Labelle, a Social Workers Supervisor until sometime in 1995. (Ex. 1, pp. 12:2-9).

6.  Social workers at DCF receive an annual performance evaluation in September of each year. The evaluation period goes from July 1 to August (of the following year). A proposed evaluation is prepared by the Social Worker Supervisor and then it is review by

the Program Supervisor and Program Director. All three managers must sign off on the final evaluation. The evaluation includes a comments section that discusses specific areas of performance. (Ex. 2, Affidavit of James Moore, dated November 10, 2005, ¶ 10).

7.      The Program Supervisor must review all of the proposed service rating prepared by the Social Workers Supervisors for social workers in their unit(s). After reviewing the proposed service rating, the Program Supervisor provides input based on his/her observations and if deemed necessary, would adjust the service rating up (higher category) or down (lower category). The proposed service rating is then reviewed by the Program Director. (Ex. 2, Moore Affidavit, ¶¶ 10, 11).

8.      In October 1994, the plaintiff received her first annual service rating of her performance. Social Worker Supervisor Janet Labelle rated the plaintiff as satisfactory. (Exhibit 5, Annual Service Rating dated 10/28/94).

9.      Plaintiff contends that in 1994, Ms. Labelle refused or forgot to send in documentation for the plaintiff's reclassification after her working test period was completed, but the matter was promptly taken care of by the Program Supervisor. (Ex. 1, pp. 18:2-19:11; p. 21:1-6; p. 24:4-17).

10.     In October 1995 the plaintiff received a "fair" service rating from Janet Labelle. The problem areas included both the quantity of work and the need to better document client contacts. (Ex. 6, Service Rating dated 10/20/95, p.2; Ex. 15, Plaintiff Answers to Interrogatories No. 4, dated February 14, 2003).

11.     Plaintiff alleges that Ms. Labelle tried to reduce her service rating in 1994 or 1995, but never actually did so. (Ex. 1, pp. 28:6-29:6).

2

12. Neither Janet Labelle, nor DCF are named defendants in this case as to the claims by Irene Cohen. (Ex. 3, Third Amended Complaint, Counts 10-13).

13. In 1995, Ms. Cohen was given a new Social Workers Supervisor named Sherry Rautenberg. She worked as a social worker under Ms. Rautenberg until October 1996. (Ex. 1, p. 12:10-24).

14. The plaintiff does not allege that Ms. Rautenberg took any discriminatory acts towards her. (Ex. 1, p. 31:4-17).

15. In October 1996, the plaintiff received a satisfactory service rating from Ms. Rautenberg, who noted that the plaintiff received a written reprimand in September 1996 for exercising poor judgment. (Ex. 7, Annual Servicing Rating dated 10/3/96).

16. Later in 1996, the plaintiff was transferred to the DCF New Britain Investigations Unit, which had its offices in Hartford. The plaintiff's supervisor was Susan Hamilton. (Ex. 1, pp. 12:25-13:11; Ex. 2, Moore Affidavit, ¶¶ 3 and 7).

17. The plaintiff worked under several Social Worker Supervisors while in the New Britain investigations unit. In July 1997, defendant James Moore was promoted to Program Supervisor for the New Britain investigations unit. (Ex. 2, Moore Affidavit, ¶ 4).

18. As the Program Supervisor for the New Britain investigations unit, Mr. Moore oversaw several Social Worker Supervisors and numerous Social Workers. The plaintiff, Irene Cohen, was one of the social workers assigned to that unit. (Ex. 2, Moore Affidavit, ¶ 9).

19. As of July 1997, the plaintiff's immediate supervisor was Social Worker Supervisor Joy Pizzuto. (Ex. 2, Moore Affidavit, ¶ 8).

3

20. DCF Region IV, known then as the North Central Region comprised the Hartford, New Britain and Manchester offices. That region was headed by Leticia LaComba, who was the Regional Director. Ex. 2, Moore Affidavit, ¶ 6).

21. As the Program Supervisor, James Moore reviewed the proposed service rating prepared by the Social Workers Supervisors for social workers in his unit, including the plaintiff, Irene Cohen. (Ex. 2, Moore Affidavit, ¶¶ 11-12).

22. In his eight plus years as a Program Supervisor, James Moore reviewed and adjusted the service ratings of numerous white, black and Hispanic social workers. Sometimes he would increase a rating (i.e. satisfactory to good) or lower rating (i.e. good to satisfactory) that he felt best reflected the employee's performance. The evaluation process includes not only objective measurements, but also subjective elements. (Ex. 2, Moore Affidavit, ¶ 12).

23. In September 1997, the plaintiff received an overall "Good" evaluation for the 1996-1997 period. James More signed off on the evaluation after it went through the review process. (Ex. 8, Service Rating, dated 9/14/97).

24. In September 1998, the plaintiff received her service for the 1997-98 period. The service rating was satisfactory. At that time, her social worker supervisor was David Melchionne. (Ex. 9, Service Rating, dated 9/9/98).

25. In January 1999, that plaintiff grieved the 1998 service rating. James Moore reviewed the rating as the initial step in the grievance process, which included the rating in each category and the written comments by the Social Worker Supervisor. (Ex. 2, Moore Affidavit, ¶ 15).

