UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN WILLIAMS, ET AL., | : | CASE NO. 3:01CV1398 (JGM) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTINE RAGAGLIA, ET AL., | : | |
| *Defendants*. | : | APRIL 11, 2006 |

MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGEMENT AS
TO PLAINTIFF  PATRICIA WILLIANSON

INTRODUCTION

The plaintiff, Patricia Williamson, is employed as a social worker by the State of

Connecticut, Department of Children and Families ("DCF").  She alleges in her

complaint that she was wrongfully denied a promotion to the level of Social Worker

Supervisor because of her race in violation of 42 U.S.C. § 1981 and 1983. Although she

did not identify any individual defendants in her complaint, in her discovery responses

and deposition she states that defendants Wanda Estrella and Kristine Ragaglia are the

alleged wrongdoers who violated her rights. There is also a state law claim against the

same individual defendants for intentional infliction of emotional distress.  The plaintiff

has no claim against her former employer under Title VII because she has never

produced, nor does she allege, that she has obtained a right to sue letter from the EEOC.

The evidence will show that neither defendants, Ms. Estrella nor Ms. Ragaglia

had any involvement in the denial of the plaintiff's request for a promotion. The plaintiff admits, and both defendants confirm, that they were not involved in the selection process for social worker supervisor positions with the DCF regions.

What makes this case stand out is the plaintiff's own admissions that refute her claim. For instance, the plaintiff admits that in most instances (she estimates between 5-15 times but could give no details)[1] she was interviewed by panels in different DCF regions. She does not know who else was interviewed. According to Williamson, the selection of the final candidate is based upon the person's resume, experience, interview and other factors because there is a subjective element to the process. The job specific panels that interviewed the plaintiff for positions within DCF were made up of white, black and Hispanic employees. During her deposition, the plaintiff could point to no specific employees who were promoted over her to support her allegation that she was wrongfully denied promotion because of her race or gender. Last, she has no evidence that defendants Ragaglia or Estrella were in any way involved in or influenced her efforts to get promoted.

FACTS

The plaintiff, Patricia Williamson is a social worker employed by the Department of Children and Families ("DCF") in its New Haven Region office. (Facts, ¶ 1). She claims that she was denied a promotion to social work supervisor because of her race and gender. (Facts, ¶ 2).

---

[1] Defendant does not accept the plaintiff's estimate because of its range and the lack of any corroboration by the plaintiff.

In order to become eligible for social worker supervisor position an employee must have successfully passed a test and be on the approved Department of Administrative Services ("DAS") list before he/she can apply for a social worker supervisor position. However, being on the DAS list does not guaranteed an interview or a promotion. When a Social Worker Supervisor position is posted, an interview panel of DCF employees is created. Depending on the number of candidates on the approved list, the review panel can screen applicants to narrow the candidate pool for interviews. Since all social worker supervisor candidates come from the DAS certified list, a critical part of the process is the interview. The interview allows the panel to assess non-tangible attributes such as poise, communication skills, enthusiasm, professionalism, etc. (Facts, ¶'s 4-9). The plaintiff acknowledges that there is a subjective element to the DCF job selection process. (Facts, ¶ 12). In some instances, experience can be substituted for an advanced degree, but most Social Worker Supervisors have an MSW. (Facts, ¶ 10).

As the Commissioner of the Department of Children and Families ("DCF"), Kristine Ragaglia was not involved in the interview process for social worker or social work supervisor positions. The same is true for the DCF Director of Human Resources, Wanda Estrella. Neither defendant has served on interview panels for the social worker supervisor position. The actual promotion decisions are handled by the DCF regional staff. (Facts, ¶'s 13-16).

PLAINTIFF'S APPLICATION HISTORY

The plaintiff claims to have applied and been interviewed for a Social Worker Supervisor position between 5 and 15 times, the last being in 2000. (Facts, ¶ 18).

3

However, she provided no specifics about her applications during discovery. DCF records do show that the plaintiff applied for Social Worker Supervisor positions on several occasions both within the New Haven region and elsewhere. (Facts, ¶'s 17-18). Although she is unaware of who else applied for the positions she was interested in, the plaintiff admits to being interviewed several times. (Facts, ¶ 20-22).

