# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN WILLIAMS, ET AL., | : | CASE NO. 3:01CV1398 (JGM) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTINE RAGAGLIA, ET AL., | : | |
| *Defendants*. | : | January 31, 2007 |

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGEMENT AS
## <u>TO PLAINTIFF  ALICE HOOD</u>

### INTRODUCTION

The plaintiff, Alice Hood, is a former employee of the State of Connecticut, Department of Children and Families ("DCF").  The plaintiff was approved by the Medical Examining Board on March 18, 2005 for a disability retirement retroactive to February 1, 2003.  Her lawsuit alleges § 1981 and § 1983 actions against defendants Ada Sanchez, James Moore, Rudolph Brooks, Linda Harris, Tara Lewis, Leticia LaComba, Charles Frazier and Kristine Ragaglia.[1]  There is also a state law claim against Sanchez, Moore, Brooks, Harris, Lewis, Lacomba and Ragaglia for intentional infliction of emotional distress. The plaintiff does not allege a cause of action against her former employer under Title VII. [2]

---

[1]   In her response to interrogatories, from the 20 or so named defendants, the plaintiff identifies Ada Sanchez, James Moore, Rudy Brooks, Charles Frazier, Linda Harris, Tara Lewis and Donyle Pina as individuals who allegedly committed discriminatory acts. The plaintiff does not identify any wrongful acts by defendants Kristine Ragaglia or Leticia Lacomba, who are apparently named as a nominal defendants, though sued personally. Mr. Frazier and Ms. Pina are NOT named defendants in this case.

[2]   Count 33 of the Third Amended Complaint set forth a claim by all the plaintiff against DCF under Title VII for a pattern and practice of disciplining black male employees, which does not on its face to apply to this black **female** social worker.

As the court discerns the facts in this case, it is critical that it recognize that all of the plaintiff's alleged adverse treatment are discrete acts spanning several years and involving different actors. More troublesome is the plaintiff's failure during her deposition to identify specific similarly situated employees to whom she can compare herself. As with the others cases already ruled on by the court in this amalgamated case, this plaintiff's case is litany of hollow allegations that are not provable. As will be discussed in greater detail below, many of the plaintiff's alleged claims are barred by the applicable statute of limitations.

**FACTS**

The plaintiff, Alice Hood, first became employed by the then Department of Children and Youth Services, now known as the Department of Children and Families effective July 23, 1993 (Facts, ¶ 2). After completing her probationary period and training, she was assigned to the Region 4 (Hartford) DCF Investigations unit. (Facts, ¶ 3). She was supervised in progression by several social supervisors. From 1994-1996 the plaintiff was supervised by Social Worker Supervisor, Ada Sanchez. For six months in 1996 to 1997, plaintiff was supervised by Social Worker Supervisor James Moore. From approximately 1997 to 1999, plaintiff was supervised by Social Worker Supervisor, Charles Wiggins. Duckworth Grange then took over from Wiggins from 1999 to 2000. Following Wiggins, Plaintiff was supervised by Social Worker Supervisor, Tara Lewis for the period 2000 to sometime 2001. (Facts, ¶¶ 4, 8-11)

From sometime in 2001 to October 2001, plaintiff was supervised by Social Worker Supervisor, Donyale Pina. (Facts, ¶ 12). In 2001, plaintiff was having difficulty

meeting deadlines in the investigations unit. To alleviate the pressure of certain deadlines, plaintiff was reassigned to the DCF Probate unit in Region 4 by Program Supervisor Linda Harris (a black female) in October 2001.  Plaintiff was reassigned in the same capacity with no reduction in pay, status, job duties or benefits. Another black female was also reassigned to the probate unit at the same time. (Facts, ¶¶ 65-66)

Hood took medical retirement from the State of Connecticut on or about January 17, 2003 (Facts, ¶ 71).

**Rumors in 1994-96**

The plaintiff testified that her supervisor from 1994-96 was Ada Sanchez. Among the alleged adverse actions she suffered, plaintiff claims that Ms. Sanchez spread rumors that the plaintiff was not really hurt.  The plaintiff admitted that she didn't think the comments made by Sanchez were because of her race; only that Sanchez was expressing her opinion to those who did not get along with Hood. (Facts, ¶¶ 4, 13-14)

**1995 Supervisor Test**

According to the plaintiff, in March 1995 she was denied an opportunity to take a test to be a Department of Children & Families supervisor.  She testified that Phil Obergon, informed her that she was not eligible for the examination. The plaintiff was notified by letter dated March 13, 1995 that she would not sit for the Social Worker Supervisor examination because she did not possess the minimum experience and training required for admittance to the examination. The plaintiff testified that none of her supervisors, and none of the named defendants, denied her opportunity to take the test to be a DCF supervisor. (Facts, ¶¶ 17-19)   The plaintiff was denied entrance to the Social

Worker Supervisor examination by the Department of Administrative Services (Facts, ¶ 20).

