UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN WILLIAMS, ET AL., | : | CASE NO. 3:01CV1398 (JGM) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTINE RAGAGLIA, ET AL., | : | |
| *Defendants*. | : | January 31, 2007 |

### DEFENDANTS' RULE 56(a)1 STATEMENT OF FACTS
### REGARDING PLAINTIFF ALICE HOOD

**Introduction**

1. The Complaint was filed in United States District Court on July 25, 2001. (Complaint, Doc. # 1)

2. The plaintiff, Alice Hood, first became employed by the then Department of Children and Youth Services, now known as the Department of Children and Families ("DCF"), effective July 23, 1993 (Ex. 2, Letter dated July 2, 1993 from Phillip Obregon, personnel officer 2, to Hood).

3. In 1994, the plaintiff was assigned to the DCF Region 4 (Hartford office), Investigations Unit. (Ex. 1, Deposition of Alice Hood, dated June 23, 2003, hereinafter "Hood Depo.", p. 8:1-3).

4. From 1994-1996 plaintiff was supervised by Social Worker Supervisor Ada Sanchez. (Ex. 1, Hood Depo., pp. 8:4-9:25).

5. The plaintiff suffered a work-related injury in April 1995. She was out of work for more than a week. The plaintiff testified that she applied for

Workers' Compensation and that she was paid. (Ex. 1, Hood Depo., p. 12:12-13:5).

6. The plaintiff suffered a second work related injury in October 1995 and was out of work for approximately six months. (Ex. 1 Hood Depo., p. 13:11-25).

7. The plaintiff put in for Workers' Compensation related to the October 1995 injury and was paid. (Ex. 1 Hood Depo., p. 14:1-9).

8. For six months in 1996 to 1997, plaintiff was supervised by Social Worker Supervisor James Moore in a specialty unit that focused on sexually abused children. (Ex. 1, Hood Depo., pp. 8:4-9:25).

9. From approximately 1997 to 1999, plaintiff was supervised by Social Worker Supervisor Charles Wiggins in a regular investigations unit. (Ex. 1, Hood Depo., pp. 8:4-9:25; pp. 23:15-25:19).

10. From 1999 to 2000, plaintiff was supervised by Social Worker Supervisor Duckworth Grange. (Ex. 1, Hood Depo., pp. 8:4-9:25).

11. From 2000 to sometime 2001, Plaintiff was supervised by Social Worker Supervisor Tara Lewis. (Ex. 1, Hood Depo., pp. 8:4-9:25).

12. From sometime in 2001 to October 2001, plaintiff was supervised by Social Worker Supervisor Donyale Pina. (Ex. 1, Hood Depo., pp. 8:4-9:25).

**Rumors in 1994-1996**

13. The plaintiff alleges that in 1995, Ada Sanchez spread rumors that the plaintiff was not really hurt. (Ex. 1, Hood Depo., p. 34:16-35:10).

14. The plaintiff admitted that she didn't think the comments made by Sanchez were because of her race; only that Sanchez was expressing her opinion to those who did not get along with Hood. (Ex. 1, Hood Depo., p. 35:11-17).

15. The plaintiff testified that Sanchez and Valerie Miles (Miles is not a named defendant), allegedly denied her time off to see a doctor. (Ex. 1, Hood Depo., p. 38:17-39:5).

16. The plaintiff did not file a complaint with DCF regarding the alleged denial of time off to see a doctor. (Ex. 1, Hood Depo., p. 38:17-39:5).

**Social Worker Supervisor Examination in 1995**

17. The plaintiff claims that in March 1995 she was denied an opportunity to take a test to be a Department of Children & Families ("DCF") supervisor. She testified that Phil Obergon, informed her that she was not eligible for the examination. (Ex. 1, Hood Depo., p. 11:1-25).

