## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN WILLIAMS, ET AL., | : | CASE NO. 3:01CV1398 (JGM) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTINE RAGAGLIA, ET AL., | : | |
| *Defendants*. | : | September 17, 2007 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR SUMMARY JUDGEMENT AS
## TO PLAINTIFF  REGINA WHILBY

### INTRODUCTION

The plaintiff, Regina Whilby is a former employee of the Connecticut Department of Children and Families. She  was hired on January 28, 2000 as Social Worker Trainee. (Facts, ¶ 1-3).  Whilby underwent training at the DCF Training Academy as required of all trainees.  (Facts, ¶ 4).

DCF social workers use and have access to state computer equipment and email. During the academy courses for trainees such as Whilby, employees are instructed and reminded about the DCF computer use policy that prohibits the use of email for employee personal business. The computer use restrictions were posted in plain view according to Ms. Whilby.  (Facts, ¶'s 5-6). During a training class the instructor, James Desmond, a black male, discovered and reported that the plaintiff accessed her personal AOL e-mail account using the state computer and printed off at least two personal emails on DCF equipment which is contrary to DCF policy.  One email disparaged interracial dating by black men.  An investigation was conducted. Ms Whilby admitted to engaging in

inappropriate conduct. She further admitted to printing several e-mails while she was attending the training class.  (Facts, ¶'s 7-10).

Ms. Whilby was notified by letter that effective March 15, 2000 that she was being separated from service with the State of Connecticut.  Because Whilby was in her working test period, under the collective bargaining agreement she was a probationary employee. Accordingly, she did not have same rights as a permanent state employee would have, which would include the ability to file a grievance over her being dropped during the working test period.  However, the plaintiff did have the right to request a SPERL hearing, in which Whilby could appeal being dropped during the working test period to the DCF Human Resources Director.  (Facts, ¶'s 11-13). Ms. Whilby requested a SPERL hearing by letter and met with the Director of Human Resources, Wanda Estrella, a Hispanic female.  Whilby was given the opportunity to present any evidence in her favor that she wanted Ms. Estrella to consider. In her defense, Whilby informed DCF managers that other DCF employees engaged in the same behavior during the training class and were not disciplined. Whilby identified DCF trainee Jeff Smythe as a person similarly situated to her.  The DCF Computer Trainer at the academy reported that Smythe had sent an email to a classmate within the academy. He did not access his home emails, print off personal material using DCF equipment or leave racially inappropriate emails for other trainees to see. (Facts, ¶'s 14-16).

Having reviewed the material from regional management and the Training Academy staff, Wanda Estrella concluded that Ms. Whilby had been fully apprised of DCF's computer use policy during the academy session.  Further, Ms. Estrella concluded

that Ms. Whilby's decision to use the DCF email to access personal AOL emails, printed

several emails on the state equipment, and leave a racially charged email for others to see

showed poor judgment and violated the DCF computer use policy. By letter dated May 5,

2000, Ms. Estrella notified Ms.Whilby of her determination that Whilby's separation

from state service was proper under the circumstances. (Facts, ¶ 17-20). In Ms. Estrella's

professional judgment, Jeff Smythe was not similarly situated in all material respects.

Ms. Whilby was not separated because of her race or gender. It was Wanda Estrella's

professional judgment that her conduct warranted being dropped during the working test

period.   (Facts, ¶'s 17-21).

DCF disciplines employees on a case by case basis. Between 1998 and 2000,
 fourteen people were disciplined for misuse of state property, including the dismissals of

white, black and Hispanic employees. (Facts, ¶ 22).


## STANDARD OF REVIEW

A motion for summary judgment is granted when there is no genuine issue or

dispute as to any material fact and it is clear that the moving party is entitled to judgment

as a matter of law.  Celotex Corp.v. Catrett, 477 U.S. 317, 322 (1986); Larkin v. Town of

West Hartford, 891 F. Supp. 719, 723 (D.  Conn. 1995), aff'd w/o opinion 101 F.3d 109

(2d Cir. 1996).  A dispute over a material fact exists if the evidence would allow a

reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).   The moving party need not "support its motion with

affidavits or other similar materials negating the opponent's claim."  Beckman v. U.S.

