UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN WILLIAMS | : | CIVIL ACTION NO: |
| | : | |
| vs. | : | 3:01CV 1398 (JBA) |
| | : | Magistrate Judge Margolis |
| KRISTINE REGAGLIA, | : | |
| COMMISSIONER, DEPARTMENT | : | |
| OF CHILDREN AND FAMILIES | : | |
| and IN HER INDIVIDUAL | : | |
| CAPACITY, ET AL | : | November 26, 2007 |

**PLAINTIFF REGINA WHILBY'S LOCAL RULE 56(a)(2) STATEMENT**

**PART I.  AFFIRMATION AND DENIAL OF DEFENDANTS' 56A1 STATEMENT**

1 .     The plaintiff, Regina Whilby is a former employee of the Connecticut Department of Children and Families. (Third Amended Complaint, ¶ 76)

   **Admitted.**

2.     Whilby was hired on January 28, 2000 as Social Worker Trainee. (Exhibit 1, Affidavit of Wanda Estrella, dated September 11, 2007, ¶ 4 [hereinafter "Estrella Aff."]; Third Amended Complaint, ¶ 76)

   **Admitted.**

3 .     The Connecticut Department of Children and Families is a state agency responsible for the care of minor children. Its work force and clients are racially and ethnically diverse. (Third Amended Complaint)

   **Admitted.**

1

4. Ms. Whilby underwent training at the DCF Training Academy as required of all trainees. (Ex. 1, Estrella Aff., ¶ 5)

**Admitted that Ms. Whilby underwent training at the DCF Training Academy. She does not have the knowledge to admit or deny whether all trainees undergo training there.**

5. DCF social workers use and have access to state computer equipment and email. (Ex. 1, Estrella Aff., ¶ 6)

**Admitted.**

6. During the academy courses of Whilby training, she was instructed and reminded about the DCF computer use policy that prohibits the use of email for employee personal business. She also admitted that the restrictions were posted in plain view. There is a "STOP" sign posted in each computer that reminds trainees not to use computer for personal use. (Ex. 1, Estrella Aff., ¶ 7; Exhibit 2, DCF Response to CHRO Complaint # 0020323, p. 3, ¶ 7 & Enclosure # 4)

**Denied. Whilby Affidavit, ¶ 13.**

7. During a training class the instructor, James Desmond, a black male, discovered and reported that the plaintiff accessed her personal e-mail account using the state computer and printed off at least two personal emails on DCF equipment which is contrary to DCF policy. One email disparaged interracial dating by black men. (Ex. 1, Estrella Aff., ¶ 9; Exhibit 2, DCF Response to CHRO Complaint # 0020323, p. 5, ¶ 12, Exhibit 3, E-mail dated March 8, 2000 (5 pages)

**Denied. Whilby Affidavit, ¶¶ 14, 15, 16, 22, 23.**

**Plaintiff requests that Defendants' Paragraph 7 be struck from the proceeding. Wanda Estella was not present and there is no affidavit from James Desmond. Reference to a generalized CHRO response does not meet the requisites for evidence on a Motion for**

2

**Summary Judgment.  Local Rule 56(a)(3).  See accompanying Motion to Strike.**

8. An investigation was conducted. Ms Whilby admitted to the inappropriate conduct. (Exhibit 4, Excerpt from Deposition of Regina Whilby, dated September 20, 2002, pp. 32:1-14, [hereinafter "Whilby Depo."]).

**Denied.  Ms. Whilby did not admit to inappropriate conduct.  Whilby Affidavit ¶ 21. As to the allegation of an investigation, it is beyond her ability to respond to whether one was conducted or the scope of one, if conducted.**

9. Ms. Whilby admitted that she printed an item from her personal e-mail while she was attending the training classes. (Ex. 4, Whilby Depo., p. 33: 1-12)

**Denied.  Whilby Affidavit, ¶ 22.**

10. Whilby was notified by letter that effective March 15, 2000 that she was being separated from service with the State of Connecticut. (Exhibit 2, DCF Response to CHRO Complaint # 0020323, Enclosure # 9, Letter dated March 15, 2000).

