UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN WILLIAMS, ET AL., | : | CASE NO. 3:01CV1398 (JGM) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTINE RAGAGLIA, ET AL., | : | |
| *Defendants*. | : | February 4, 2008 |

**DEFENDANTS' REPLY TO PLAINTIFF  REGINA WHILBY'S
RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

As a preface to plaintiff's response to summary judgment, the defendants asks this court to disregard much of Ms. Whilby's affidavit testimony for the following two reasons: (1) it is inconsistent with her sworn deposition testimony; and (2) much of the information provided was not disclosed during discovery as requested through interrogatories.

It is the law that any inconsistency between the plaintiff's prior testimony and her affidavit in resistance to summary judgment must be disregarded by the court as unreliable. See Hayes v. New York City Dept of Corrections, 84 F.3d 614, 619 (2d Cir. 1999).  In Hayes, the Second Circuit stated the rule that a party " may not create material issue of fact by submitting an affidavit in opposition of summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. . . . Thus factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial." Id. at 619.  The scenario just described is exactly what has occurred through Whilby's affidavit.  Some examples will illustrate this point.

1

In her affidavit at ¶ 26, Whilby claims that DCF employee Jeff Smythe, a white male, accessed his own email account and printed down an email during the same DCF training session that Whilby did likewise. However, in her deposition, she stated that "I cannot swear that Jeff was on the Internet . . ." (Attachment 1, Deposition of Whilby, p. 38:2-3). Her affidavit directly conflicts with her deposition testimony.

Similarly, in paragraph 22 of her affidavit, Whilby denies printing a copy of a personal email she accessed using the DCF computer. However, in her deposition on pages 32-33, she testified that she indeed accessed her personal AOL emails using the state computer and PRINTED at least one email. Her exact testimony on this point is as follows:

> Q: Do you know how it came to the attention of the people in Bridgeport that you had accessed your AOL account to read email from your cousin?
>
> A: Well, the reason why is because I must have misplaced it when I printed it, or maybe I left it on the desk or something, because the class was starting, so I just shoved it under a thing.

(Attachment 1, pg. 33:9-12). Again, Whilby's affidavit contradicts her sworn deposition and therefore such statements must be disregarded by the court.

Concurrent with the rule about inconsistent testimony, is the companion principle that information not disclosed through discovery may not be used at trial, or by analogy in summary judgment. See <u>Cunningham v. Consolidated Edison,</u> 2006 U.S. Dist LEXIS 22482 (E.D.N.Y. 2006); <u>AMEX v. Mopex, Inc</u>., 215 F.R.D. 87, 93 (A party that without substantial justification fails to … amend a prior response to discovery as required by Rule 26(e)(2), is not, unless the failure was harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed); <u>Katz v. Beth</u>

Israel Medical Center, 2001 U.S. Dist. LEXIS 29, 29-30 (S.D.N.Y. 2001)( . . .A witness cannot offer an affidavit covering material that she did not recall during her deposition, but it must be something she was actually questioned about.). The purpose of the rule is to prevent unfair surprise or trial by ambush. Transclean Corp. v. Bridgewood Servs., Inc., 77 F. Supp. 2d 1045, 1061 (D. Minn. 1999).

    This rule is particularly applicable to the present case.  In 2002, the defendants sent plaintiff a set of interrogatories. Interrogatory Number 4 asked plaintiff Whilby the following:

> 4.  For each plaintiff, provide a detailed factual statement, including dates, times, witnesses and documents, for each alleged acts of discrimination or violation of your rights that form the basis of this lawsuit as set forth in paragraphs 77-1598 of the plaintiffs' Second Amended Complaint.

(See Attachment 2 to this memorandum, p. 5).