26.     Mr. Moore concluded that based on the comments, the overall rating should be "good," and instructed Mr. Melchionne to adjust the rating up one level from satisfactory to good and the evaluation was changed to reflect a overall rating of "good." The service rating was never reported as unsatisfactory. (Exs. 9 and 10; Ex. 2, Moore Affidavit, ¶ 15).

27.     Plaintiff has no knowledge about whether James Moore adjusted any other social worker's job evaluations. (Ex. 1, pp. 38:21-39:1).

28.     Plaintiff has no knowledge about whether other social workers under David Melchionne's supervision had their evaluations changed. (Ex. 1, p. 38:9-20; p. 39:10-15).

29.     In July 1999, James Moore was transferred to the Manchester office. Before he left the Hartford office, he was required to complete the evaluations for social workers in the New Britain Investigations unit. (Ex. 2, Moore Affidavit, ¶ 16).

30.     In September 1999, the plaintiff received a satisfactory service rating for the 1998–99 period. The plaintiff's Social Worker Supervisor at the time and who prepared the service rating was Andrea Chamberlain, a black female. (Ex. 2, Moore Affidavit, ¶ 17; Ex. 11, Service Rating dated 9/28/99).

31.     After James Moore was transferred to the Manchester office, he had no dealings with the plaintiff. He had absolutely no involvement in the agency's decision to terminate the plaintiff for misconduct. (Ex. 2, Moore Affidavit, ¶ 18; Ex. 1, pp. 23:20-24:3).

32.     According to Mr. Moore, it was his experience as a Program Supervisor that black female social workers were promoted to the position of Social Worker Supervisor.

5

For instance, Andrea Chamberlain is a black female who was promoted to a Social Worker Supervisor in the New Britain Investigations unit. (Ex. 2, Moore Affidavit, ¶ 17).

33.    James Moore never took any type of adverse action against the plaintiff during the time he served as Program Supervisor in charge of investigations for New Britain cases. (Ex. 2, Moore Affidavit, ¶ 20).

34.    Throughout the time that James Moore supervised the social workers conducting New Britain Investigations, the plaintiff never received an unsatisfactory service rating. (Ex. 2, Moore Affidavit, ¶ 21).

35.    James Moore never instructed David Melchionne to rate the plaintiff's service rating as "unsatisfactory." (Ex. 2, Moore Affidavit, ¶ 22; Exhibits 9 and 10).

36.    To his knowledge, during the 1997-1999 time period that James Moore served as the Program Supervisor for the New Britain Investigations unit, the plaintiff never applied for a promotion. (Ex. 2, Moore Affidavit, ¶ 23).

37.    In September 2000, the plaintiff received a good service rating from her supervisor, who at that time was Isabel LaLuz, MSW. (Ex. 12, Service Rating, dated 9/30/00).

38.    In December 2000, the plaintiff was placed on paid administrative leave pending an investigation into allegations that she failed to complete an investigation and had falsified DCF records. (Ex. 13, Letter to Irene Cohen from Leticia Lacomba, dated 12/13/00; Ex. 1, pp. 51:20-52:25).

39.    After the completion of the investigation, the plaintiff was terminated on March 13, 2001 for falsifying records. The plaintiff grieved her dismissal and an independent

6

arbitrator upheld the termination. (Ex. 14, Arbitration Award. Dated 9/3/02; Ex. 1, pp. 46:20-48:15).

40.   At the time the plaintiff was terminated she was not under the supervision of either James Moore or Janet Labelle. (Ex. 1, pp. 45:18-46:16).

41.   Plaintiff stated in her deposition that she applied for promotions in 1995, 1996 and possibly 1997, but was denied because her evaluations were mediocre, but does not make any claim against DCF supervisors Susan Hamilton and Sherry Rauthenberg who prepared the evaluations. (Ex. 1, pp. 32:23-34:16; p. 40:4-11; p. 56:10-15).

42.   During the time the plaintiff worked under the supervision of Janet Labelle in the DCF Rockville office and then in the Hartford office under James Moore, she maintained the same job title, duties, wages and benefits. She was never suspended or disciplined in any manner that affected her wages or job duties. (Ex. 1, p. 63:10-65:12).

43.   Other than allegedly instructing David Melchionne to change her service rating, the plaintiff does not claim that defendant James Moore did anything discriminatory towards her. (Ex. 1, pp. 55:24-56:7).

                DEFENDANTS

                RICHARD BLUMENTHAL
                ATTORNEY GENERAL

BY: _____
       Joseph A. Jordano
       Assistant Attorney General
       Federal Bar # ct21487
       55 Elm Street, P.O. Box 120
       Hartford, CT 06141-0120
       Tel: 860-808-5340
       Fax: 860-808-5383
       Email: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

The undersigned hereby certifies that on the 12th day of December, 2005, a true and accurate copy of the foregoing was sent by United States mail, first class postage prepaid, to the following:

Francis A. Miniter, Esq.
Miniter & Associates
100 Wells Street, Suite 1-D
Hartford, CT  06103

_____
Joseph A. Jordano
Assistant Attorney General