A review of the records for the DCF Human Resources Department reveal that Ms. Williamson applied for a social worker supervisor position in the New Haven office in September 1999 and was interviewed. She was not chosen because the panel thought that she needed to improve her written communication skills. The two individuals selected for social worker supervisor positions, Tawanda Grey and Stephanie Bowens, **are both African-American females.** Tawanda Grey was selected by the interview panel because she had "considerable knowledge of policies and procedures; extensive CPS (child protective services) experience; interpersonal experience and an MSW." Stephanie Bowens was selected by the same interview panel for the similar reasons. She also had an MSW degree. (Facts, ¶'s 22-25). The interview panel which selected Ms. Grey and Ms. Bowens included Qadry Harris, an African-American male program supervisor, and Nancy Colberg-Perez, a Hispanic female. (Facts, ¶ 26).

In August 1999, Ms. Williamson applied for a social worker supervisor position in the DCF Meriden office. She was one of 83 applicants. The plaintiff was not interviewed for the position because she did not respond to a registered letter from DCF regarding the position and DCF concluded that she was no longer interested. The plaintiff was among 57 employees who did not respond to the DCF letter. (Facts, ¶ 27).

In March 2000, the plaintiff was interviewed but not selected for a social worker supervisor position in New Haven because she did not have extensive experience in child protective services and her service ratings were not excellent. The interview panel in New Haven selected a white female named Nicole Roy because she had excellent evaluations, an MSW degree, outstanding academic background credentials, independent recommendations from the region and extensive experience in protective service experience. (Facts, ¶'s 28-29)

In June 2001, Ms. Williamson was interviewed for a position in New Haven but was not chosen because of the lack of current Child Protection Services experience and poor writing skills. A white male and Hispanic female were selected for those positions. For the New Haven positions in 2001, the white male and Hispanic female selected by the panel both had MSW degrees and child protective work experience. (Facts, ¶'s 30-31). All of the successful candidates selected for the positions outlined above had MSW degrees. (Facts, ¶ 58).

The plaintiff was never interviewed by a panel that included Wanda Estrella or Kristine Ragaglia. Neither of these two defendants had any involvement in the selection process for Social Worker Supervisors. The plaintiff admits that she has absolutely no information that defendants Estrella or Ragaglia were ever involved in her application for a Social Worker Supervisor position. The only reason the plaintiff gives for identifying Wanda Estrella as a defendant is because "decisions are made through her because she's the director [of Human Resources]." (Facts, ¶'s 32-33, 35-38)

Despite the plaintiff's allegations that she was denied promotion because of her race or gender, she admits to many facts showing that during the time period when the plaintiff applied for social work supervisor positions, other minority applicants received promotions to Social Worker Supervisor. The plaintiff acknowledges that Tawanda Grey, an African-American female, was promoted to social worker supervisor. The plaintiff is also aware that Denise Starks and Dolly Fuller, also African-American females, received promotions. DCF employees of Hispanic descent were also promoted to social worker supervisor according to the plaintiff. (Facts, ¶'s 39-42, 45).

In paragraph 75 of the Third Amended Complaint, dated December 16, 2002, the plaintiff alleges that: "Plaintiff Williamson has been wrongfully denied promotion when other non-African American individuals without MSW degrees have been promoted." However, when asked during her deposition for information about this allegations, she admitted to having no names of employees to support her allegation in paragraph 75 of the Third Amended Complaint. (Facts, ¶'s 43-44). The plaintiff deposition was continued to give her time to think of information in response to counsel's inquiry about similarly situated employee to whom the plaintiff compares herself, but the plaintiff has never produced the names of any DCF employees. Her answers to interrogatories simply recite general conclusory statement to the affect that black females like herself have been discriminated against. (Facts, ¶ 59).

### STANDARD OF REVIEW

A motion for summary judgment is granted when there is no genuine issue or dispute as to any material fact and it is clear that the moving party is entitled to judgment