The plaintiff suffered a work-related injury in April 1995. She was out of work for more than a week. The plaintiff testified that she applied for Workers' Compensation and that she was paid. (Facts, ¶ 5) The plaintiff suffered a second work related injury in October 1995 and was out of work for approximately six months. The plaintiff put in for Workers' Compensation related to the October 1995 injury and was paid. (Facts, ¶¶ 6-7).

**1996 Threatened Termination**

The plaintiff claims that a supervisor, Charles Frazier, threatened to fire her in July 1996 when she returned from a work related injury because she was unable to lift a child who was designated for removal from his/her home. Mr. Frazier is not a named defendant in this action. (Facts, ¶¶ 27-28) The plaintiff testified that among her job duties was a requirement to be able to lift a child. The plaintiff did not request an accommodation regarding the requirement that she be able to lift a child as part of her job duties. (Facts, ¶ 29-30).

**1996 - Supervision by James Moore**

The plaintiff's disparate claim is based in part upon her allegation that when James Moore was her supervisor in 1996, he did not have conferences with her like he held with other employees. However, the plaintiff testified that she didn't know if Moore met "regularly" with the others in his unit. The plaintiff testified that she assumed that Moore met with the others in his unit regularly. The plaintiff testified that she has no evidence that Moore met with others in his unit but "knows it for a fact." The plaintiff did not file a complaint regarding Moore's failure to meet with her. Hood admitted that it

is a fair statement that other than not meeting with her, Mr. Moore took no adverse employment action against her. (Facts, ¶¶ 34-39)

The plaintiff testified that it is a fair statement that DCF did not want someone in the position she was holding because of her prolonged absences due to work-related injuries. Hood testified that Frazier offered to move her to the specialty unit working on newborns rather than sexual abuse and serious injury matters.  Her supervisor would have been a Judy Levy.  The plaintiff admitted she declined this offer. (Facts, ¶¶ 30-32).

**1999-2000 Alleged Sexual Touching**

Defendant Tara Lewis previously was a supervisor in the Special Investigations Unit that dealt with severe physical abuse, severe neglect and child fatality cases. Ms. Lewis supervised the plaintiff off and on for approximately two years in the approximate period of 1999 and 2000.  The plaintiff contends that defendant Tara Lewis touched her breasts on more than one occasion.  However, the plaintiff testified that she did not notify DCF management regarding any inappropriate action by Ms. Lewis.  She testified that she only told co-workers.  Ms. Lewis denies under oath that she ever touched Hood inappropriately and declares that allegation is flatly false. At no time did Ms. Hood ever come to Ms. Lewis and tell her that she had touched her inappropriately.  Defendant Tara Lewis is an African-American female. The plaintiff admitted that she never told management about anything that happened and she admitted that it is a fair statement that DCF management may not have known anything about any alleged inappropriate action by Ms. Lewis. (Facts, ¶¶ 43-47, 51-52).

During the period she was supervised by Lewis the plaintiff was out of work for extended periods of  time for medical reasons. Because of this reason, Ms. Lewis never

did a performance appraisal for the plaintiff. Ms. Lewis never took an adverse

employment action against Ms. Hood. (Facts, ¶¶ 48-49)

Other than the singular allegation of being inappropriately touched by defendant

Lewis, at no time did Ms. Lewis treat Ms. Hood differently than any other member of her

unit.  If anything, Ms. Lewis says she was more understanding with her than others based

upon her medical circumstances and didn't assign her cases that would take a lot of

overtime unless she consulted with her based on her medical condition. (Facts, ¶ 50)

**Ordered to Leave Building in 2001/Supervision by Lewis**

Hood's allegation  that Ms. Lewis ordered her to leave the building in October

2001 is a half truth. Ms. Hood attempted to return to work without a medical certificate

authorizing her to return to work.  Ms. Lewis consulted with the program supervisor,

Linda Harris, and only after the consultation requested that Ms. Hood only return after

she had the appropriate medical certificate clearing her to come back to work. (Facts, ¶¶

53-55).