18. The plaintiff was notified by letter dated March 13, 1995 that she would not sit for the Social Worker Supervisor examination because she did not possess the minimum experience and training required for admittance to the examination. (Exhibit 3, Letter dated March 13, 1995 from Department of Administrative Services ("DAS") to Hood)

19. The plaintiff testified that none of her supervisors, and none of the named defendants, denied her opportunity to take the test to be a DCF supervisor. (Ex. 1, Hood Depo., p. 11:1-25).

20. The plaintiff was denied entrance to the Social Worker Supervisor examination by the Department of Administrative Services (Exhibit 3).

21. The announcement for the Social Worker Supervisor examination noted that candidates required a combination of college training and experience totaling seven (7) years. (Exhibit 4, Job Announcement for Social Work Supervisor).

22. The Job Announcement also stated that current state employees as of January 7, 1991 could qualify for the Social Worker Supervisor examination without an MSW or MCW degree. (Exhibit 4).

23. The plaintiff appealed her denial of entrance to the Social Worker Supervisor examination by forwarding a letter to DAS to Nicholas Visone. (Exhibit 5, Letter dated March 30, 1995 from Hood to Visone).

24. The plaintiff did not file a complaint with the Connecticut Commission on Human Rights & Opportunities ("CHRO") regarding her not taking the supervisor exam in 1995. (Ex. 1, Hood Depo., p. 11:25-12:1).

**Alleged Threatened Termination in 1996**

25. In 1996 the plaintiff returned to work having been released by her doctor. (Ex.1, Hood Depo, pp. 16:2-17:2).

26. Plaintiff was told on one isolated incident that she had to be able to perform the duties of the job. (Ex.1, Hood Depo, pp. 16:2-18:1).

27. Charles Frazier, an African-American Program Supervisor, addressed the issue with Hood when she was unable to lift a child who was designated for removal. (Ex. 1, Hood Depo, pp. 16:2-17:2).

28.  Charles Frazier is not a named defendant in this action. (Third Amended Complaint, Doc. # 57).

29.  The plaintiff testified that among her job duties was a requirement to be able to lift a child. (Ex. 1, Hood Depo., p. 15:2-16:1).

30.  The plaintiff admits that DCF was concerned about having her in a position that involved investigating potentially abused and neglected children given her prolonged absences due to work-related injuries. (Ex. 1 Hood Depo., p. 28:7-16).

31.  Hood testified that Frazier offered to move her to the specialty unit working on newborns rather than sexual abuse and serious injury matters. Her supervisor would have been a Judy Levy. (Ex. 1, Hood Depo., pp. 29:15-30:20)

32.  The plaintiff declined this offer. (Ex. 1, Hood Depo., p. 29:15-30:20).

33.  The plaintiff did not request an accommodation regarding the requirement that she be able to lift a child as part of her job duties. (Ex. 1, Hood Depo., p. 16:2-17).

**Supervision in 1996**

34.  The plaintiff claims that when James Moore was her supervisor in 1996, he did not have conferences with her like you are supposed to hold. (Ex. 1, Hood Depo., p. 19:10-15).

35.  The unit in which Hood was assigned under Moore supervision had five (5) social workers according to Hood, two (2) whites, two (2) blacks, and

5

one (1) Hispanic (adds up 6, but that is the plaintiff's answer given under oath). (Ex. 1, Hood Depo., p. 20:13-16).

36. The plaintiff testified that she didn't know if Moore met "regularly" with the others in his unit. (Ex. 1, Hood Depo., p. 20:13-25).

37. The plaintiff testified that she only assumed that Moore met with the others in his unit regularly. (Ex. 1 Hood Depo., p. 21:2-3).

38. The plaintiff admits that she has no evidence that Moore met with others in his unit but "knows it for a fact." The plaintiff did not file a complaint regarding Moore's alleged failure to meet with her. (Ex. 1, Hood Depo., p. 21:6-19).