Postal, 79 F. Supp. 2d 394, 399 (S.D.N.Y. 2000).  The movant's burden is satisfied if it

can point to an absence of evidence to support an essential element of the non-moving

party's claim.  Goenega v. March of Dimes, 51 F.3d 14, 18 (2d Cir. 1995) citing Celotex,

477 U.S. at 322-23; Jancewicz v. SNET, 54 F. Supp. 2d 134, 135 (D. Conn. 1999).

"Summary judgment must be entered against 'a party who fails…to establish the

existence of an element essential to [its] case, and on which it will bear the burden of

proof at trial.'"  Larkin, 891 F. Supp. at 723, quoting Celotex, 477 U.S. at 322.  The non-

moving party may not rest upon the mere allegations or denials of his pleadings, but

rather must present significant probative evidence to establish a genuine issue of material

fact.  Celotex Corp., 477 U.S. at 327; Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.

1995). Or as stated elsewhere, the non-moving party must provide "concrete evidence

upon which a reasonable juror could return a verdict in his favor."  Anderson 477 U.S. at

256 (emphasis added); see also Gordon v. Fenniman, 1998 WL 126062 (S.D.N.Y. 1998);

Dister v. Continental Group, 859 F.2d 1108, 1114, 1116 (2d Cir. 1988) quoting

Anderson, 477 U.S. at 247.

　　　　Rule 56(c) "provides that the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment:  the requirement is there be no genuine issue of material fact."  Anderson, 477

U.S. at 247-48.

　　　　The District of Connecticut has held:

> In deciding whether there is a genuine issue of material fact, the court
> must draw all reasonable inferences in favor of the non-moving party.
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505,
> 2513, 91 L.Ed2d 202 (1986).  Not every factual dispute will defeat a

motion for summary judgment; a factual issue must be both "genuine" and "material." Id. at 247-48, 106 S. Ct. at 2509-10 (emphasis omitted). A factual issue is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248, 106 S. Ct. at 2510. A factual issue is not "material" unless it "might affect the outcome of the suit under the governing law." Id.

Larkin, 891 F. Supp. at 723-24.

To defeat the motion, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A party may not 'rely on mere speculation or conjecture as to the true nature of facts to overcome a motion for summary judgment.'" McCloskey v. Union Carbide Corp., 815 F. Supp. 78, 81 (D. Conn. 1993) quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) cert. denied, 480 U.S. 932 (1987). The "party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial….To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." Meri v. Dacon, 759 F.2d 989, 998 (2d Cir.) cert. denied, 474 U.S. 829 (1985). Accord, D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence.") Mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleading motion. Lamontagne v. E.I. Dupont de Nemours & Co., 834 F. Supp. 575, 580 (D. Conn. 1993), aff'd 41 F.3d 846 (2d Cir. 1994). Summary judgment is appropriate where the "plaintiff create[s] only a weak issue of fact as to whether the employer's

reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

The United States Supreme Court has stated that summary judgment is a favored remedy:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather…must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate…, prior to trial, that the claims and defenses have no factual basis.

Celotex Corp., 477 U.S. at 327 (emphasis added.)


## ARGUMENT

### THE PLAINTIFF CANNOT PROVE A CONSTITUTIONAL CLAIM PREMISED ON A VIOLATION OF HER RIGHT TO EQUAL PROTECTION

As the court is well aware, Section 1983 does not create any new substantive rights, but merely provides a federal cause of action for the violation of certain federal rights. M. H. By, Through and With His Parents and Next Friends, Mr. And Mrs. H. v. Bristol Board of Education, 169 F. Supp. 21 (D. Conn. 2001); Mrs. W. v. Tirozzi, 832 F.2d 748, 754 (2d Cir. 1987). In order to prove violation of her Fourteenth Amendment right to equal protection under the law, the plaintiff must prove the following elements: (1) she, as compared with other similarly situated individuals, was selectively treated; and (2) this selective treatment was motivated by an intention to discriminate based on

impermissible considerations such as race or by a malicious or bad faith intent to injure the person. Muller v. Costello, 187 F.3d 298, 309 (2d Cir. 1999); Page v. Connecticut Department of Public Safety, 185 F. Supp.2d 149 (D. Conn. 2002). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Village of Arlington Heights v. Metropolitan Housing Authority, 429 U.S. 256, 265, 97 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); Patterson v. County of Oneida, 375 F.3d 206 (2d Cir. 2004). In order to prove a prima facie case of race or gender discrimination that violates equal protection, plaintiff Whilby must demonstrate that she was treated differently from other similarly situated employees *because of her race or gender*. See, Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998), citing Sims v. Mulchay, 902 F.2d 524, 539 (7th Cir. 1990). As the Supreme Court has stated:

> The requirement of discriminatory intent or purpose "... implies that the decision maker, . . . Selected or reaffirmed a particular course of action at least in part 'because,' not merely 'in spite of' its adverse effects . . . upon a member of a protected group."

Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).

Additionally, as part of her burden of proof to establish a Section 1983 violation of her constitutional right to equal protection, the plaintiff must also prove that the **defendants** "caused" the deprivation of her rights. Taylor v. Brentwood Union Free School District, el al., 143 F.3d 679 (2d Cir 1998), citing Martinez v. California, 444 U.S. 277, 285, 100 S. Ct. 553, 62 L.Ed.2d 481(1980).

In the present case, the plaintiff cannot show that defendants Hubblebank, Kallen, Estrella, Solera and Ragaglia took any type of adverse action against her, much less

intentionally violated her constitutional rights by treating her differently than similarly treated employees BECAUSE of her *race or gender*.

Regarding her claim, the plaintiff admitted to violating DCF policy during the training class by using DCF equipment to access personal AOL emails and printed them on DCF equipment for others to see. There is no dispute about the content of the emails, one of which disparaged black men who date white women. It referred to white women as sexually easy.

The DCF Director of Human Resources, Wanda Estrella, points out in her affidavit that she reviewed the decision by the agency. It was her decision that ultimately controlled whether Ms. Wilby would be dropped during the working test period. Estrella concluded that the conduct by Whilby warranted being dropped. There is no evidence that Whilby was dropped during the working test period because of her race or gender.

As to DCF employee Jeff Smythe, he was not similarly situated to Whilby. Again as Ms. Estrella points out, Whilby accessed her personal emails and printed them on DCF equipment. Whilby offered no actual evidence showing that anyone else engaged in similar conduct. Instead, all she provided was general statement that "everyone" else was doing it.

In short, the defendants have articulated a legitimate non discriminatory reason for the decision to drop Whilby during her working test. The burden shifts to Whilby to prove that the defendants' stated reason is false and that Whilby's race or gender was the true motivating reason.

**THE PLAINTIFF'S CLAIM AGAINST THE INDIVIDUAL DEFENDANTS FAILS FOR A LACK OF PERSONAL INVOLVEMENT.**

In the present case, the defendants ask the court to pay particular attention to the personal involvement requirement under Section 1983 because the plaintiff cannot carry her burden of proof showing sufficient personal involvement by defendants Kristine Ragaglia, Dorothy Hamilton, Judith Kallen, Mary Solera, Beverly Hubblebank and Wanda Estrella.

In order to establish the individual liability of a defendant in his/her individual capacity under § 1983, the plaintiff is required to show the personal involvement of the defendant in the denial of equal protection. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Estate of Walker v. City of Bridgeport, 676 F. Supp. 442, 446 (1986); Bapat v. Ct. Dept. Of Health Services, 815 F. Supp. 525 (D.Conn.1992).  In order to establish personal involvement, the plaintiff is required to prove that the defendant (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering violation or allowed the custom or policy to continue after learning of it; or (4) deliberate indifference to known constitutional violations. Provost v. City of Newburgh, 262 F.3d 146, 154-55 (2d Cir. 2001). A plaintiff must thus allege and prove a tangible connection between the acts of the defendant and the injuries suffered.  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986).

Consistent with the requirement that personal involvement is required for a claim under § 1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under § 1983.   Monell v. New York City Dept.

9

of Social Services, 436 U.S. 658, 692-95 (1978).  An official cannot be held liable merely because he or she occupies a high position in the government agency hierarchy.  Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).  It is well settled law that individual liability cannot be founded on their official position alone.  Horowitz v. Anker, 437 F. Supp. 495, 504 (E.D.N.Y. 1977), aff'd mem. 578 F.2d 1368 (2d Cir. 1978); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.), cert. denied, 434 U.S. 1087 (1977); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).