**Admitted.**

11. Under the collective bargaining agreement, Ms. Whilby was a probationary employee and not considered a permanent state employee.  Accordingly, she did not have same rights as a permanent state employee would have, which would include the ability to file a grievance over her being dropped during the working test period. (Ex. 1, Estrella Aff., ¶ 10; Exhibit 5, Excerpt from Collective Bargaining Agreement, Article 11, Working Test Period)

**Admitted.**

12. The plaintiff had the right to request a SPERL hearing, in which Whilby could appeal being dropped during the working test period to the DCF Human Resources Director. (Ex. 1, Estrella

3

Aff., ¶ 11)

**Admitted.**

13.   Ms. Whilby requested a SPERL hearing by an undated letter. (Ex. 1, Estrella Aff., ¶ 12; Exhibit 6, Undated letter from Whilby to Estrella)

**Admitted.**

14.   Ms. Whilby met with the Director of Human Resources, Wanda Estrella, a Hispanic female. Whilby was given the opportunity to present any evidence in her favor that she wanted Ms. Estrella to consider. (Ex. 1, Estrella Aff., ¶ 13)

**Admitted that Plaintiff met with Wanda Estrella by way of appeal. Denied that she was told that the purpose of the meeting was for her to present further evidence. Whilby Affidavit, ¶ 25.**

15.   In her defense, Whilby informed DCF managers that other DCF employees engaged in the same behavior during the training class and were not disciplined. (Ex. 1, Estrella Aff., ¶ 14)

**Admitted.**

16.   Whilby identified DCF trainee Jeff Smythe as a person similarly situated to her. The DCF Computer Trainer at the academy reported that Smythe had sent an email to a classmate within the academy. He did not access his home emails, print off personal material using DCF equipment or leave racially inappropriate emails for other trainees to see. (Ex. 1, Estrella Aff., ¶ 15; Exhibit 3, DCF's Response to CHRO Complaint, p. 6, ¶ 17)

**Denied. Whilby Affidavit, ¶¶ 16, 17, 26.**

**Plaintiff requests that Defendants' Paragraph 16 be struck from the proceeding. Wanda Estella was not present and there is no affidavit from "the DCF Computer Trainer".**

**Reference to a generalized CHRO response does not meet the requisites for evidence on a Motion for Summary Judgment. Local Rule 56(a)(3). See accompanying Motion to Strike.**

17. Having reviewed the material from regional management and the Training Academy Staff, Wanda Estrella concluded that Ms. Whilby had been fully apprised of DCF's computer use policy during the academy session. (Ex. 1, Estrella Aff., ¶ 16)

**Denied. Defendants had one or more ulterior motives based on race. Whilby Affidavit, ¶¶ 6 - 9, 16, 17, 22, 23.**

18. Further, Ms. Estrella concluded that Ms. Whilby's decision to use the DCF email to access personal AOL emails, printed several emails on the state equipment, and leave a racially charged email for other to see showed poor judgment and violated the DCF computer use policy. (Ex. 1, Estrella Aff., ¶ 17).

**Denied. Defendants had one or more ulterior motives based on race. Whilby Affidavit, ¶¶ 6 - 9, 16, 17, 22, 23.**

19. By letter dated May 5, 2000, Ms. Estrella notified Ms.Whilby of her determination that Whilby's separation from state service was proper under the circumstances. (Ex. 1 Estrella Aff., ¶ 18; Exhibit 7, Letter dated May 5, 2000 from Estrella to Whilby)

**Admitted that the letter existed and that is made such a statement.**

20. In Ms. Estrella's professional judgment, Jeff Smythe was not similarly situated in all material respects. (Ex. 1, Estrella Aff., ¶ 19)