    Included within the Second Amended Complaint for plaintiff Whilby's causes of action is paragraph 90 that reads:  "At least two Caucasian Social Worker Trainees who attended the same training  programs with plaintiff Whilby, and who conducted the same acts as plaintiff Whilby during breaks did not have there employment terminated." Plaintiff's response to interrogatory # 4  does not identify any employees, nor does she provide any factual information about their alleged conduct that would substantiate them being similarly situated to the plaintiff.  Furthermore, in paragraphs 9, 11, 12, 16, 17, 22, and 26 of her affidavit, plaintiff testifies to many facts that she DID NOT disclose in discovery.

    In December 2002, defendants sent a second set of interrogatories asking the same question again.  Plaintiff Whilby's response to a second opportunity to provide facts was

3

"See answer to interrogatory # 4." (See Attachment 3, Plaintiff's Responses to Second Set of Interrogatories, No. 11). Plaintiff's short answer to a second opportunity was to provide no additional factual information about those employees to whom she compares herself. This is no small matter because the plaintiff cannot now offer evidence to create a material issue of fact that was not disclosed in discovery. The time to provide the defendant's with all of the pertinent facts occurred long ago.

In her deposition, when asked to identify similarly situated people who may have been disciplined for similar conduct, Whilby identified "Jeff Smart" and "Martha."[1] No further information was ever provided. So the plaintiff cannot now offer additional facts that she could not recall at her deposition or failed to supplement in her discovery responses.

### PLAINTIFF MUST PROVE THAT RACE OR GENDER WAS THE MOTIVATING REASONS

Notwithstanding the evidence that must be excluded under Rule 37, the plaintiff cannot prove that the motivating factor in the decision to terminate her for misuse of state property was her race or gender. Plaintiff admits in her deposition that she accessed her personal home emails using the state computer system and printed off an email. She has offered no evidence to refute that DCF policy prohibits such conduct. So having articulated a legitimate non-discriminatory reason for its decision, the plaintiff must prove pretext to sustain her Title VII claim against DCF or her equal protection claim against defendants Estella, Hubblebank, Kallen and Solera. This is an important point because an employer may do something for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory

---

[1] These two people have never been identified. Defendants presume that Jeff Smart was actually "Jeff Smythe."

reason." Nix v. WLCY Radio/Rahall Commc'n, 738 F.2d 1181, 1187 (11th Cir. 1984), reh'g denied, 747 F.2d 710, (11th Cir. 1984); see also Stronkowski v. St. Vincent's Med. Ctr., 1996 U.S. Dist. LEXIS 22304, *23-24 (D. Conn. Aug. 1, 1996).  In Chapman v. AI Transp., 229 F.3d 1012 (11th Cir. 2000), the court set out the accepted rule of law.  "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. . . .  [F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Id. at 1030.  Rather the inquiry is limited to whether the employer gave an honest explanation of its behavior."  Also, "[T]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the [**4] stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason."  Forrester v. Rauland-Borg Corp., 453 F.3d 416, 418 (7th Cir. 2006).

       Plaintiff claims that Caucasian employees violated the same computer use rule and were not disciplined.  Under certain circumstances such evidence can create an inference of discrimination. However, to be "similarly situated" the employee must show that co-employees were subject to same standards who went undisciplined for engaging

5

in comparable conduct. Hogan v. State of Connecticut, 220 F. Supp. 2d 111 (D. Conn. 2002).[2]

To prevail in this case, the plaintiff must show that the defendants were aware of the other violations by similarly situated persons at the time it made its decision. Otherwise, she cannot prevail. In Shumway v. United Parcel Service, 118 F.3d 60, 64 (2d Cir. 1997), the Court of Appeals evaluated a race discrimination claim. When considering the plaintiff's evidence about other similarly situated persons, the court held that "[i]t is impossible to demonstrate that the employer treated similarly situated people differently when plaintiff had presented no evidence that the employer had knowledge of any other violations of the rule that the plaintiff was terminated for violating."