as a matter of law.  Celotex Corp.v. Catrett, 477 U.S. 317, 322 (1986); Larkin v. Town of West Hartford, 891 F. Supp. 719, 723 (D. Conn. 1995), aff'd w/o opinion 101 F.3d 109 (2d Cir. 1996).  A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   The moving party need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Beckman v. U.S. Postal, 79 F. Supp. 2d 394, 399 (S.D.N.Y. 2000).  The movant's burden is satisfied if it can point to an absence of evidence to support an essential element of the non-moving party's claim.  Goenega v. March of Dimes, 51 F.3d 14, 18 (2d Cir. 1995) citing Celotex, 477 U.S. at 322-23; Jancewicz v. SNET, 54 F. Supp. 2d 134, 135 (D. Conn. 1999).  "Summary judgment must be entered against 'a party who fails…to establish the existence of an element essential to [its] case, and on which it will bear the burden of proof at trial.'"  Larkin, 891 F. Supp. at 723, quoting Celotex, 477 U.S. at 322.  The non-moving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact.  Celotex Corp., 477 U.S. at 327; Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). Or as stated elsewhere, the non-moving party must provide "concrete evidence upon which a reasonable juror could return a verdict in his favor."  Anderson 477 U.S. at 256 (emphasis added); see also Gordon v. Fenniman, 1998 WL 126062 (S.D.N.Y. 1998); Dister v. Continental Group, 859 F.2d 1108, 1114, 1116 (2d Cir. 1988) quoting Anderson, 477 U.S. at 247.

Rule 56(c) "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment:  the requirement is there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48.

The District of Connecticut has held:

> In deciding whether there is a genuine issue of material fact, the court must draw all reasonable inferences in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed2d 202 (1986).  Not every factual dispute will defeat a motion for summary judgment; a factual issue must be both "genuine" and "material."  Id. at 247-48, 106 S. Ct. at 2509-10 (emphasis omitted).  A factual issue is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Id. at 248, 106 S. Ct. at 2510.  A factual issue is not "material" unless it "might affect the outcome of the suit under the governing law."  Id.

Larkin, 891 F. Supp. at 723-24.

To defeat the motion, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A party may not 'rely on mere speculation or conjecture as to the true nature of facts to overcome a motion for summary judgment.'"  McCloskey v. Union Carbide Corp., 815 F. Supp. 78, 81 (D. Conn. 1993) quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) cert. denied, 480 U.S. 932 (1987).  The "party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial….To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."  Meri v. Dacon, 759 F.2d 989, 998 (2d Cir.) cert.

denied, 474 U.S. 829 (1985).  Accord, D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence.")  Mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleading motion.  Lamontagne v. E.I. Dupont de Nemours & Co., 834 F. Supp. 575, 580 (D. Conn. 1993), aff'd 41 F.3d 846 (2d Cir. 1994).  Summary judgment is appropriate where the "plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

The United States Supreme Court has stated that summary judgment is a favored remedy:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather…must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate…, prior to trial, that the claims and defenses have no factual basis.

Celotex Corp., 477 U.S. at 327 (emphasis added.)

## ARGUMENTS

**THE PLAINTIFF CANNOT PROVE A CONSTITUTIONAL CLAIM PREMISED ON A VIOLATION OF HER RIGHT TO EQUAL PROTECTION**

As the court is well aware, Section 1983 does not create any new substantive rights, but merely provides a federal cause of action for the violation of certain federal rights. M. H. By, Through and With His Parents and Next Friends, Mr. And Mrs. H. v. Bristol Board of Education, 169 F. Supp. 21 (D. Conn. 2001); Mrs. W. v. Tirozzi, 832 F.2d 748, 754 (2d Cir. 1987). In order to prove violation of her Fourteenth Amendment right to equal protection under the law, the plaintiff must prove the following elements: (1) she, as compared with other similarly situated individuals, was selectively treated; and (2) this selective treatment was motivated by an intention to discriminate based on impermissible considerations such as race or by a malicious or bad faith intent to injure the person. Muller v. Costello, 187 F.3d 298, 309 (2d Cir. 1999); Page v. Connecticut Department of Public Safety, 185 F. Supp.2d 149 (D. Conn. 2002).  "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  Village of Arlington Heights v. Metropolitan Housing Authority, 429 U.S. 256, 265, 97 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); Patterson v. County of Oneida, 375 F.3d 206 (2d Cir. 2004).  In order to prove a prima facie case of race or gender  discrimination that violates equal protection, plaintiff Williamson must demonstrate that she was treated differently from other similarly situated employees *because of her race or gender*. See,

Annis v. County of Westchester, 136 F.3d 239, 245 (2nd Cir. 1998), citing Sims v.

Mulchay, 902 F.2d  524, 539 (7th Cir. 1990).  As the Supreme Court has stated:

> The requirement of discriminatory intent or purpose  "... implies that the decision
> maker, . . . Selected or reaffirmed a particular course of action at least in part
> 'because,' not merely 'in spite of' its adverse effects . . . upon a member of a
> protected group."

Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282,

2296, 60 L.Ed.2d 870 (1979).