The plaintiff complained that her work was unduly scrutinized by Lewis.  She

admitted that she is unaware if other people's work was similarly scrutinized. (Facts, ¶

58)

**Reassignment to Probate Unit 2001**

Defendant Linda Harris is an African-American female.  She is currently a

Program Supervisor with the Children's Trust Fund and has been in this position since

September 2004.  The Children's Trust Fund is an independent State of Connecticut

agency but for administrative purposes is affiliated with the Department of Children &

Families.  Prior to joining the Children's Trust  Fund, Ms. Harris was with DCF in

various Program Supervisor capacities for many years. She was a Program Supervisor for the Investigations unit from April 1997 until October 2001 and then was transferred to the Permanency Planning and Probate Unit with DCF from October 2001 until May 2003. Ms. Harris was the Program Supervisor during the time period relative to this action involving Alice Hood. (Facts, ¶¶ 59-62)

While Hood was in an investigations unit within the Child Protective Services bureau her direct supervisor in 2001 her supervisor was Donyale Pina. According to Mr. Harris, Ms. Pina reported that Ms. Hood's work performance, based in part on work-related injuries, was not up to the level required in the investigations unit. She was not performing her duties in a timely manner and her documentation of case-related activities was not complete and not timely. Hood was informed verbally by Ms. Harris that she was being transferred to the probate unit. The probate unit always needed people and it was felt that it would be a better fit for her in that the deadlines were not as stringent as in the investigations unit. (Facts, ¶¶ 63-65) Hood was transferred from the investigations unit at the same time another worker, who was also an African-American female, was transferred to another unit. The transfer of Ms. Hood had absolutely nothing to do with her race. It was a business decision based upon the need of the agency and to provide her an environment where she could better meet deadlines. (Facts, ¶¶ 66-67) The plaintiff was never suspended, terminated or demoted while with DCF. (Facts, ¶ 70).

## ARGUMENTS

**I.     PLAINTIFF'S CLAIMS AGAINST CHARLES FRAZIER THAT HE THREATENED TO FIRE HER FAILS BECAUSE HE IS NOT A NAMED DEFENDANT. FURTHER, SUCH A CLAIM IS TIME BARRED.**

Plaintiff's claim based on alleged conduct by Charles Frazier is not actionable because he is not a named defendant. Assuming arguendo that Charles Frazier somehow violated the plaintiff's rights in 1996 (Third Amended Complaint, ¶ 64), which the evidence refutes, there is no evidence that can impute his conduct to the named defendants. The evidence submitted in support of summary judgment defeat the plaintiff's claim against Mr. Frazier on the merits. Plaintiff admits that her job duties in 1996 included the need to lift small children. She could not perform this part of her job. Despite her inability to perform the required job duties and no request for an accommodation, the plaintiff was offered a different position in a unit dealing with infants that better fit her alleged medical restrictions, but plaintiff declined. According to the plaintiff, there is no evidence upon which a constitutional claim could be based.

Furthermore, the discrete act (threatening to fire her for her inability to safely lift and carry a child) that the plaintiff attributes to Frazier occurred in 1996, well beyond the three years statute of limitations under § 1983.  Langer v. Town of Trumbull, 34 Fed. Appx 816, 2002 U.S. App. LEXIS 9787 (2d Cir. 2002)(three-year statute of limitations applies to § 1983 actions).

**II.    ALL CLAIMS BASED UPON CONDUCT AGAINST INDIVIDUAL DEFENDANTS THAT OCCURRED BEFORE 1998 ARE TIME BARRED.**

Several of the plaintiff's claims against defendants Moore and Sanchez premised upon alleged poor supervision, rumors circulated within the agency and rejected request

to sit for a supervisory position examination in 1995 are time barred. In <u>Langer v. Town of Trumbull</u>, 34 Fed. Appx 816, 2002 U.S. App. LEXIS 9787 (2d Cir. 2002), the court of appeals reiterated that a three-year statute of limitations applies to § 1983 actions. That being the established law, the plaintiff's claims against defendant's Sanchez and Moore are time barred.