39. Hood admits that it is a fair statement that other than not meeting with her, Mr. Moore took no adverse employment action against her. (Ex. 1, Hood Depo., p. 23:2-5).

40. Moore never called the plaintiff in and complained about her work. He let her do her job. Moore never recommended that she be disciplined in any way. (Ex. 1, Hood Depo., pp. 22:10-23:1).

41. Moore never took any type of adverse action against Hood. (Ex. 1, Hood Depo., pp. 22:10-23:1).

42. It was Charles Frazier, who is not a named defendant in this action, who reassigned the plaintiff from Mr. Moore's unit to one supervised by Charles Wiggins, a black male. (Ex. 1, Hood Depo., p. 23:23-24:6).

**1999 - Alleged Sexual Touching**

43  The plaintiff alleges that on ten or so occasions the spring of 1999, she was subjected to sexual touching defendant Tara Lewis, a black female. (Ex. 1, Hood Depo., p. 41:8-24).

44. The defendant Tara Lewis is an African-American female. (Exhibit 6, Affidavit of Tara Lewis, dated January 12, 2007, hereinafter "Lewis Aff.", ¶ 3)

45. Ms. Lewis is a Social Worker Supervisor with the State of Connecticut, Department of Children and Families ("DCF") in the Adolescent and Transition Services unit and held this position since 2001. She has been with DCF since September of 1989. (Ex. 6, Lewis Aff., ¶¶ 4-6)

46. Ms. Lewis previously was a supervisor in the Special Investigations Unit that dealt with severe physical abuse, severe neglect and child fatality cases. (Ex. 6, Lewis Aff., ¶¶ 4-6)

47. Lewis supervised the plaintiff, Alice Hood, off and on for approximately two years during the approximate period of 1999 and 2000. (Ex. 6, Lewis Aff., ¶¶ 4-6)

48. Ms. Hood, due to medical reasons, was in and out of Tara Lewis's unit for extended periods of time. Because of this reason, Ms. Lewis never did a performance appraisal for the plaintiff. (Ex. 6, Lewis Aff., ¶ 7).

49. Ms. Lewis never took an adverse employment action against Ms. Hood. (Ex. 6, Lewis Aff., ¶ 8).

50. At no time did Ms. Lewis treat Ms. Hood differently than any other member of her unit. If anything, Ms. Lewis says she was more understanding with her than others based upon her medical circumstances and didn't assign her cases that would take a lot of overtime unless she consulted with her based on her medical condition. (Ex. 6, Lewis Aff., ¶ 12).

51. Ms. Lewis never touched Ms. Hood inappropriately and declares that allegation is flatly false. At no time did Ms. Hood ever come to Ms. Lewis and tell her that she had touched her inappropriately. (Ex. 6, Lewis Aff., ¶¶ 9-10).

52. The plaintiff testified that she did not notify DCF management regarding any inappropriate action by Ms. Lewis. She testified that she only told co-workers. (Ex. 1, Hood Depo., p. 41:25-42:5).

**Ordered to Leave Building in 2001**

53. Ms. Hood's complaint that Ms. Lewis ordered her to leave the building in January 2000 is a half truth. (Ex. 6, Lewis Aff., ¶ 13)

54. Hood went out on medical leave after suffering chest pains in the workplace. (Ex. 1, Hood Depo., pp. 44:10-24).

55. Hood attempted to return to work without a medical certificate authorizing her to return to work. Ms. Lewis consulted with the program supervisor, Linda Harris, and only after the consultation requested that Ms. Hood only return after she had the appropriate medical certificate clearing her to come back to work. (Ex. 1, Hood Depo., pp. 44:25-45:19;

8

Ex. 6, Lewis Aff., ¶ 13).

56. Plaintiff is not aware of any white employees who were treated differently regarding the DCF policy requiring a medical certificate to return to work. (Ex. 1, Hood Depo., pp. 47:5-8).