The plaintiff has no evidence that either defendants Solera, Ragaglia, Hamilton, Estrella, Hubblebank, and Kallen were personally involved in an alleged violation of her constitutional rights. Much to the contrary, the plaintiff admits to having NO EVIDENCE linking these defendants to any improper intentional conduct based upon her race or gender.

Although the plaintiff claims that white employees were not disciplined for similar conduct, she cannot point to conduct by defendants Hamilton, Esrella, Solera, Ragaglia, Kallen and Hubblebank showing actual  personal involvement or one of the following: (a) failure to take corrective action after learning of a subordinate's unlawful conduct; (b) creation of a policy or custom foster any person who was similarly situated in all material respects as required under the law;  (c) gross negligence in supervising subordinates who commit unlawful acts; and (d) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct. Hayut v. State University of New York, 352 F.3d 733, 753 (2d Cir. 2003).

In <u>Hayut</u>, the plaintiff, at student at SUNY, brought a section 1983 action against several officials from SUNY alleging sexual harassment by an instructor upon a female student. He offered no evidence showing direct personal involvement by the defendants in the alleged unlawful discrimination. Instead, he argued on summary judgment by simply asserting that sex discrimination "was rampant" and that the defendants "knew or should have known about many instances of instructors . . . who exhibited bizarre, disturbing, harassing and discriminatory behavior." <u>Id</u>. at 753.   Rejecting this argument because the evidence amounted to the plaintiff's unfounded conclusory assertions, the Court of Appeals court affirmed the summary judgment.

In sum, there is no evidence that the plaintiff suffered a constitutional deprivation that can be imputed to defendants Ragaglia, Estrella, Hamilton, Solera, Hubblebank and Kallen.

**THE PLAINTIFF'S SECTION 1981 CLAIM FAILS BECAUSE SECTION 1983 IS THE EXCLUSIVE FEDERAL REMEDY FOR THE ALLEGED VIOLATION OF HER CONSTITUTIONAL RIGHTS.**

Section 1981 provides, in relevant part,

> All persons within the jurisdiction of the United States shall have the same right ... To make and enforce contracts, ... And to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by **white citizens** ...

42 U.S.C. § 1981 (emphasis added).

The plaintiff has sued the defendants in their individual capacities for a violation of her rights guaranteed by Section 1981.  However, since the plaintiff's claims involve a "state actor," "the District Court must conclude that the plaintiff's exclusive remedy lies

in her action under 42 U.S.C. § 1983.  The rule of law was first set out by the Supreme

Court in the case of  Jett v. Dallas Independent School District,  491 U.S. 701, 109 S. Ct.

2702, 105 L.Ed.2d 598 (1989).  In Jett, the Supreme Court examined the relationship

between Section § 1983 and § 1981.  Concluding that in enacting Section 1983 Congress

intended that it was enacting the exclusive remedy against state actors for the violation of

constitutional rights, the Court stated:

> The historical evidence surrounding the revisions of 1874 further indicates that
> Congress thought that the declaration of rights in § 1981 would be enforced
> against state actors through the remedial provisions of § 1983.

Id. at 733-34.

　　　As the district court noted in its opinion in 1991, Congress amended section

1981 to include a provision that reads:  "The rights protected by this section are protected

against impairment by nongovernmental discrimination and impairment under color of

State law." 42 U.S.C. § 1981(c). Subsequently, plaintiffs have argued unsuccessfully to

other Circuit Courts that the amendment to § 1981 overruled Jett.   However, the Fourth,

Fifth, Eighth and Eleventh Circuits have concluded that the amendment to section 1981

did not change the rule set forth in the Jett case.  After examining the legislative history

of the amendment, these circuits concluded that the purpose of the amendment was to

clarify that Section 1981 applies to nongovernmental entities, not to reverse or alter the

holding in Jett.  See, Oden v. Oktibbeha County, 246 F.3d 458 (5th Cir. 2001);  Butts v.