**Denied. Defendants had one or more ulterior motives based on race. Whilby Affidavit, ¶¶ 6 - 9, 16, 17, 22, 23.**

21. Ms. Whilby was not separated because of her race or gender. It was Wanda Estrella's

professional judgment that her conduct warranted being dropped during the working test period. (Ex. 1, Estrella Aff., ¶ 20)

**Denied. See entirety of Whilby Affidavit.**

**Plaintiff requests that Defendants' Paragraph 21 be struck from the proceedings. It contains no facts and is merely a legal inference from facts. See accompanying Motion to Strike.**

22.     DCF disciplines employees on a case by case basis. Between 1998 and 2000, fourteen people were disciplined for misuse of state property, including the dismissals of white, black and Hispanic employees. (Ex. 1, Estrella Aff., ¶ 21; Exhibit 3, DCF Response to CHRO Complaint, Enclosure 1 1F).

**Denied. DCF disciplines black employees at a rate many times that of white employees. Luciano Affidavit, ¶ 5 - 6 .)**

23.     Whilby admits that defendant Ragaglia had no involvement in the decision to terminate her. (Ex. 3, Whilby Depo., p. 56:2-5).

**Admitted that Defendant Ragaglia had no personal involvement in any action known to Plaintiff Whilby. Denied as a matter of law as Defendant Ragaglia was responsible for the equal administration of the law, including civil rights laws, in the Department of which she was Commissioner. Exhibit I.**

24.     The DCF trainers deny that they allowed or told any trainees to access their personal emails or print them off on DCF equipment. (Exhibit 3, DCF Response to CHRO Complaint, Answer, p. 4, ¶ 8, 10).

**Denied. Whilby Affidavit, ¶ ¶ 11, 12, 13, 15, 16.**

**Plaintiff requests that Defendants' Paragraph 24 be struck from the proceeding. There are no affidavits from "the DCF trainers". Reference to a generalized CHRO response does not meet the requisites for evidence on a Motion for Summary Judgment. Local Rule 56(a)(3). See accompanying Motion to Strike.**

25.    The plaintiff received the Release of Jurisdiction from the CHRO on October 23, 2000. (Exhibit 9, CHRO Release of Jurisdiction, Ex. 4, Whilby Depo., p. 42:2-15). The plaintiff did not file suit until July 25, 2001. (Williams v. Ragaglia, et al., 3:01CV1398(JGM), Doc. # 1).

**Admitted.**

**PART II.    DISPUTED ISSUES OF MATERIAL FACT**

Plaintiff sets forth the following facts to which it does not expect Defendants to agree:

1.    Plaintiff performed her work as a trainee in a satisfactory manner. She never received a performance evaluation. Whilby Affidavit, ¶ 5.

2.    In February, 2000, as part of the training, Plaintiff attended a Cultural Diversity Training course. The instructor was Ms. Renee Huff. Whilby Affidavit, ¶ 6.

3.    During one class session, there was a discussion concerning interracial matters in the workplace. Plaintiff spoke up during that class. She complained about discrimination that she had observed at DCF prior to that class. Whilby Affidavit, ¶ 7.

4.    What had happened was that one of her co-trainees, an African American, and Plaintiff approached our supervisor, Ms. Beverly Hubblebank, who told them to go to their supervisor, Ms. Dorothy Hamilton, to ask her to sign their timesheets so that they could be paid overtime. They did so. Ms. Hamilton took the timesheets and put them in a basket on her desk,

saying she would get to it later. As they left her office, two white co-trainees came into her office with the same request. Ms. Hamilton signed them immediately as we watched. This shows an innate distrust of black people by Ms., Hamilton as well as racial discrimination in actual treatment of employees. Whilby Affidavit, ¶ 8.

5.  As Plaintiff was upset by that incident, she brought this up for discussion in the training class. She was later told that her statement had become known in the Bridgeport office and discussed there. At that class, Jeff Smythe, a white trainee, used the word "nigger" and he was not corrected by the class teacher. He also said that this training was pointless. Plaintiff went to the teacher afterward but she did nothing. Whilby Affidavit, ¶ 9.