Moreover, the supervisor must be on notice that there was a high risk that his subordinate would violate another's constitutional right. In Poe v. Leonard, 282 F.3d 123, 141 (2d Cir. 2002), the Court of Appeals stated the rule that the Plaintiff *must allege and prove specific knowledge of facts putting each individual defendant* on notice of fact**s** giving rise to a constitutional violation. Otherwise the daily operational decisions of every lower level supervisor would subject every manager to individual liability.

In the present case, Whilby refused her supervisor's request to provide information about other co-employees that Whilby contended violated the same rule regarding the misuse of state equipment. It is important to note the access to the internet was not the misuse of the computer for which Whilby was terminated. DCF social workers often access the internet to find directions to client homes and other work related information. (Ex. 2, Respondent's CHRO Answer, p. 3, ¶ 7). What Whilby did was use

---

[2] When a plaintiff relies on a "class of one" theory, the comparison of other similarly situated must be identical. Neilson v. D,Angelis, 409 F.3d 100, 104 (2d Cir. 2005).

the state computer to access her personal email account and print down at least one email on state equipment. There is no evidence that DCF was aware that anyone else had accessed their personal home email and printed off correspondence.

Regarding Whilby's comparator who she mentioned in her deposition, Jeff Symthe, and not withstanding her self-serving affidavit that contradicts her deposition testimony, Whilby admits that she has no evidence that Symthe used the state computer to access the internet, much less explains exactly what Symthe did. Her exact testimony was that " I cannot swear that Jeff was on the internet . . ."  (Attachment 1, p. 38:2-3). All she could testified to was that Jeff Smythe sent her an message that he thought the class was boring.[3]   When specifically asked by her supervisors to substantiate her claim that she was only doing what others did as well (using the state computer to access personal emails),  Whilby refused. (Attachment 1, pps. 32:15-33:12; 34:4-12).  So the plaintiff has produced no evidence showing that DCF was aware of others employees who engaged in similar conduct <u>at the time the decision to dismiss her was made.</u>

### PLAINTIFF HAS NOT OFFERED EVDIENCE TO SHOW THAT HER RACE OR GENDER WAS THE REASON FOR HER DISMISSAL.

Much of the plaintiff "evidence" is her own conclusory testimony.  She doe not offer a single deposition or affidavit to verify any of her allegations. In truth, the plaintiff took no depositions nor did she conduct any discovery.  The significant legal question is whether the plaintiff can show that the stated reason for her dismissal, the violation of the DCF computer use policy, was not the true reason. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993).  Nowhere in her discovery responses does plaintiff provide any facts showing: (1) how each individual defendant was aware that Whilby's rights were

---

[3]  Defendants have already asked the court to disregard paragraph 26 and other paragraphs in Whilby's affidavit that contradict her deposition testimony and were not disclosed in discovery.

being violated and did not act; (2) any conduct or facts showing that the defendants were upset at Whilby for allegedly discussing race during a training session and acted out of a racial animus.

Federal law states that a person may not be held personally liable simply because they hold a management position or are in the chain of command. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) (doctrine of *respondent superior* does not apply to Section 1983 actions). In sum, plaintiff has offered no evidence that the individual defendants (all females) acted with any racial or gender animus.

### ALL OF THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the plaintiff could prove a prima facie claim against any of the individual defendants, qualified immunity acts to bar such claims.

It is well settled that public officials performing discretionary functions are entitled to qualified immunity from liability. Anderson v. Creighton, 483 U.S. 635 (1987); Harlow v. Fitzgerald, 457 U.S. 800 (1982). Qualified immunity protects all but the plainly incompetent or those who knowingly violate law. Malley v. Briggs, 475 U.S. 335, 341 (1986). The doctrine of qualified immunity provides that public officials are not liable for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; O'Hagan v. Soto, 725 F.2d 878, 879 (2d Cir. 1984). Immunity ordinarily should be decided by the court. Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994). Summary judgment is encouraged as a device for disposing of claims barred by such immunity in order to relieve government officials of the burdens of litigation. Harlow, 457 U.S. at 818; Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir.