Additionally, as part of her burden of proof to establish a Section 1983 violation

of her constitutional right to equal protection, the plaintiff must also prove that the

**defendants** "caused" the deprivation of her rights.  Taylor v.  Brentwood Union Free

School District, el al., 143 F.3d 679 (2d Cir 1998), citing Martinez v. California, 444 U.S.

277, 285, 100 S. Ct. 553, 62 L.Ed.2d 481(1980).

In the present case, the plaintiff cannot show that defendants Estrella and

Ragaglia took any type of adverse action against her, much less intentionally violated her

constitutional rights by treating her differently than similarly treated employees

BECAUSE of her race or gender.

Regarding her claim, the plaintiff readily admits that she was interviewed for

various Social Worker Supervisor positions with DCF by multi-racial interview panels.

She can point to no specific instance in which she was denied a position because of her

race or gender. The plaintiff has never provided any information through discovery

identifying which DCF employees were similarly situated to her and the circumstances of

her denial.[2] More telling is the plaintiff's own admission that other black female social workers were promoted by DCF. The plaintiff also concedes that her inclusion on the DAS certified list does not entitle her to a promotion.

The DCF Director of Human Resources, Wanda Estrella, points out in her affidavit that the DAS approved list is a starting point. From there, each candidate is evaluated based on their credentials, service ratings and personal interview.   According to Ms. Estrella,  the interview is critical because it allows the interview panel to assess non-tangible factors that would not contained on a resume or service rating. (See Estrella Affidavit, Exhibit 2, ¶ 7).

For each instance when DCF has identified a particular position for which the plaintiff applied, DCF has articulated a legitimate non-discriminatory reason for the selection of a different candidate.[3]  With respect to the four instances, two black females, one white male, one white female and one Hispanic female were promoted. Furthermore, there is, and will be, no evidence that defendants Estrella and Ragaglia were in any way involved in the plaintiff's application for a Social Worker Supervisor position.

There is simply no evidence from which to draw an inference that the plaintiff was denied a promotion because of her race or gender.

---

[2]   Plaintiff conducted no depositions and minimal discovery. She requested no specific information about her applications for promotion and no data about specific job for which she applied. In fact, the plaintiff has never provided information about what specific positions she was wrongfully denied. She simply asserts in her discovery responses that black females such as her have been denied promotion.

[3]   A reference is made to DCF as the employer who made the decision regarding promotions based on decisions made in the regional offices.

**THE PLAINTIFF'S CLAIM AGAINST THE INDIVIDUAL DEFENDANTS FAILS FOR A LACK OF PERSONAL INVOLVEMENT.**

In the present case, the defendants ask the court to pay particular attention to the personal involvement requirement under Section 1983 because the plaintiff cannot carry her burden of proof showing sufficient personal involvement by defendants Kristine Ragaglia and Wanda Estrella.

In order to establish the individual liability of a defendant in his/her individual capacity under § 1983, the plaintiff is required to show the personal involvement of the defendant in the denial of equal protection. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Estate of Walker v. City of Bridgeport, 676 F. Supp. 442, 446 (1986); Bapat v. Ct. Dept. Of Health Services, 815 F. Supp. 525 (D.Conn.1992). In order to establish personal involvement, the plaintiff is required to prove that the defendant (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering violation or allowed the custom or policy to continue after learning of it; or (4) deliberate indifference to known constitutional violations. Provost v. City of Newburgh, 262 F.3d 146, 154-55 (2d Cir. 2001). A plaintiff must thus allege and prove a tangible connection between the acts of the defendant and the injuries suffered. Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986).

Consistent with the requirement that personal involvement is required for a claim under § 1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under § 1983. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95 (1978). An official cannot be held liable merely

because he or she occupies a high position in the government agency hierarchy.  Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).  It is well settled law that individual liability cannot be founded on their official position alone.  Horowitz v. Anker, 437 F. Supp. 495, 504 (E.D.N.Y. 1977), aff'd mem. 578 F.2d 1368 (2d Cir. 1978); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.), cert. denied, 434 U.S. 1087 (1977); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).