## III. THE PLAINTIFF CANNOT PROVE A CONSTITUTIONAL CLAIM PREMISED ON A VIOLATION OF HER RIGHT TO EQUAL PROTECTION

As the court is well aware, Section 1983 does not create any new substantive rights, but merely provides a federal cause of action for the violation of certain federal rights. <u>M. H. By, Through and With His Parents and Next Friends, Mr. And Mrs. H. v. Bristol Board of Education</u>, 169 F. Supp. 21 (D. Conn. 2001); <u>Mrs. W. v. Tirozzi</u>, 832 F.2d 748, 754 (2d Cir. 1987). In order to prove a violation of her Fourteenth Amendment right to equal protection under the law, the plaintiff must prove the following elements: (1) she, as compared with other similarly situated individuals, was selectively treated; and (2) this selective treatment was motivated by an <u>intention</u> to discriminate based on impermissible considerations such as race or by a malicious or bad faith intent to injure the person. <u>Muller v. Costello</u>, 187 F.3d 298, 309 (2d Cir. 1999); <u>Page v. Connecticut Department of Public Safety,</u> 185 F. Supp.2d 149 (D. Conn. 2002). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." <u>Village of Arlington Heights v. Metropolitan Housing Authority,</u> 429 U.S. 256, 265, 97 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); <u>Patterson v. County of Oneida</u>, 375 F.3d 206 (2d Cir. 2004). In order to prove a prima facie case of race discrimination that violates equal protection, Hood must demonstrate that she was treated differently from

9

other similarly situated employees *because of her race*. See, <u>Annis v. County of Westchester</u>, 136 F.3d 239, 245 (2d Cir. 1998), citing <u>Sims v. Mulchay</u>, 902 F.2d 524, 539 (7th Cir. 1990). As the Supreme Court has stated:

> The requirement of discriminatory intent or purpose "... implies that the decision maker, . . . Selected or reaffirmed a particular course of action at least in part 'because,' not merely 'in spite of' its adverse effects . . . upon a member of a protected group."

<u>Personnel Administrator of Massachusetts v. Feeney</u>, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).

Additionally, as part of her burden of proof to establish a Section 1983 violation of her constitutional right to equal protection, the plaintiff must also prove that the **defendants** "caused" the deprivation of her rights. <u>Taylor v. Brentwood Union Free School District, el al</u>., 143 F.3d 679 (2d Cir 1998), citing <u>Martinez v. California</u>, 444 U.S. 277, 285, 100 S. Ct. 553, 62 L.Ed.2d 481(1980).

In the present case, the plaintiff cannot show that any of the individual defendants in this case that Hood identifies in her pleading, Sanchez, Moore, Lewis and Harris, intentionally violated her constitutional rights by treating her differently than similarly treated employees BECAUSE of her race.

For instance, on her claim about being denied the opportunity to take a test to become a Social Worker Supervisor and that James Moore refused to meet with her for regular supervisory meetings in 1995 and 1997, these claims are barred by the three-year Statute of Limitations for Section 1983 and 1981 actions. The plaintiff's own testimony also refutes this claim. The initial complaint was filed on July 24, 2001 (Complaint, Doc. # 1). Even if there was an incident within the statutory period of limitations, nowhere in discovery did the plaintiff produce any written documents or information showing that

she was treated differently than similarly situated non-minority employees. When asked

in her deposition about her criticisms of defendant Moore's supervision, she stated:

> Q:     So, you're saying that me (sic) met regularly with everybody else
> but you.
>
> A.     Yes.
>
> Q.     How many people in your unit?
>
> A.     There were five members.
>
> Q.     And do you know why Mr. Moore didn't want to meet with you?
>
> A.     No.
>
> Q.     How many of the people in your unit were white or black in the
> five members that he had supervision?
>
> A.     Three were white, two were African-American and one was
> Hispanic.
>
> Q.     Did he meet with the other African American social worker
> regularly?
>
> A.     I don't know.
>
> Q.     How about the Hispanic social worker?
>
> A.     I don't know.
>
> Q.     So as you sit here today, you don't know if he met regularly with
> everybody or not?
>
> A.     I don't know. I don't know.
>
> Q.     You just know that he didn't meet with you?
>
> A.     Yes.
>
> Q.     You assume he met with everybody else regularly.
>
> A.     Yes.

Ex. 1, pp. 20:5-21:3)

The same defect pervades all of the plaintiff's claims. She has not identified any

evidence upon which a constitutional claim can be premised. Plaintiff admits that the

rumors allegedly spread by defendant Sanchez in 1994 were only Sanchez's personal opinion. That hardly rises to the level of constitutional claim.