57. The plaintiff admitted that she never told management about anything that happened and she admitted that it is a fair statement that DCF management may not have known anything about any alleged inappropriate touching by Ms. Lewis. (Ex. 1, Hood Depo., p. 42:14-25).

58. The plaintiff complained that her work was unduly scrutinized by Lewis. She admitted that she is unaware if other people's work was similarly scrutinized. (Ex. 1, Hood Depo., p. 48:1-49:4).

**Reassignment to Probate Unit in 2001**

59. Defendant Linda Harris is an African-American female. She is currently a Program Supervisor with the Children's Trust Fund and have been in this position since September 2004. The Children's Trust Fund is an independent State of Connecticut agency but for administrative purposes is affiliated with the Department of Children & Families. (Ex. 7, Affidavit of Linda Harris, dated January 17, 2007, hereinafter "Harris Aff.", ¶¶ 2-3).

60. Ms. Harris was with DCF in various Program Supervisor capacities for many years. She was a Program Supervisor for the Investigations unit from April 1997 until October 2001 and then was transferred to the

Permanency Planning and Probate Unit with DCF from October 2001 until May 2003. (Ex. 7, Harris Aff., ¶ 4)

61. Ms. Harris has been with the State of Connecticut since September 1980 and was with DCF from March 1988 until September 2004. (Ex. 7, Harris Aff., ¶ 5)

62. Ms. Harris was the Program Supervisor during the time period that Alice Hood worked in the Region 4 Hartford office from 1994-2001. (Ex. 7, Harris Aff., ¶ 6)

63. Ms. Hood was in an investigations unit within the Child Protective Services bureau. Her direct supervisor prior to being transferred to the probate unit was Donyale Pina. (Ex. 7, Harris Aff., ¶ 7 and Attachment A, Performance Appraisal for Alice Hood from September 2000 to August 2001).

64. Ms. Hood's work performance, based in part on work-related injuries, was not up to the level required in the investigations unit. She was not performing her duties in a timely manner and her documentation of case-related activities was not complete and not timely. (Ex. 7, Harris Aff., ¶ 8)

65. Ms. Hood was informed verbally by Ms. Harris that she was being transferred to the probate unit. The probate unit always needed people and it was felt that it would be a better fit for her in that the deadlines were not as stringent as in the investigations unit. (Ex. 7, Harris Aff., ¶ 9)

66. Ms. Hood was transferred from the investigations unit at the same time another worker, who was also an African-American female, was transferred to another unit. (Ex. 7, Harris Aff., ¶ 10)

67. Hood's transfer had absolutely nothing to do with her race. It was a business decision based upon the need of the agency and to provide her an environment where she could better meet deadlines. (Ex. 7, Harris Aff., ¶ 11)

68. Ms. Harris is not aware that Ms. Hood ever filed a grievance regarding her transfer from the investigations unit to the probate unit. (Ex. 7, Harris Aff., ¶ 12)

69. Shortly after Ms. Hood's transfer, Ms. Harris was also transferred to the Probate Unit where she became Hood's Program Supervisor again. Ms. Hood did not file any grievance or file a complaint regarding Ms. Harris becoming her Program Supervisor in the Probate unit. (Ex. 7, Harris Aff., ¶¶ 13-14)

70. The plaintiff was never suspended, terminated or demoted while with DCF. (Ex. 1 Hood Depo., p. 84:21-85:2).

**Retirement**

71. The plaintiff, Alice Hood, took medical retirement from the State of Connecticut on or about January 17, 2003 (Ex. 1, Hood Depo., p. 5:17-6:7).

DEFENDANTS

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
Email: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

The undersigned hereby certifies that on the 31st day of January, 2007, a true and accurate copy of the foregoing was sent by United States mail, first class postage prepaid, to the following:

Francis A. Miniter, Esq.
Miniter & Associates
100 Wells Street, Suite 1-D
Hartford, CT  06103

_____
Joseph A. Jordano
Assistant Attorney General