County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000); Dennis v. County of Fairfax, 55

F.3d 151, 156 n. 1 (4th Cir. 1995);  Cerrato v. San Francisco Community College Dist.,

26 F.3d 968 (9th Cir. 1994); <u>Williams v. Little Rock Mun. Water Works</u>, 21 F.3d 218

(8th Cir. 1994).

      In <u>Felton v. Polles</u>, 315 F.3d 470 (5th Cir. 2002), the Fifth Circuit determined that

the rule set out by the Supreme Court in <u>Jett</u> equally applies to state officials sued in their

individual capacity. In so holding, the Fifth Circuit reasoned that the Supreme Court did

not make a distinction between state entities and individuals acting pursuant to color of

state law.  Following the sound reasoning of the court in <u>Felton</u>, the district court

concluded that the plaintiff could not maintain a § 1981 action.


      **PLAINTIFF'S § 1981 CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

      Even if this court were to find that the plaintiff has standing to sue under § 1981,

there is yet an additional basis to reject the plaintiff's § 1981 claim, namely her claim

fails to state a claim upon which relief can be granted.  To state a claim under § 1981, a

plaintiff must allege and prove: (1) [that she] is a member of a racial minority; (2) an

intent to discriminate on the basis of race by the defendant; and (3) [that] the

discrimination concerned one or more of the activities enumerated in the statute (i.e.,

make and enforce contracts, sue and be sued, give evidence, etc.). <u>Mian v. Donaldson,</u>

<u>Lufkin & Jenrette Sec., Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993).  A section 1981 action

must allege "that the defendants' act were purposefully discriminatory ... and racially

motivated." <u>Albert v. Carovano</u>, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc)(citations

omitted).  As discussed in this brief, the plaintiff can put forth no evidence that

defendants Hamilton, Solera, Ragaglia Hubblebank, Kallen and Estrella acted towards

her in a discriminatory manner because of her race. <u>Abramowitz v. Inta-Boro Acres, Inc.</u>,
1999 U.S. Dist. LEXIS 2005  (E.D.N.Y. 1999).

In this Circuit, complaints relying on civil rights statutes are insufficient if they
merely include a "litany of general conclusions ..." <u>Hall v. Dworkin</u>, 829 F. Supp. 1403,
1412 (N.D.N.Y. 1993)(citing <u>Barr v. Abrams</u>, 810 F.2d 358, 362 (2d Cir. 1987). Cf.
<u>Martin v. N.Y. State Dep't of Mental Hygiene</u>, 588 F.2d 371, 372 (2d Cir. 1978)("a
complaint consisting of nothing more than naked assertions fails to state a claim").
Instead, "on a claim under § 1981, a plaintiff must show both that she was subjected to
intentional discrimination, and that this discrimination interfered with a contractual
relationship." <u>Krulik v. Board of Educ. of City of New York</u>, 781 F. 2d 15, 23 (2d Cir.
1986)(internal citations omitted).


**THE PLAINTIFF CANNOT PROOF A CLAIM UNDER TITLE VII.**

Since disparate treatment is a form of intentional discrimination, plaintiff must
prove that DCF acted with discriminatory intent or motive. See <u>Watson v. Fort
Worth Bank & Trust</u>, 487 U.S. 977, 986, 108 S. Ct. 2777 (1988). Title VII disparate
treatment claims are analyzed utilizing the three-step, burden shifting paradigm
established by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817
(1973). See <u>e.g.</u>, <u>Chertkova v. Connecticut General Life Insurance Co.</u>, 92 F. 3d 81, 87
(2d Cir. 1996).

Under <u>McDonnell Douglas</u>, the plaintiff must initially establish a <u>prima facie</u>
case, which gives rise to a presumption of discrimination. If plaintiff succeeds in

establishing a <u>prima facie</u> case, the burden of production shifts to the defendant to articulate -- not prove -- a legitimate nondiscriminatory reason for its action. <u>See</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S. Ct. 2097, 2106 (2000). If the defendant employer meets its burden of articulation, the inference of discrimination raised by the <u>prima facie</u> case then drops out and the plaintiff must prove by a preponderance of the evidence that the articulated reason(s) is merely a pretext for discrimination. In any case, it is the plaintiff who retains at all times the ultimate burden of persuasion on the critical issue of whether the employer was motivated, at least in part, by discriminatory intent. <u>Id</u>.