6.  On or about March 6, 2000, Plaintiff was in mandatory attendance in a training class in Hartford, called Introduction to Personal Computers. There were about seven (7) trainees in attendance. The instructor was Ms. Romelia Sharpe. Whilby Affidavit, ¶ 10.

7.  On her direct instruction, the trainees performed various internet functions, including going to web sites and learning about address locations. While Ms. Sharpe stood behind Plaintiff and Raul Parks, Plaintiff and he established a Hotmail internet account for him. Ms. Sharpe assisted. Another person, Marsha Martelli, was getting married, and used the Internet to conduct research for her wedding and invitations, including printing of materials. Whilby Affidavit, ¶ 11.

8.  During the breaks between segments of the instruction, the entire class continued to access the Internet, with many of the trainees checking personal emails and printing from a variety of sites. Whilby Affidavit, ¶ 12.

9.  At no time before the events just described did Ms. Sharpe or any other person instruct the trainees that this was not acceptable conduct. In fact, she had encouraged them to do so

8

and specified certain non-work related web sites as examples by writing them on the board, including bluemountain.com, bearisland.com, and yahoo.com. Plaintiff never saw restrictions on personal use of computers posted anywhere in the classrooms that the trainees used. Neither Ms. Sharpe nor any one else had brought it to the attention of the trainees, and the encouragement that she gave them would have made any of them believe that any restrictions would not apply to the learning period. Whilby Affidavit, ¶ 13.

10. On Wednesday, March 9, 2000, Plaintiff was in mandatory attendance in another training class in Hartford, Introduction to Word. Again, the trainees were allowed during the breaks to access various internet sites during that class. The instructor was Mr. James Desmond. Whilby Affidavit, ¶ 14.

11. Again, as in Ms. Sharpe's class, the trainees all continued to access the Internet during the breaks, including email accounts. Again, neither Mr. Desmond, who was watching them, nor anyone else said that they should not be doing so. Whilby Affidavit, ¶ 15.

12. Plaintiff knows with absolute certainty that two co-trainees, Marsha Martelli and Jeffrey Smythe, both of whom are white, participated in activities that were later declared to be inappropriate. She saw Marsha Martelli print out an email that she had received. This was done in the presence of Mr. Desmond. Neither of them were disciplined. Whilby Affidavit, ¶ 16.

13. On Monday March 13, 2000, Plaintiff was again in another mandatory class, Introduction to Link. Ms. Sharpe instructed. On that same day, Jeff Smythe sent Plaintiff and several people in the class an email saying in capital letters and in a very large font (40 points or so) that this is boring. Whilby Affidavit, ¶ 17.

14. Later that day, in a class with Mr. Desmond, Mr. Desmond said that two people were

in trouble. At least one of them is in big trouble. Whilby Affidavit, ¶ 18.

15. This time, during one of the breaks, Ms. Sharpe told the trainees not to access the Internet during the breaks. At that point, they stopped. Ms. Sharpe herself sent the trainees an email using graphics, in this case a leprechaun. It is the understanding of Plaintiff from the written policy that graphics are forbidden. Whilby Affidavit, ¶ 19.

16. On March 14, 2000, Plaintiff was called into a meeting in the Bridgeport office of DCF with Beverly Hubblebank, Dorothy Hamilton and Judith Kallen. She was immediately told that her employment was terminated for misuse of state property by accessing the Internet. Whilby Affidavit, ¶ 20.

17. Plaintiff told them that all of the class had done so and that it was not prohibited by the teachers. She also told them it was unfair to fire her as an example. Plaintiff did not admit to "inappropriate conduct". They claimed that the only evidence they had of any trainee accessing the Internet pointed just to her. But Mr. Desmond had watched all of the trainees do the same thing and had directed Jeff Smythe to stop at one point, and the email in question was not even printed by Plaintiff. Whilby Affidavit, ¶ 21.