1993).  Once a trial is held, it is too late to vindicate the important purpose of qualified immunity, that is, allowing the official to avoid standing trial.  Mitchell v. Forsyth, 472 U.S. 511, 527 (1985); Mozzochi v. Borden, 959 F.2d 1174, 1177-78 (2d Cir. 1992).

In analyzing a claim of qualified immunity, the law has established a three-part inquiry.  Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991), citing, Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) and Anderson v. Creighton, supra.  The first consideration is whether the law alleged to have been violated was clearly established at the time.  Robinson v. Via, 821 F.2d 913, 920 (2d Cir. 1987).  This question is a threshold inquiry, Natale v. Town of Ridgefield, 927 F.2d 101, 105 (2d Cir. 1991), and is a question of law for the Court to decide.  Johnson v. Jones, 515 U.S. 304, 311 (1995).  It is important in this regard for a Court "not to pose the issue in terms that are too general or abstract."  Mozzochi, 959 F.2d at 1177.  Rather, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he [she] is doing violates that right."  Anderson, 483 U.S. at 640; Finnegan v. Fountain, 915, F.2d 817, 823 92d Cir. 1990).  Second, the Court must decide whether it was clear at the time that an exception did not permit the actions in question.  Gittens v. LeFevre, 801 F.2d 38, 42 (2d Cir. 1989).

Finally, even if a court concludes that the law was clearly established, it must determine whether it was objectively reasonable for the official to believe that his actions did not violate clearly established constitutional rights.  Oliveira, 23 F.3d at 648-49.  The subjective motivation of the official is irrelevant to this inquiry.  Anderson, 483 U.S. at 641. Rather, the focus is on whether a reasonable official in the position of the defendant could have believed that his actions were lawful. In a situation in which officials of

9

reasonable competence could disagree on the legality of the defendant's actions, the official is entitled to qualified immunity.  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993); O'Neill v. Babylon, 968 F.2d 646, 649-50 (2d Cir. 1993).  This is so "even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of [as long as it] was objectively reasonable for him to believe that his acts did not violate those rights."  Danahy v. Buscaglia, 134 F.3d 1185, 1190 (2d Cir. 1998).

In the present case, the plaintiff has failed to produce any evidence that the Defendants Kallen, Ragaglia, Hubblebank, Solara or Estrella violated any clearly established right, or that a reasonable official in their positions would have understood that dismissing the plaintiff for admitted misuse of state equipment violated federal law.  Therefore, qualified immunity protects all of the individual defendants in their personal capacities.

**CONCLUSION**

The court MUST disregard much of the plaintiff self-serving affidavit because it both contradicts her deposition testimony and contains information that was not disclosed in discovery.   The plaintiff has offered no evidence upon which a reasonable jury could conclude that plaintiff was dismissed because of her race or gender.  She refused to provide information about similarly situated comparators at the time the decision was made.  From defendant Estella's belief,  the male comparator was not similarly situated to the plaintiff. That business decision is entitled to deference by this court.

The defendants' summary judgment motion should be granted.

        DEFENDANTS

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL


BY: */s/ Joseph A. Jordano*
     Joseph A. Jordano
     Assistant Attorney General
     55 Elm Street, P.O. Box 120
     Hartford, CT 06141-0120
     Tel.: (860) 808-5340
     Fax: (860) 808-5383
     E-Mail: Joseph.Jordano@po.state.ct.us
     Fed. Bar No. ct21487


## **CERTIFICATION**

I hereby certify that on February 4, 2008 a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

     /s/ Joseph A. ordano
     Joseph A. Jordano (# ct21487)
     Assistant Attorney General
     55 Elm Street, P.O. Box 120
     Hartford, CT 06141-0120
     Tel.: (860) 808-5340
     Fax: (860) 808-5383
     E-mail:
     Joseph.Jordano@po.state.ct.us