The plaintiff has no evidence that either defendants Ragaglia or Estrella  were personally involved in an alleged violation of her constitutional rights. Much to the contrary, the plaintiff admits to having NO EVIDENCE linking these defendants to any improper intentional  conduct.  (Facts, ¶'s 35-38)

Although the plaintiff claims that white employees were promoted over her, to impute liability for discriminatory conduct to defendants Ragaglia or Estrella, the plaintiff must show actual personal involvement or one of the following: (a) failure to take corrective action after learning of a subordinate's unlawful conduct; (b) creation of a policy or custom fostering the unlawful conduct; (c) gross negligence in supervising subordinates who commit unlawful acts; and (d) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct. Hayut v. State University of New York, 352 F.3d 733, 753 (2d Cir. 2003).

In Hayut, the plaintiff, at student at SUNY, brought a section 1983 action against several officials from SUNY alleging sexual harassment by an instructor upon a female student. He offered no evidence showing direct personal involvement by the defendants in the alleged unlawful discrimination. Instead, he argued on summary judgment by

14

simply asserting that sex discrimination "was rampant" and that the defendants "knew or should have known about many instances of instructors . . . who exhibited bizarre, disturbing, harassing and discriminatory behavior." Id. at 753.   Rejecting this argument because the evidence amounted to the plaintiff's unfounded conclusory assertions, the Court of Appeals court affirmed the summary judgment.

The same logic applies to the current action. The plaintiff's basic argument is that the culture at DCF is that black females do not get promoted. (Ex. 11, p. 14).  However, two factors disprove this claim. First, she provided no evidence in response to discovery to substantiate this claim that these particular defendants were aware of any discriminatory acts by subordinates.  Second, the plaintiff's admission to the promotion of several black females within the New Haven region where the plaintiff is employed is prima facie evidence that black females were promoted by DCF.  Plaintiff identified three black females, Tawanda Grey, Denise Starks and Dolly Fuller, all of whom were promoted to Social Worker Supervisor.  (Facts, ¶'s 40-41)  She also admitted to Hispanic and white males and females being promoted. (Facts, ¶ 42)

Furthermore, any argument at this late juncture suggesting a pattern and practice is equally unavailing because sporadic acts over several years are not sufficient to establish a policy or custom. EEOC v. McDonnell Douglas Corp., 191 F.3d 948 (8th Cir. 1999)(pattern and practice requires that employer "regularly and purposefully" treated members of protected class less favorably and that unlawful discrimination was the employer's "regular procedure and policy." Sporadic acts are insufficient.).  Under such a

theory, a plaintiff must prove that the defendants were aware of an illegal custom or practice.  <u>Gaston v. Couglin</u>, 249 F.3d 156, 165-66 (2d Cir. 2001).

In sum, there is no evidence that the plaintiff suffered a constitutional deprivation that can be imputed to defendants Ragaglia and Estrella.

**THE PLAINTIFF'S SECTION 1981 CLAIM FAILS BECAUSE SECTION 1983 IS THE EXCLUSIVE FEDERAL REMEDY FOR THE ALLEGED VIOLATION OF HIS CONSTITUTIONAL RIGHTS.**

Section 1981 provides, in relevant part,

> All persons within the jurisdiction of the United States shall have the same right ... To make and enforce contracts, ... And to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by **white citizens** ...

42 U.S.C. § 1981 (emphasis added).

The plaintiff has sued the defendants in their individual capacities for a violation of her rights guaranteed by Section 1981.  However, since the plaintiff's claims involve a "state actor," the District Court must conclude that the plaintiff's exclusive remedy lies in her action under 42 U.S.C. § 1983.  The rule of law was first set out by the Supreme Court in the case of  <u>Jett v. Dallas Independent School District</u>,  491 U.S. 701, 109 S. Ct. 2702, 105 L.Ed.2d 598 (1989).  In <u>Jett</u>, the Supreme Court examined the relationship between Section § 1983 and § 1981.  Concluding that in enacting Section 1983 Congress intended that it was enacting the exclusive remedy against state actors for the violation of constitutional rights, the Court stated:

> The historical evidence surrounding the revisions of 1874 further indicates that Congress thought that the declaration of rights in § 1981 would be enforced against state actors through the remedial provisions of § 1983.

Id. at 733-34.