Similarly, the plaintiff's allegations about being told to leave work in 2001 by defendant Lewis was, by Hood's own admission, based upon her failure to get the required medical certificate.

Lastly, plaintiff's constitutional claim premised upon her reassignment to the Probate Unit in 2001 includes no evidence that the stated reason for her change in assignment was because of her race. Ms. Harris, herself an African American female, refutes the plaintiff's allegations. Lost on the plaintiff is her burden of proving the prima facie elements of a case.

## IV.    THE PLAINTIFF'S CLAIM AGAINST THE INDIVIDUAL DEFENDANTS MOORE, BROOKS, LACOMBA AND RAGAGLIA FOR LACK PERSONAL INVOLVEMENT.

In her complaint, the plaintiff identifies several individual defendants who are not mentioned in her interrogatory answers that address the substance of her allegations. Nowhere has the plaintiff identifies any conduct attributed to these defendants, much less provided evidence that could conceivably prove a constitutional claim. The defendants ask the court to pay particular attention to the personal involvement requirement under Section 1983 for two reasons.  First, the plaintiff's allegations relating to alleged acts committed by Charles Frazier are barred because this person is not a named defendant. Second, the plaintiff cannot carry her burden of proof showing sufficient personal involvement by defendants James Moore, Rudolph Brooks, Leticia Lacomba and Kristine Ragaglia.

In order to establish the individual liability of a defendant in his/her individual capacity under § 1983, the plaintiff is required to show the personal involvement of the defendant in the denial of equal protection. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Estate of Walker v. City of Bridgeport, 676 F. Supp. 442, 446 (1986); Bapat v. Ct. Dept. Of Health Services, 815 F. Supp. 525 (D.Conn.1992).  In order to establish personal involvement, the plaintiff is required to prove that the defendant (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering violation or allowed the custom or policy to continue after learning of it; or (4) deliberate indifference to known constitutional violations. Provost v. City of Newburgh, 262 F.3d 146, 154-55 (2d Cir. 2001). A plaintiff must thus allege a tangible connection between the acts of the defendant and the injuries suffered.  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986).

Consistent with the requirement that personal involvement is required for a claim under § 1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under § 1983.   Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95 (1978).  An official cannot be held liable merely because he or she occupies a high position in the government agency hierarchy.  Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).  It is well settled law that individual liability cannot be founded on their official position alone.  Horowitz v. Anker, 437 F. Supp. 495, 504 (E.D.N.Y. 1977), aff'd mem. 578 F.2d 1368 (2d Cir. 1978); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.), cert. denied, 434 U.S. 1087 (1977); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).

The plaintiff has no evidence that either defendants Moore, Brooks, Lacomba or Ragaglia were personally involved in an alleged violation of her constitutional rights. Evidence linking these defendants to improper intentional conduct is lacking. The plaintiff did not identify any conduct by defendant's Brooks, Lacomba and Ragaglia.

Furthermore, any argument at this late juncture suggesting a pattern and practice is equally unavailing because sporadic acts over several years are not sufficient to establish and policy or custom. <u>EEOC v. McDonnell Douglas Corp</u>., 191 F.3d 948 (8th Cir. 1999)(pattern and practice requires that employer "regularly and purposefully" treated members of protected class less favorably and that unlawful discrimination was the employer's "regular procedure and policy." Sporadic acts are insufficient.). Under such a theory, a plaintiff must prove that the defendants were aware of an illegal custom or practice. <u>Gaston v. Couglin</u>, 249 F.3d 156, 165-66 (2d Cir. 2001).

In sum, there is no evidence that the plaintiff suffered a constitutional deprivation that can be imputed to defendants Moore, Brooks, Lacomba or Ragaglia.

**V.    THE PLAINTIFF'S SECTION 1981 CLAIM FAILS BECAUSE SECTION 1983 IS THE EXCLUSIVE FEDERAL REMEDY FOR THE ALLEGED VIOLATION OF HIS CONSTITUTIONAL RIGHTS.**

Section 1981 provides, in relevant part,

> All persons within the jurisdiction of the United States shall have the same right ... To make and enforce contracts, ... And to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by **white citizens** ...