In a discrimination claim, the employer can offer any legitimate non-discriminatory reason for the actions it took. In reviewing the employer's legitimate non-discriminatory reason, the court is not a "roving commission to review business judgment." <u>Montana v. First Federal Savings & Loan Ass'n</u>, 869 F.2d 100, 106 (2d Cir. 1989) (internal citations omitted). "[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) (internal quotation marks omitted). Thus, the fact that a court may think that the employer made a mistake does not in itself expose it to Title VII liability. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 259, 101 S. Ct. 1089; 67 L. Ed. 2d 207 (1981).

The plaintiff must then show that this reason for the decision is a pretext for unlawful discrimination. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his [her] business judgment for that of the

employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and *the employee cannot succeed by simply quarreling with the wisdom of that reason*."  Chapman, 229 F.3d at 1030 (emphasis added). "[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false *and* that discrimination was the real reason."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742; 125 L. Ed. 2d 407 (1993) (emphasis in original; internal quotation marks omitted).

### Plaintiff Cannot Establish A Prima Facie Case and DCF Has Presented A Legitimate Non-Discriminatory Reason.

To establish a prima facie case under Title VII, the plaintiff must show that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment decision; and (4) the decision occurred under circumstances giving rise to an inference of discrimination. Graham v. Long Island Rail Road, 230 F. 3d 34, 38 (2d Cir. 2000).

Assuming arguendo that the plaintiff succeeds in proving a prima facie case, the burden then shifts to DCF to proffer a legitimate, nondiscriminatory reason for plaintiff's termination.  McDonnell Douglas, 411 U.S. at 802; St. Mary's Honer Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2747 (1993); Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981). At the summary judgment stage, "the fact that the plaintiff has established a prima facie case does not in and of itself foreclose the possibility of summary judgment being granted in favor of the employer." Young v. General Foods Corp., 840 F. 2d 825, 828 (11th Cir. 1988).  DCF is not required

to prove the absence of a discriminatory motive to rebut a <u>prima facie</u> case. Rather, its burden is one of production only, and virtually "[a]ny legitimate nondiscriminatory reason [for the claimed adverse action] will rebut the presumption triggered by the <u>prima facie</u> case." <u>Fisher v. Vassar College</u>, 114 F. 3d 1332, 1335-36 (2d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1075 (1998).  An employer can meet the burden of proffering a legitimate non-discriminatory justification by introducing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision was not motivated by a discriminatory animus." <u>Id</u>.

In the present case there simply is no evidence that the plaintiff's race, gender or ethnic background motivated DCF's decision.  First, all of the alleged wrongdoers are women.  Mr. Desmond and Ms. Sharpe, who taught the trainee classes, are African American.  It was Mr. Desmond who found the plaintiff's personal emails on a DCF printer and reported the matter. The Plaintiff admits that she violated the DCF policy regarding computer use. Her only evidence of disparate treatment is her claim that others, such as Jeff Smythe, engaged in the same conduct. However, DCF's investigation into the matter shows only that Smythe sent an email to a fellow classmate.

So there is no evidence upon which a reasonable jury could conclude that the real reason for the plaintiff termination was her inclusion in a protected class.

**THE DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON PLAINTIFF'S STATE LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

It is well settled that, in order to state a claim of intentional infliction of emotional distress, "[i]t must be shown:  (1) that the actor intended to inflict emotional distress; or

that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe."  Petyan v. Ellis, 200 Conn. 243, 253-54 (1986). "Liability for intentional infliction of emotional distress has been found only where conduct exceeds all bounds usually tolerated by decent society and is so outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind." DeLaurentis v. New Haven, 220 Conn. 225, 267 (1991). "The issue of whether a defendant's conduct is extreme and outrageous is a question to be determined by the court in the first instance."  Only where reasonable minds can differ does the question become an issue fort he jury to decide.  Petyan v. Ellis, 200 Conn. at 243.