18. Wanda Estrella claims (Affidavit, ¶ 9) that Plaintiff participated in an action that was degrading to white women by printing an article on interracial dating. That is false. Plaintiff had received an email commenting on this article, which was published in a national magazine. The concern of the email was that black women, not white women, were badly portrayed in the article. Plaintiff did not print the article but kept it to read it when she had no work obligations. She did forward it to another trainee, Marcia Taylor, who did print it. That is Defendants' Ex. 3, which was an email to Ms. Taylor from Ms. Whilby, and which Ms. Taylor printed through her service - Excite.

Plaintiff's service was through AOL, not excite. No punishment was given to Ms. Taylor. Plaintiff was not participating in any disparagement of black men or black women or interracial dating. The attitude of the writer of the article was very troubling to Plaintiff and she had already heard about it from other African American women who had discussed it. The fact that Wanda Estrella considered the article disparaging of white women, in spite of Defendants' Ex. 3, evidences a racial motivation for her action in participating in my termination. Whilby Affidavit, ¶ 22.

19. Wanda Estrella further claims that Plaintiff left a "racially charged" email out for others to see. Plaintiff did not leave it out. Wanda Estrella was not present and so testify. Whilby Affidavit, ¶ 23.

20. The State of Connecticut sent Plaintiff a termination letter the following day. Whilby Affidavit, ¶ 24.

21. Plaintiff met afterwards with Wanda Estrella. At that meeting, Ms. Estrella asked Ms. Whilby if she knew that what she did as prohibited. Plaintiff told her that she was participating in the class work and denied that she knew it to be wrong. Whilby Affidavit, ¶ 25.

22. When Wanda Estrella states that Jeff Smythe did not access his personal email and did not print a document, she is not making a true statement. Plaintiff saw him do so myself. He sent graphics and large emails to friends.. Mr. Desmond told him to stop. He was not punished. Wanda Estrella was not present and does not have the ability to so testify. Whilby Affidavit, ¶ 26.

23. Plaintiff knows of no other emails which involved her. Defendants have made reference to an email printed by Mr. Desmond with Plaintiff's name on it, but Plaintiff knows nothing of this email. Whilby Affidavit, ¶ 27.

24. In or about year 1999, Sal Luciano, then President of AFSCME Social and Human

Services (P2) Bargaining Unit, which represented employees of the Department of Children and Families ("DCF") throughout the State of Connecticut, caused a study to be made of grievances resulting from discipline within DCF. Luciano Affidavit ¶¶ 3 and 4.

25.    What he found was that there was a large discrepancy between the population of black employees, especially black men, and the frequency of discipline, was significant enough to report it to the CHRO Board of the State Legislature. Luciano Affidavit ¶ 6.


**PART III.    PLAINTIFF'S STATEMENT OF UNCONTESTED FACTS**

Plaintiff believes that Defendants will not dispute the following facts:

1.    In 1991 a Consent Decree entered in the case of *Juan F. vs. O'Neill*, U. S. District Court, Docket No. 89-cv-859 (AHN). Relevant portions are attached as Exhibit I. As part of that decree, DCF was required to engage in affirmative action in the hiring of social workers and supervisors. VIII. E.(1)(a), pp. 35-36.

2.    As Commissioner of DCF, Defendant Christine Regaglia was charged with the implementation and compliance with the Consent Decree. As head of personnel at DCF, Wanda Estrella was the manager who would have direct responsibility for compliance with the employment and promotion provisions of the Consent Decree and who would be responsible to report to the Commissioner as to what was done to effectuate that compliance.

3.  Attached as Exhibit II is a portion of the transcript of Testimony given by Christine Ragaglia to the Connecticut Commission on Human Rights on August 24, 2000.

**PLAINTIFF**

**BY:** _____
Francis A. Miniter, their attorney
Miniter and Associates
100 Wells Street Unit 1-D
Hartford, Connecticut 06103
Telephone: (860) 560-2590
Federal Bar No.: ct09566