As the district court noted in its opinion in 1991, Congress amended section 1981 to include a provision that reads: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Subsequently, plaintiffs have argued unsuccessfully to other Circuit Courts that the amendment to § 1981 overruled Jett. However, the Fourth, Fifth, Eighth and Eleventh Circuits have concluded that the amendment to section 1981 did not change the rule set forth in the Jett case. After examining the legislative history of the amendment, these circuits concluded that the purpose of the amendment was to clarify that Section 1981 applies to nongovernmental entities, not to reverse or alter the holding in Jett. See, Oden v. Oktibbeha County, 246 F.3d 458 (5th Cir. 2001); Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000); Dennis v. County of Fairfax, 55 F.3d 151, 156 n. 1 (4th Cir. 1995); Cerrato v. San Francisco Community College Dist., 26 F.3d 968 (9th Cir. 1994); Williams v. Little Rock Mun. Water Works, 21 F.3d 218 (8th Cir. 1994).

In Felton v. Polles, 315 F.3d 470 (5th Cir. 2002), the Fifth Circuit determined that the rule set out by the Supreme Court in Jett equally applies to state officials sued in their individual capacity. In so holding, the Fifth Circuit reasoned that the Supreme Court did not make a distinction between state entities and individuals acting pursuant to color of state law. Following the sound reasoning of the court in Felton, the district court concluded that the plaintiff could not maintain a § 1981 action.

**PLAINTIFF'S § 1981 CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Even if this court were to find that the plaintiff has standing to sue under § 1981, there is yet an additional basis to reject the plaintiff's § 1981 claim, namely her claim fails to state a claim upon which relief can be granted. To state a claim under § 1981, a plaintiff must allege and prove: (1) [that she] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) [that] the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.). Mian v. Donaldson, Lufkin & Jenrette Sec., Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). A section 1981 action must allege "that the defendants' act were purposefully discriminatory ... and racially motivated." Albert v. Carovano, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc)(citations omitted). As discussed in this brief, the plaintiff can put forth no evidence that defendants Ragaglia and Estrella acted towards her in a discriminatory manner because of her race. Abramowitz v. Inta-Boro Acres, Inc., 1999 U.S. Dist. LEXIS 2005 (E.D.N.Y. 1999).

In this Circuit, complaints relying on civil rights statutes are insufficient if they merely include a "litany of general conclusions ..." Hall v. Dworkin, 829 F. Supp. 1403, 1412 (N.D.N.Y. 1993)(citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987). Cf. Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978)("a complaint consisting of nothing more than naked assertions fails to state a claim"). Instead, "on a claim under § 1981, a plaintiff must show both that she was subjected to intentional discrimination, and that this discrimination interfered with a contractual

relationship." <u>Krulik v. Board of Educ. of City of New York</u>, 781 F. 2d 15, 23 (2d Cir. 1986)(internal citations omitted).

### THE DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON PLAINTIFF'S STATE LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

It is well settled that, in order to state a claim of intentional infliction of emotional distress, "[i]t must be shown:  (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe."   <u>Petyan v. Ellis,</u> 200 Conn. 243, 253-54 (1986). "Liability for intentional infliction of emotional distress has been found only where conduct exceeds all bounds usually tolerated by decent society and is so outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind." <u>DeLaurentis v. New Haven</u>, 220 Conn. 225, 267 (1991). "The issue of whether a defendant's conduct is extreme and outrageous is a question to be determined by the court in the first instance."   Only where reasonable minds can differ does the question become an issue fort he jury to decide.  <u>Petyan v. Ellis</u>, 200 Conn. at 243.

In the recent case of <u>Majewski v. Bridgeport Board of Education</u>, 11 Conn. Ops. 230 (February 2005), the plaintiff alleged that she was harassed at work and suffered emotional distress.  The type of acts she complained of included such things as being

hugged and kissed, being questioned about her sexual orientation, being removed as the "teacher in charge" which forced her to resign as a union representative,  and being called a "pompous arrogant bitch."  The defendants move to dismiss the claim of intentional infliction of emotional distress. The court agreed, finding that the alleged acts did not meet the standard to prove intentional infliction of emotional distress.

In the present case, there were no acts by any of the individual defendants that could remotely rise to the level required by Connecticut law.  There are no allegations or evidence that Kristine Ragaglia or Wanda Estrella did anything egregious towards the plaintiff.

## CONCLUSION

For all of the above reasons, the defendants' motion for summary judgment should be granted in its entirety.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
email: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

The undersigned hereby certifies that on the 11th day of April, 2006, a true and

accurate copy of the foregoing was sent by United States mail, first class postage prepaid,

to the following:

Francis A. Miniter, Esq.
Miniter & Associates
100 Wells Street, Suite 1-D
Hartford, CT  06103


_____
Joseph A. Jordano
Assistant Attorney General