42 U.S.C. § 1981 (emphasis added).

The plaintiff has sued the defendants Sanchez, Moore, Brooks, Harris, Lewis, Lacomba and Ragaglia in their individual capacities for a violation of her rights

guaranteed by Section 1981.  (Third Amended Complaint,  Count 15, p. 23) However, since the plaintiff's claims involve a "state actor,"  the District Court must conclude that the plaintiff's exclusive remedy lies in her action under 42 U.S.C. § 1983.  See Burbank v. Office of Atty. Gen. of State of CT., 240 F. Supp. 2d 167, 175 (D. Conn. 2003).  The rule of law was first set out by the Supreme Court in the case of  Jett v. Dallas Independent School District,  491 U.S. 701, 109 S. Ct. 2702, 105 L.Ed.2d 598 (1989).  In Jett, the Supreme Court examined the relationship between Section § 1983 and § 1981. Concluding that in enacting Section 1983 Congress intended that it was enacting the exclusive remedy against state actors for the violation of constitutional rights, the Court stated:

> The historical evidence surrounding the revisions of 1874 further indicates that Congress thought that the declaration of rights in § 1981 would be enforced against state actors through the remedial provisions of § 1983.

Id. at 733-34.

       As the district court noted in its opinion in 1991, Congress amended section 1981 to include a provision that reads:  "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Subsequently, plaintiffs have argued unsuccessfully to other Circuit Courts that the amendment to § 1981 overruled Jett.   However, the Fourth, Fifth, Eighth and Eleventh Circuits have concluded that the amendment to section 1981 did not change the rule set forth in the Jett case.  After examining the legislative history of the amendment, these circuits concluded that the purpose of the amendment was to clarify that Section 1981 applies to nongovernmental entities, not to reverse or alter the holding in Jett.  See, Oden v. Oktibbeha County, 246 F.3d 458 (5th Cir. 2001);  Butts v.

County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000); Dennis v. County of Fairfax, 55

F.3d 151, 156 n. 1 (4th Cir. 1995);  Cerrato v. San Francisco Community College Dist.,

26 F.3d 968 (9th Cir. 1994); Williams v. Little Rock Mun. Water Works, 21 F.3d 218

(8th Cir. 1994).

In Felton v. Polles, 315 F.3d 470 (5th Cir. 2002), the Fifth Circuit determined that

the rule set out by the Supreme Court in Jett equally applies to state officials sued in their

individual capacity. In so holding, the Fifth Circuit reasoned that the Supreme Court did

not make a distinction between state entities and individuals acting pursuant to color of

state law.  Following the sound reasoning of the court in Felton, the district court

concluded that the plaintiff could not maintain a § 1981 action.

This court in Burbank v. Office of Attorney General, et al.,  240 F. Supp. 2d at

175 held that Congress did not abrogate Jett when they added subsection (c) in the Civil

Rights Act of 1991.[3] Id. at 174 (citing, Felton v. Polles, 315 F.3d 470, 480-81 (5th Cir.

2002); other citations omitted); cf Federation of African Amer. Contractors v. City of

Oakland, 96 F.3d 1204 (1996).  Although on its face the subsection appears to provide a

cause of action against state actors, courts use the fact that Congress "neither expressed

its intent to overrule Jett, nor explicitly created a remedy against state actors in addition

to § 1983," to hold that they are unwilling to deviate from the Supreme Court's

precedent.  Id. (citing, Felton 315 F.3d at 480-81). Accordingly, the plaintiff 1981 claim

against the individual defendant must be dismissed.

---

[3]  Subsection (c) states "The rights protected by this section are protected against impairment by
nongovernmental discrimination and impairment under color of law." 42 U.S.C. § 1981(c).

**VI.    PLAINTIFF'S § 1981 CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Even if this court were to find that the plaintiff has standing to sue under § 1981, there is yet an additional basis to reject the plaintiff's § 1981 claim, namely her claim fails to state a claim upon which relief can be granted.  To state a claim under § 1981, a plaintiff must allege and prove: (1) [that she] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) [that] the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).  Mian v. Donaldson, Lufkin & Jenrette Sec., Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  A section 1981 action must allege "that the defendants' act were purposefully discriminatory ... and racially motivated."  Albert v. Carovano, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc)(citations omitted).  As discussed in this brief, the plaintiff can put forth no evidence that defendants treated her in a discriminatory manner because of her race.  Abramowitz v. Inta-Boro Acres, Inc., 1999 U.S. Dist. LEXIS 2005  (E.D.N.Y. 1999).