In the case of Majewski v. Bridgeport Board of Education, 11 Conn. Ops. 230 (February 2005), the plaintiff alleged that she was harassed at work and suffered emotional distress.  The type of acts she complained of included such things as being hugged and kissed, being questioned about her sexual orientation, being removed as the "teacher in charge" which forced her to resign as a union representative,  and being called a "pompous arrogant bitch."  The defendants move to dismiss the claim of intentional infliction of emotional distress. The court agreed, finding that the alleged acts did not meet the standard to prove intentional infliction of emotional distress.

In the present case, there were no acts by any of the individual defendants that could remotely rise to the level required by Connecticut law.  There are no allegations or

evidence that Kristine Ragaglia, Mary Solera, Beverly Hubblebank, Dorothy Hamilton, Judith Kallen or Wanda Estrella did anything egregious towards the plaintiff.

### PLAINTIFF'S CFEPA CLAIM IN COUNT 25 IS BARRED BY THE ELEVENTH AMENDMENT

The plaintiff directs allegations against DCF of violation of the Connecticut Fair Employment Practices Act (CFEPA), Section 46a-60(a)(1) in Count Twenty Five of the Third Amended Complaint.[1] In enacting the Connecticut Fair Employment Practices Act (hereinafter "CFEPA"), Conn. Gen. Stat. § 46a-59 et seq., the State of Connecticut did not waive its Eleventh Amendment immunity to suits in  federal court.  "In Connecticut, we have long recognized the validity of the common-law principle that the state cannot be sued without its consent and that since the state can act only through its officers and agents a suit against a state officer is in effect one against the sovereign state."  Horton v. Meskill, 172 Conn. 615, 623, 376 A.2d 359 (1977).  See also White v. Burns, 213 Conn. 307, 312, 567 A.2d 1195 (1990); Krozser v. New Haven, 212 Conn. 415, 420, 562 A.2d 1080 (1989); Fetterman v. University of Connecticut, 192 Conn. 539, 550-51, 473 A.2d 1176 (1984).

Sections 46a-99 and 46a-100 expressly limit suits to redress violations of CFEPA by state instrumentalities to actions brought in the state Superior Courts.  Section 46a-100 states:

> Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83 or 46-101, **may also bring an action in the superior court for the judicial district in which the discriminatory practice** is

---

[1] The defendants further note that the plaintiff's CFEPA claim is time barred.  The plaintiff received her Release of Jurisdiction from the CHRO on October 23, 2000 (Facts, ¶ 25).  The Complaint in the instant matter was filed more than 90 days beyond the Release of Jurisdiction, filed on July 25, 2001 (Doc. # 1).

alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the judicial district of Hartford.

Conn. Gen. Stat. § 46a-100 (emphasis added).

The issue of the state's waiver of its immunity for redress of unfair employment practices in federal courts was addressed by this court in the case of <u>Walker v. State of Connecticut</u>, 106 F. Supp. 2d 364 (D.Conn. 2000). In <u>Walker</u>, a former deputy sheriff sued the department and county officials for the alleged discriminatory practices prohibited by Title VII of the Civil Rights Act of 1964. Included within the plaintiff's federal lawsuit were several causes of action for violations of CFEPA. In granting the defendant's motion to dismiss the state law claims, the court stated:

> Counts Four and Eight of the Complaint allege violations of the CFEPA. The only way Plaintiff may bring a CFEPA claim in federal court against the State is by the consent of the State to be sued in that forum. The State has waived its immunity, but only as to cases brought in the Superior Court. Conn. Gen. Stat. Section 46a-99 provides that:

> Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78, in-inclusive, may petition the **superior court** for appropriate relief and **said court** shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable. (Emphasis added).

> 'A state does not consent to suit in federal court by consenting to suit in the courts of its own creation.' *Smith v. Reeves*, 178 U.S. 436, 441-445, 20 S. Ct. 919, 44 L.Ed. 1140, (1900). This Court declines Plaintiff's invitation to hold that simply because the State has consented to be sued in state court, it *a fortiori* must have meant to consent to federal jurisdiction also. '[I]t is not consonant with our dual system for the federal courts. . .to read the consent to embrace federal as well as state courts . . .[A] **clear declaration** of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.' *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct 873, 88 L.Ed. 1121 (1944)(empahsis added), *quoted in Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-100n. 9, 104 S.Ct 900, 79 L.Ed.2d 67 (1983). The Court believes that the wording of the Connecticut statute, quoted verbatim, is the antithesis of the clear declaration mandated by *Great*

> *Northern*.  Summary judgment will be granted on the CFEPA claims as to
> the State and all Defendants in both their individual and official capacities,
> as this Court lacks jurisdiction over the parties based on the clear reading
> of the statue.