In this Circuit, complaints relying on civil rights statutes are insufficient if they merely include a "litany of general conclusions ..."  Hall v. Dworkin, 829 F. Supp. 1403, 1412 (N.D.N.Y. 1993)(citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987). Cf. Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978)("a complaint consisting of nothing more than naked assertions fails to state a claim").  Instead, "on a claim under § 1981, a plaintiff must show both that she was subjected to intentional discrimination, and that this discrimination interfered with a contractual relationship."  Krulik v. Board of Educ. of City of New York, 781 F. 2d 15, 23 (2d Cir. 1986)(internal citations omitted).

The plaintiff's case is completely devoid of any substantive evidence upon which a jury could conclude that she was discriminated against because of her race. Time after time during her deposition, the plaintiff either admitted that alleged adverse conduct was not motivated by her race or that she knew of no white employees who were treated differently. In short, the plaintiff has strung together a litany of perceived slights over a six year period. That alone is not enough to state a case that can survive summary judgment.

### VII.    PLAINTIFF CANNOT PROVE DISCRIMINATION BASED UPON A "CLASS OF ONE"

An equal protection claim based on a "class of one" theory must demonstrate that the plaintiff was treated differently from others similarly situated and that there was no rational basis for the difference in treatment.  The defendants maintain that the plaintiff was not treated differently then similarly situated DCF employees. While the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, where, as in this case, the plaintiff does not allege membership in such a class, she can still prevail in what is known as a "class of one" equal protection claim.  *See* Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); Neilson v. D'Angelis, 409 F.3d 100, 104, 2005 U.S. App. LEXIS 9642, *10, *11 (2d Cir. 2005), *see also* DeMuria v. Hawkes, 328 F.3d. 704, 706 (2d Cir. 2003).  Therefore,

plaintiff's equal protection claim may be considered a "class of one" claim pursuant to Olech.

Most recently, the Second Circuit has refined and restated a plaintiff's burden in a "class of one" claim. Neilson v. D'Angelis, 409 F.3d at 105-06. The Second Circuit in Neilson overturned a jury verdict for the plaintiff on an Olech claim and ruled that "[the plaintiff] did not, as a matter of law, satisfy the similarly situated requirements of an Equal Protection 'class of one' claim. Id. at 101. The court held that "in order to succeed on an Olech claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high," and in particular, much higher than is required for the use of comparators in Title VII claims. Neilson, 409 F.3d at 104. Thus, plaintiffs pursuing Olech claims must demonstrate that they were treated differently from someone who is "'prima facie identical in all relevant respects'." Id at 104 (emphasis added)(quoting Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)). The Second Circuit explained that the reason for demanding this high standard of similarity in Olech claims is that the "existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reason that lack any reasonable nexus with a legitimate governmental policy." Neilson, 409 F.3d at 104. In effect, "the similarity and equal protection inquiries are . . . virtually one and the same in . . . a 'class of one' case. Id

Accordingly, the Second Circuit restated the requirements that an Olech plaintiff must establish as follows:

> (i) no rational person could regard the circumstances of the
> plaintiff to differ from those of a comparator to the degree

> that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

Neilson, 409 F.3d at 105.  Blackhawk Security, Inc v. Hamden, et al, 2005 U.S. Dist. LEXIS 1589, 1 pf 7 (July 26, 2005), *citing* Neilson, 409 F.3d at 105.

In the present case, the plaintiff's evidence cannot support a claim that any alleged disparate treatment was intentional with no rational basis.  The plaintiff has the burden of proof to allege and establish intentional and arbitrary discrimination because "the good faith of such officers and the validity of their actions are presumed...."  Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 353 (1918).  Mere failure to prosecute other offenders does not establish a denial of equal protection.  LeClair v. Saunders, 627 F.2d 606, 608-11 (2d Cir. 1980) citing Railway Express Agency, Inc. v. New York, 336 U.S. 106, 109-110 (1949) and United States v. Rickenbacker, 309 F.2d 462 (2d Cir. 1962) cert. denied 371 U.S. 962 (1963).

The plaintiff has, and will have, no substantive evidence sufficient to establish that any of the defendants acted with the intent to single the plaintiff out for different arbitrary treatment.  The conclusory use of the word "intentionally" does not satisfy the plaintiff's burden to allege intentional treatment.  The plaintiff must allege and establish facts from which a discriminatory intent could be inferred.  See  Hack v. President & Fellows of Yale College, 237 F.3d 81, 2000 U.S. App. LEXIS 33817 p.11 (2d Cir. 2000).