Id. at 370 (emphasis added.)

The reasoning in Walker is equally applicable to the present case.  The plaintiff's

state law claims predicated on violations of CFEPA are barred by the doctrine of

sovereign immunity and may not be brought in federal court by virtue of the Eleventh

Amendment.

The United States Supreme Court has also found that pendent jurisdiction does

not override the Eleventh Amendment in cases against States based on state law.

> As noted, the implicit view of these cases seems to have been that once
> jurisdiction is established on the basis of a federal question, no further
> Eleventh Amendment inquiry is necessary with respect to other claims
> raised in a case.  This is an erroneous view and contrary to the principles
> established in our Eleventh Amendment decisions.  The Eleventh
> Amendment is an explicit limitation to the judicial power of the United
> States.'  Missouri v. Fiske, 290 U.S. at 25, 54 S.Ct., at 20.  It deprives a
> federal court of power to decide certain claims against States that
> otherwise would be within the scope of Art. III's grant of
> jurisdiction....This constitutional bar applies to pendent claims as well.  As
> noted above, pendent jurisdiction is a judge-made doctrine of expediency
> and efficiency derived from the general Art. III language conferring power
> to hear all 'cases' arising under federal law or between diverse parties.
> See Mine Workers v. Gibbs, 383 U.S. At 725, 86 S.Ct at 1138.  See also
> Hagans v. Lavine, supra, 415 U.S. At 545, 94 S.Ct. At 1383(terming
> pendent jurisdiction 'a doctrine of discretion').  The Eleventh Amendment
> should not be construed to apply with less force to this implied form of
> jurisdiction than it does to the explicitly granted power to hear federal
> claims... In sum, contrary to the view implicit in decisions such as Greene
> v. Louisville & Interurban R.Co., 244 U.S. 499, 37 S.Ct 673, 61 L.Ed.2d
> 1280 (1917), neither pendent jurisdiction not any other basis of
> jurisdiction may override the Eleventh Amendment...We now hold that
> this principle applies as well to state-law claims brought into federal court
> under pendent jurisdiction.

Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 119-121, 104 S.
Ct 900, 79 L.Ed.2d 67 (1884).  The Second Circuit has recognized the Eleventh
Amendment bar to the exercise of pendent jurisdiction over state law claims involving
state officers consistent with Pennhurst.  E.g., Baker v. Coughlin, 77 F.3d 12, 15 n.3 (2d
Cir. 1996); Almendral v. New York State Office of Mental Health, 743 F.2d 963, 968 (2d
Cir. 1984).  The jurisdictional bar of the Eleventh Amendment applies regardless of
whether the relief sought from the state law claim is injunctive or one for damages.
Pennhurst, 465 U.S. at 100, 102.  The plaintiff's claims under CFEPA in Count Twenty
Five must therefore be dismissed.

## CONCLUSION

For all of the above reasons, the defendants' motion for summary judgment
should be granted in its entirety.

> DEFENDANTS,
> KRISTINE RAGAGLIA, ET AL.
>
> RICHARD BLUMENTHAL
> ATTORNEY GENERAL
>
> By:     /s/ Joseph A. Jordano_____
>         Joseph A. Jordano
>         Assistant Attorney General
>         55 Elm Street, P.O. Box  120
>         Hartford, CT 06141-0120
>         Tel:  (860) 808-5340
>         Fax: (860) 808-5383
>         E-mail:
>         Joseph.Jordano@po.state.ct.us
>         Federal Bar # ct21487

## **CERTIFICATION**

I hereby certify that on September 17, 2007  a copy of the foregoing was filed electronically.  Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/_Joseph A. Jordano_____
Joseph A. Jordano (# ct21487)
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel.: (860) 808-5340
Fax: (860) 808-5383
E-mail:
Joseph.Jordano@po.state.ct.us