Even if persons similarly situated have been treated differently, a cause of action does not lie unless there is no rational basis for the difference in treatment.  As this Court observed,

> [T]he Second Circuit has made clear that a plaintiff would be required to show that the decision was irrational and wholly arbitrary, in other words, that there was no legitimate reason for the decision.
>
> Moreover, we are to afford governmental decisions a strong presumption of validity.  A governmental decision should be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the different treatment.

Galligan v. Town of Manchester, 2003 U.S. Dist. LEXIS 8362, * 20 (D. Conn. 2003) (internal quotations and citations omitted), citing Giordano v. City of New York, 274 F.3d 740, 750 (2d Cir. 2001), Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494 (2d Cir. 2001), and Heller v. Doe by Doe, 509 U.S. 312 (1993).  The rational basis standard is "appropriately low," Brown v. Regional School Dist. 13, 328 F. Supp. 2d 289, 294 (D. Conn. 2004).

Of course, the defendants in this case deny that that plaintiff was treated differently that others, but even if such were the case,  in each instance the defendants had a rationale basis for their conduct. For instance, the plaintiff was not permitted to sit for a promotional examination in 1995 because she was not qualified for the position. Similarly, the plaintiff was reassigned to a different unit in 2001 because she had difficulty getting her work done on time. Her new assignment has less stringent deadlines. Plaintiff suffered no changes to her job duties, pay or benefits. She worked in that position for almost two years before taking a medical retirement in 2003. Last, in

2001 the plaintiff was denied access to the workplace until she provided the medical release required by DCF policy after she suffered a medical incident at work.

This case is an empty shell of baseless allegations that the plaintiff could not substantiate when asked to do so in discovery and her deposition.

## VIII. THE DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON PLAINTIFF'S STATE LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

It is well settled that, in order to state a claim of intentional infliction of emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253-54 (1986). "Liability for intentional infliction of emotional distress has been found only where conduct exceeds all bounds usually tolerated by decent society and is so outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind." DeLaurentis v. New Haven, 220 Conn. 225, 267 (1991). "The issue of whether a defendant's conduct is extreme and outrageous is a question to be determined by the court in the first instance." Only where reasonable minds can differ does the question become an issue fort he jury to decide. Petyan v. Ellis, 200 Conn. at 243.

In the case of Majewski v. Bridgeport Board of Education, 11 Conn. Ops. 230 (February 2005), the plaintiff alleged that she was harassed at work and suffered

emotional distress.  The type of acts she complained of included such things as being hugged and kissed, being questioned about her sexual orientation, being removed as the "teacher in charge" which forced her to resign as a union representative,  and being called a "pompous arrogant bitch."  The defendant moved to dismiss the claim of intentional infliction of emotional distress. The court agreed, finding that the alleged acts did not meet the standard to prove intentional infliction of emotional distress.

In the present case, there were no acts by any of the individual defendants that could remotely rise to the level required by Connecticut law.  The law does not shield an employee from discipline for work related deficiencies. There are no allegations that Sanchez, Moore, Brooks, Harris, Lewis, Lacomba or Ragaglia did anything egregious towards the plaintiff. The allegations that James Moore didn't meet with her, even if true, hardly rises to the level of an intentional tort. The allegation that Sanchez talked about the plaintiff's work-related injuries, while hurtful, does not rise to the level of an intentional tort.  The allegation that Harris moved her from  one unit to another without her approval is hardly an action that rises to the level of an intentional tort.  There is absolutely no evidence to support plaintiff's claim of intentional infliction of emotional distress against any of the named defendants, in particular those who had no personal involvement with the plaintiff.

## CONCLUSION

For all of the above reasons, the defendants' motion for summary judgment should be granted in its entirety.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:    _____

Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
email: Joseph.Jordano@po.state.ct.us

## CERTIFICATION

The undersigned hereby certifies that on the 31st day of January, 2007, a true

and accurate copy of the foregoing was sent by United States mail, first class postage

prepaid, to the following:

Francis A. Miniter, Esq.
Miniter & Associates
100 Wells Street, Suite 1-D
Hartford, CT  06103

_____

Joseph A. Jordano
Assistant Attorney General

24