IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                      :
RYAN WILLIAMS ET AL.                  :        3:01 CV 1398 (JGM)
                                      :
v.                                    :
                                      :
                                      :
KRISTINE RAGAGLIA ET AL.              :
                                      :        DATE: FEBRUARY 20, 2008
-------------------------------------------------------x
```

RULING ON DEFENDANTS' MOTION FOR [PARTIAL] SUMMARY JUDGMENT

On July 25, 2001, plaintiffs commenced this action (Dkt. #1), followed by an Amended Complaint on December 11, 2001 (Dkt. #31), a Second Amended Complaint on June 12, 2002 (Dkt. #40), and a Third Amended Complaint on December 18, 2002 (Dkt. #57). The Third Amended Complaint includes twenty-three counts, alleging violations of the Fourteenth Amendment and 42 U.S.C. § 1983, 42 U.S.C. § 1981, and intentional infliction of emotional distress by each of the seven plaintiffs against his or her various supervisors (Counts One to Three – plaintiff Williams,[1] Counts Four to Six — plaintiff Johnson, Counts Ten to Thirteen — plaintiff Cohen,[2] Counts Fourteen to Sixteen – plaintiff Hood,[3] Counts Seventeen to Nineteen – plaintiff Williamson,[4] Counts Twenty to Twenty-five – plaintiff

_____

[1]On September 12, 2007, the parties stipulated to the dismissal of plaintiff Williams' claims. (Dkt. #165; see Dkts. ##156, 158).

[2]The additional count (Count Twelve) is for wrongful discharge.

This Court granted summary judgment as to plaintiff Cohen, absent objection, on January 25, 2006. (Dkt. #106). See Williams v. Ragaglia, No. 3:01 CV 1398 (JGM), 2006 WL 197378 (D. Conn. Jan. 25, 2006).

[3]Summary judgment was granted as to plaintiff Hood, absent objection, on February 26, 2007. (Dkt. #143). See Williams v. Ragaglia, No. 3:01 CV 1398 (JGM), 2007 WL 638498 (D. Conn. Feb. 26, 2007).

[4]On August 21, 2006, this Court granted summary judgment as to plaintiff Williamson, on consent. (Dkt. #130; see Dkts. ##113-27).

Whilby,[5] Counts Thirty to Thirty-two – plaintiff Ohene,[6] and lastly Count Thirty-Three, brought under 42 U.S.C. § 1983 by all plaintiffs against all individual defendants).[7]

On March 3, 2003, the parties consented to trial before this Magistrate Judge. (Dkt. #65). On June 24, 2005, this Court granted summary judgment absent objection as to plaintiff Ohene's claims, familiarity with which ruling is presumed. (Dkt. #98). See Williams v. Ragaglia, No. 3:01 CV 1398 (JGM), 2005 WL 1502062 (D. Conn. June 24, 2005). Summary judgment was also granted absent objection on January 25, 2006, as to plaintiff Cohen's claims, familiarity with which ruling is also presumed. (Dkt. #105; see also Dkts. ## 107-12). See Williams v. Ragaglia, No. 3:01 CV 1398 (JGM), 2006 WL 197378 (D. Conn. Jan. 25, 2006). Thereafter, on August 21, 2006, this Court granted defendants' Motion for Summary Judgment as to plaintiff Williamson, "on consent, in light of plaintiff Williamson's failure to cooperate with her attorney in opposing this motion." (Dkt. #130). On February 26, 2007, this Court granted summary judgment regarding plaintiff Hood, absent objection. (Dkt. #143). See Williams v. Ragaglia, No. 3:01 CV 1398 (JGM), 2007 WL 6348498 (D. Conn. Feb. 26, 2007).

The two remaining plaintiffs in the Third Amended Complaint are former employees of the Connecticut Department of Children and Families ["DCF"]; the twenty-one defendants include the DCF and twenty of its supervisors and administrators, including its then

---

[5]The additional counts (Counts Twenty-three through Twenty-five) are for wrongful discharge, Title VII, and CONN. GEN. STAT. § 46a-60(a)(1) claims against defendant DCF.

[6]This Court granted summary judgment as to plaintiff Ohene, absent objection, on June 24, 2005. (Dkt. #98). See Williams v. Ragaglia, No. 3:01 CV 1398 (JGM), 2005 WL 1502062 (D. Conn. June 24, 2005).

[7]On June 10, 2003, defendants' Motion for Default Judgment against plaintiffs Darko and Ovide was granted (Dkts. ##68-69), thus eliminating Counts Seven to Nine – plaintiff Darko, and Counts Twenty-Six to Twenty-nine – plaintiff Ovide.

Commissioner, Kristine Ragaglia.  (Dkt. #57, ¶¶ 3-4).  The only defendants named in Counts Twenty to Twenty-five are former Commissioner Ragaglia, Beverly Hubblebank, a DCF Supervisor, Dorothy Hamilton, a DCF Program Supervisor, Judith Kallen, a DCF Program Director, Mary Solera, a DCF Regional Administrator, Wanda Estrella, another DCF Supervisor, and DCF.  (Third Amended Complaint, ¶¶ 4.A, D-H & V, 621-27, 655-56, 684-90, 718-19, 747-48, 778-80).

At the settlement/status conference held on July 11, 2007, counsel agreed that defendants would file their Motion for [Partial] Summary Judgment with respect to plaintiff Whilby on or before August 31, 2007.  (Dkt. #158, ¶ 1).   Thereafter, on September 17, 2007, defendants filed the pending Motion for [Partial] Summary Judgment as to plaintiff Regina Whilby with brief, index of exhibits and Local Rule 56(a)1 Statement of Material Facts in support.  (Dkt. #166; see Dkts. ##163-64).[8]  On November 27, 2007, plaintiff filed her brief, affidavits and exhibits in opposition.  (Dkt. #173; see Dkts. ##167-72).[9]  On that same day, plaintiff also filed the pending Motion to Strike.  (Dkt. #174).  On February 4, 2008, defendants filed their brief in opposition to plaintiff's Motion to Strike, and reply brief.  (Dkt.

_____

[8]The index of exhibits in support of defendants' Motion (Dkt. #166-4) includes the following nine exhibits: affidavit of Wanda Estrella, sworn to September 11, 2007 ["Estrella Aff't"] (Exh. 1); DCF Verified Response to CHRO Complaint #0020323 with attachments ["DCF Response to CHRO Compl. & Atts."] (Exh. 2); e-mail correspondence involving plaintiff Whilby, dated March 8, 2000 ["3/8/00 E-mail"] (Exh. 3); excerpts of deposition transcript of plaintiff, taken on September 20, 2002 ["Plaintiff's Depo."](Exh. 4); excerpts of union contract, effective July 1, 1999 to June 30, 2002 ["CBA"] (Exh. 5); copy of undated correspondence from plaintiff ["Undated Ltr."](Exh. 6); copy of correspondence to plaintiff, dated May 5, 2000 ["5/5/00 Ltr."] (Exh. 7); copy of CHRO complaint, dated March 21, 2000, with attachments (Exh. 8); and copy of Release of Jurisdiction, dated October 23, 2000 ["CHRO Release"](Exh. 9).

[9]Attached to plaintiff's brief in opposition and Local Rule 56(a)2 Statement (Dkts. ##173-1 to 173-3) are the following exhibits: affidavit of Regina Whilby, sworn to November 8, 2007 ["Plaintiff's Aff't"]; affidavit of Salvatore Luciano, sworn to November 26, 2007 ["Luciano Aff't"]; and two manually filed exhibits: excerpts of the 1991 Consent Decree entered in the case Juan F. v. O'Neill, No. 89-CV-859(AHN)(Exh. 1), and excerpts of testimony of defendant Kristine Ragaglia to the CT Commission on Human Rights and Opportunities, August 24, 2000 (Exh. 2).

##177-78; see Dkts. ##175-76).[10]

For the reasons stated below, defendants' Motion for Summary Judgment (Dkt. #166) is **granted** and plaintiff's Motion to Strike (Dkt. #174) is **denied.**

## I. DISCUSSION

The standard for summary judgment is well established.  The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c)).  Upon motion, following adequate time for discovery, Rule 56(c) requires that summary judgment be entered against a party

> who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." FED. R. CIV. P. 56(c)).  "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving

---

[10]Attached to defendants' brief in opposition to plaintiff's Motion to Strike (Dkt. #177) is another copy of plaintiff's complaint filed with the CHRO, dated March 21, 2000 (Exh. A).  See note 8 supra.

Attached to defendants' reply brief (Dkt. #178) are the following three exhibits: another copy of excerpts from Plaintiff's Depo. (Exh. 1); copy of plaintiff's Answers to Defendant[s'] First Set of Interrogatories and Request for Production to Plaintiffs (Exh. 2); and copy of plaintiff's Answers to Defendant[s'] Second Set of Interrogatories and Request for Production to Plaintiffs, dated April 15, 2003 (Exh. 3).

party's] materials must be viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970), quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Assessments of credibility and choices between conflicting versions of events are not for the court to decide, they are matters for the jury. See 1963 Advisory Committee Notes to FED. R. CIV. P. 56(e). "If reasonable minds could differ as to the import of the evidence, . . . the moving party simply cannot obtain summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)(citations & internal quotation marks omitted). Thus, the party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact." Adickes, 398 U.S. at 153.

### A. FACTUAL BACKGROUND

The following factual summary is drawn from defendants' Local Rule 56(a)1 Statement of Facts, filed September 17, 2007 (Dkt. #166-3)["Defendants' Statement"], and plaintiff's Local Rule 56(a)2 Statement of Facts, filed November 27, 2007 (Dkt. #173-3) ["Plaintiff's Statement"], and the accompanying affidavits, excerpts of deposition testimony and exhibits. Such factual summary does not represent factual findings of the Court.

Plaintiff, Regina Whilby, is a former employee of the Connecticut Department of Children and Families ["DCF"]. (Defendants' Statement ¶ 1; Plaintiff's Statement ¶ 1; Third Amended Complaint ¶ 76). DCF is a state agency responsible for the care of minor children; its work force and clients are racially and ethnically diverse. (Defendants' Statement ¶ 3; Plaintiff's Statement ¶ 3; Third Amended Complaint). Plaintiff was hired by DCF on January 28, 2000 as a Social Worker Trainee, and thereafter plaintiff underwent training at the DCF Training Academy. (Defendants' Statement ¶¶ 2, 4; Plaintiff's Statement ¶ ¶ 2, 4; Third Amended Complaint ¶ 76; Estrella Aff't ¶¶ 4-5; Plaintiff's Aff't ¶ 4).

DCF social workers use and have access to state computer equipment and e-mail. (Defendants' Statement ¶ 5; Plaintiff's Statement ¶ 5; Estrella Aff't ¶ 6). Plaintiff was notified by letter, dated March 16, 2000, that she was being separated from service with the State of Connecticut.[11] (Defendants' Statement ¶ 10; Plaintiff's Statement ¶ 10; DCF Response to CHRO Compl. & Atts., 3/16/00 Ltr.). Under the collective bargaining agreement, plaintiff was a probationary employee and not considered a permanent state employee. (Defendants' Statement ¶ 11; Plaintiff's Statement ¶ 11; Estrella Aff't ¶ 10; CBA, Art. 11). Plaintiff had the right to request a SPERL hearing, in which plaintiff could appeal being dropped during the working test period to the DCF Human Resources Director. (Defendants' Statement ¶ 12; Plaintiff's Statement ¶ 12; Estrella Aff't  ¶ 11; see DCF Response to CHRO Compl. & Atts, 3/16/00 Ltr.). In accordance with that right, plaintiff requested a SPERL hearing by an undated letter. (Defendants' Statement ¶ 13; Plaintiff's Statement ¶ 13; Undated Ltr.). Thereafter, plaintiff met with the Director of Human Resources, Wanda Estrella, a Hispanic female. (Defendants' Statement ¶ 14; Plaintiff's Statement ¶ 14; Estrella Aff't ¶ 13). In her defense, plaintiff informed DCF managers that other DCF employees engaged in the same behavior during the training class and were not disciplined. (Defendants' Statement ¶ 15; Plaintiff's Statement ¶ 15; Estrella Aff't ¶ 14).

By letter dated May 5, 2000, Estrella notified plaintiff of her determination that plaintiff's separation from state service was proper under the circumstances. (Defendants'

---

[11]In the March 16, 2000 letter, plaintiff was informed by defendants that she was separated from service during her initial working test period for "misuse of State property." (Estrella Aff't ¶ 17; DCF Response to CHRO Compl. & Atts, 3/16/00 Ltr.). In her affidavit, plaintiff claims that defendants terminated her employment because of her race and gender. (Whilby Aff't ¶¶ 6-9, 17, 22, 23); see Section I.B.1.a. infra.

Statement ¶ 19; Plaintiff's Statement ¶ 19; Estrella Aff't ¶ 18; 5/5/00 Ltr.).[12]   Plaintiff admits

_____

[12]Plaintiff moves to strike portions of the Estrella affidavit, namely paragraphs 9 and 15. (Dkt. #174, at 1). Plaintiff contends that Estrella was not present and cannot personally testify to the allegations contained therein.  (Id.).

Rule 56(e) requires that a motion for summary judgment be supported with affidavits based on personal knowledge; "a hearsay affidavit is not a substitute for the personal knowledge of a party." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988)(citations omitted); see also Perma Res. & Dev. Co. v. Singer Co., 410 F.2d 572, 579 (2d Cir. 1969)(citation omitted)("Even if an affidavit does contain some inadmissible matter. . . [,] the court may disregard the inadmissible parts and consider the rest of the affidavit."). "In ruling on a motion to strike, the court applies the Federal Rules of Evidence to determine whether evidence would be admissible at trial and thus whether a court can consider them on a ruling on a motion for summary judgment." Glynn v. Bankers Life & Cas. Co., No. 02 CV 1802(AVC), 2005 WL 2028698, at *1 (D. Conn. Aug. 23, 2005)(citations omitted).

In paragraph 9, Estrella avers that, "During a training class[,] the instructor, James Desmond, a black male, discovered and reported that the plaintiff accessed her personal AOL e[-]mail account using the state computer and printed off at least two personal e[-]mails on DCF equipment which is contrary to DCF policy.  One e[-]mail disparaged interracial dating by black men, portraying white women as sexually promiscuous." (Estrella Aff't ¶ 9).  Estrella may rely on DCF records to explain the basis for her employment decisions and her understanding of the facts (see Estrella Aff't ¶ 17), and plaintiff admitted at her deposition that she printed the e-mail at issue, which she stated she may have misplaced in the training room.  (See Plaintiff's Depo. at 32-33).  Estrella is competent to testify at trial to the facts set forth in paragraph 9.  See L.R. Civ. P. 56(a)3.  Accordingly, plaintiff's Motion to Strike paragraph 9 of the Estrella Affidavit is denied.

In paragraph 15, Estrella avers that plaintiff "identified DCF trainee Jeff Smythe as a person similarly situated to her. The DCF Computer Trainer at the academy reported that Smythe had sent an e[-]mail to a classmate within the academy.  He did not access his home e[-]mails, print off personal material using DCF equipment or leave racially inappropriate e[-]mails for other trainees to see." (Dkt. #174, at 1; Estrella Aff't ¶ 15).  While Estrella's testimony in paragraph 15 is inadmissible hearsay, defendants urge that it is offered for the non-hearsay purpose of showing why Estrella made her employment decision with respect to plaintiff and why she reached the conclusion that plaintiff and Smythe were not similarly situated. (Dkt. #177, at 3, n.3; see Estrella Aff't ¶ 19).  To the extent that the content of paragraph 15 was relied upon by Estrella to formulate her decision to terminate plaintiff, paragraph 15 includes admissible testimony for that limited purpose.  Accordingly, plaintiff's Motion to Strike paragraph 15 is denied.

Further, plaintiff moves to strike the exhibit referred to as "DCF Response to CHRO Complaint" (Dkt. #166-4, Exh. 2) on grounds that "[a] perusal of the so-called affidavits of various persons preceding the answer makes it clear that not one of them has taken responsibility [for] any one paragraph or sentence of the [d]efendant DCF's response."  (Dkt. #174, at 1).  Further, according to plaintiff, the alleged affidavits contained therein are "no affidavits at all.  Therefore, this Exhibit as a whole does not meet the qualifications for admissibility under Local Rule 56(a)(3)." (Id. at 2).

The Court agrees with plaintiff that the format of the first part of this exhibit, which begins with a series of oaths, an "Employment Schedule A," and an "Affidavit," and then is followed by

that defendant Ragaglia had no involvement in the decision to terminate her. (Defendants' Statement ¶ 23; Plaintiff's Statement ¶ 23; Plaintiff's Depo. at 56).[13]    On October 23, 2000, plaintiff received the Release of Jurisdiction from CHRO. (Defendants' Statement ¶ 25; Plaintiff's Statement ¶ 25; CHRO Release).   Plaintiff did not file suit until July 25, 2001. (Id.; Complaint).

B. DEFENDANTS' MOTION

Defendants assert that: (1) plaintiff cannot prove a constitutional claim premised on a violation of her right to equal protection because plaintiff cannot prove that defendants took any type of adverse action against her or treated her differently than similarly treated employees because of her race or gender, defendants articulated a legitimate non-discriminatory reason for the decision to drop plaintiff during her working test period, and plaintiff cannot satisfy her burden of proving that defendants' stated reason is false and that plaintiff's race or gender was the true motivating reason (Dkt. #166-2, at 6-8); (2) plaintiff's claim against the individual defendants fails for a lack of personal involvement (id. at 9-11); (3) plaintiff's  Section 1981 claim fails because Section 1983 is the exclusive federal remedy for the alleged violation of her constitutional rights (id. at 11-13); (4) plaintiff's Section 1981

---

multiple "enclosures," is confusing, particularly because the exhibit does not identify which affiant affirms which of the twenty-six paragraphs in the "Affidavit." (See DCF Response to CHRO Compl. & Atts., Oaths & Aff't).  In an apparent attempt to remedy this confusion, defendants have attached to defendants' brief in opposition to plaintiff's Motion to Strike a copy of plaintiff's CHRO Complaint, to which the numbered paragraphs in the affidavit of the challenged exhibit respond. (Dkt. #177, Exh. 1).  In their brief in opposition, defendants explain that defendant DCF's response to plaintiff's CHRO complaint was completed by Pearl Hill (Dkt. #177, at 1), and that the remaining defendants executed oaths that affirm the information they provided to Hill. (Id. at 1-2). However, because the consideration of these statements did not affect the outcome of summary judgment, plaintiff's Motion to Strike the "so-called affidavits" in this exhibit is denied as moot.

[13]However, plaintiff adds that defendant Ragaglia was responsible for the equal administration of the law, including civil rights laws, in DCF, of which she was the Commissioner. (See Plaintiff's Statement ¶ 23).

claim fails to state a claim upon which relief can be granted as plaintiff can put forth no evidence that defendants treated her in a discriminatory manner because of her race (id. at 13-14); (5) plaintiff cannot prove a disparate treatment claim under Title VII as plaintiff cannot establish a prima facie case and DCF presented a legitimate non-discriminatory reason for plaintiff's termination (id. at 14-17); (6) defendants are entitled to judgment in their favor on plaintiff's state law claim of intentional infliction of emotional distress (id. at 17-19); and (7) plaintiff's claim under Connecticut Fair Employment Practices Act ["CFEPA"], CONN. GEN. STAT. § 46a-60(a)(1), in Count 25 is barred by the Eleventh Amendment (id. at 19-22).

### 1. COUNT TWENTY – EQUAL PROTECTION CLAIM AGAINST DEFENDANTS HUBBLEBANK, HAMILTON, KALLEN, SOLERA, ESTRELLA AND RAGAGLIA

In Count Twenty of the Third Amended Complaint, plaintiff alleges that she was subjected to disparate treatment in her work environment resulting from her race, ethnic origin and gender, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. (At 26-27). As stated above, defendants argue that plaintiff cannot prove a prima facie case of race discrimination that violates equal protection as plaintiff cannot show that the defendants in this case intentionally violated her constitutional rights by treating her differently than similarly treated employees because of her race or gender. (Dkt. #166-2, at 6-7). Additionally, according to defendants, plaintiff cannot show that defendants Hubblebank, Kallen, Estrella, Solera and Ragaglia took any type of adverse action against her because of her race or gender. (Id. at 7-8). Plaintiff counters that: (1) her termination was an adverse action; (2) on the basis of plaintiff's affidavit, and the contested facts set forth therein, it is likely that a jury will find that defendants' actions were taken based on plaintiff's race; and (3) these disputed facts directly link Hubblebank and Estrella to the adverse action based on

race, and indirectly link Commissioner Ragaglia.  (Dkt. #173-3, at 10-16).

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Texas  v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)(citation omitted).  To state a claim under the Equal Protection Clause of the Fourteenth Amendment for selective enforcement, plaintiff must show that: (1) she, compared with other similarly-situated individuals, was selectively treated, and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.  Harlen Assocs. v. Incorporated Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)(citations & internal quotation marks omitted).  With respect to the second element, "this Circuit has traditionally required that a plaintiff alleging selective treatment show an illicit motivation or animus on the part of the defendant."  Zavatsky v. Anderson, No. 3:00 CV 844(AVC), 2004 WL 936170, at *8 (D. Conn. Mar. 9, 2004), citing Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001). A "demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith."   Crowley v. Courville, 76 F.3d 47, 53 (2d Cir. 1996)(citations omitted).   Moreover, the requirement of discriminatory intent or purpose "implies that the decisionmaker, . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects" upon a member of a protected group.  Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)(footnote omitted).

To demonstrate there were others similarly situated, plaintiff has to show that the

10

others to whom plaintiff points, "engaged in comparable conduct," and are similar in "all material respects," such that the similarly situated comparators includes only those in situations that parallel those of plaintiff. Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d. Cir. 1997).[14] "[T]heir circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances. What is key is that they be similar in significant respects." Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001)(citations omitted). The determination of "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)(multiple citations omitted).

<u>           </u>               a.  ADVERSE ACTION & DCF EMPLOYEES SIMILARLY SITUATED

       It is undisputed that plaintiff was notified by letter that effective March 15, 2000, she was being separated from service with the State of Connecticut. (Defendants' Statement ¶ 10; Plaintiff's Statement ¶ 10; DCF Response to CHRO Compl. & Atts., 3/16/00 Ltr.). However, defendants contend that plaintiff was separated from service for accessing her personal e-mail account using a state computer and printing off personal e-mails on DCF equipment, including an e-mail that disparaged interracial dating by black men. (Estrella Aff't ¶¶ 7-9; see 3/8/00 E-mail). In contrast, plaintiff responds that her termination was taken on a race basis as other persons, who were white and similarly situated, were treated differently on a consistent basis throughout the training period. (Dkt. #173-3, at 10-16).

---

[14]In Shumway, the Second Circuit rejected that plaintiff's claim that similarly situated males were treated differently on grounds that the males did not engage in comparable conduct in violation of the "no fraternization" rule, which conduct included a long-term relationship, harassing behavior and lying, Shumway had no personal knowledge of the alleged violations of the rule, neither she nor any one else ever reported incidents of the alleged violations, and it is "impossible to demonstrate that UPS treated similarly situated males differently when there is no evidence that UPS knew about any other violations of the 'no fraternization' rule." 118 F.3d at 64-65.

DCF has e-mail guidelines that make clear that the use of Department computers for personal business is "strictly prohibited," and that message is repeated in the Governor's Policy on Computer Use, and on signs posted at DCF computer terminals. (See DCF Response to CHRO Compl. & Atts, Encl. 2, 4 & 8, 3/13/00 E-mail). Further, defendant Estrella, the Director of Human Resources at DCF since January 1997, avers that plaintiff underwent training courses during which she was "instructed and reminded about the DCF computer use policy that prohibits the use of e-mail for employee personal business," and that plaintiff admitted that the restrictions on the computer use were "posted in plain view." (Estrella Aff't ¶¶ 7-8; DCF Response to CHRO Compl. & Atts, Encl. 8, 3/14/00 E-mail). During one of plaintiff's training classes, the instructor, James Desmond, an African-American male, discovered and reported that plaintiff accessed her personal AOL e-mail account on the state computer and printed off at least two personal e-mails, one of which included offensive racial and gender content, on DCF equipment in violation of the DCF policy. (Estrella Aff't ¶ 9; see DCF Response to CHRO Compl. & Atts, Encl. 8, 3/10/00 Memo, 3/14/00 E-mail; 3/8/00 E-mail).

Conversely, plaintiff now avers that she attended mandatory training classes during which she and others, including Raul Parks, Marsha Martelli and Jeffrey Smythe accessed personal e-mail and websites with the knowledge of their instructors, Romelia Sharpe and James Desmond. (Plaintiff's Aff't ¶¶ 10-17, 26).[15] According to plaintiff, "[a]t no time before the events just described did . . Sharpe or any other person instruct [these employees] that

---

[15]Plaintiff avers that to the extent defendant Estrella asserts that plaintiff printed a "racially charged" e-mail and left it out for others to see, Estrella was not present and "could not possibly swear under oath that I did so . . . . Her sworn statement is false." (Plaintiff's Aff't ¶ 23). Additionally, plaintiff asserts that "the fact that Wanda Estrella considered the article disparaging of white women . . . , evidences a racial motivation for her action in participating in my termination." (Id. ¶ 22).

this was not acceptable conduct," and plaintiff "never saw any restrictions on personal use of computers posted anywhere in the classrooms that [they] used." (Plaintiff's Aff't ¶ 13).[16] Additionally, according to plaintiff, Marsha Martelli, who is white, printed out an e-mail that she accessed on the state computer (id. ¶ 16), and Sharpe, who is also white, sent the class an e-mail using graphics, which, as plaintiff "understand[s] from the written policy[,] . . . are forbidden." (Id. ¶¶ 16, 19).

Plaintiff attended computer training classes on March 6, 9 and 13, 2000; according to plaintiff, it was not until "[l]ate that day" on the 13th that Desmond informed the class that "two people were in trouble," and that Sharpe "told [them] not to access the Internet during the breaks." (Plaintiff's Aff't ¶¶ 18-19). The next day, plaintiff was called into a meeting with defendants Hubblebank, Hamilton and Kallen and was "told that [her] employment was terminated for misuse of state property by accessing the [I]nternet." (Plaintiff's Aff't ¶ 20; see DCF Response to CHRO Compl. & Atts, Encl. 11). While according to defendants, plaintiff admitted to violating DCF policy during the training class by using DCF equipment to access personal AOL e-mails and printing them on DCF equipment (DCF Response to CHRO Compl. & Atts, Encl. 8, 3/14/00 E-mail & Encl. 11; see Plaintiff's Depo. at 32-33), plaintiff avers that she did not admit to "inappropriate conduct" and that she told them it was unfair to fire her as an example as "Desmond watched all of us do the same thing and had directed Jeff Smythe to stop at one point, and the e-mail in question was not even printed . . . " by plaintiff. (Plaintiff's Aff't ¶ 21). Plaintiff does admit, however, that she accessed her e-mail which included an e-mail on interracial dating that she forwarded to another trainee, Marcia

---

[16]Defendant contends there is a stop sign posted at each computer that reminds trainees not to use the computers for personal use. (Estrella Aff't ¶ 7; DCF Response to CHRO Compl. & Atts, Encl. 4).

Taylor, but according to plaintiff, it was Marcia Taylor who printed it; plaintiff avers that she

did not print the e-mail.  (Plaintiff's Aff't ¶ 22; see 3/8/00 E-mail).[17]

However, in contradiction to plaintiff's affidavit, at her deposition taken on September

20, 2002, plaintiff testified that she did print her e-mail from her personal account at work:

> Q[:]  Did you open the e-mail she sent you from your computer at work?
>
> A[:]  Yes.
>
> Q[:]  You did that during class?
>
> A[:]  Yes.
> . . .
>
> Q[:]  So you open it up to read it?
>
> A[:]  To read it.  It was so long.  Class was getting ready to start.  I was like this.  I was, Let me just print it.  So that's how  - - everybody was printing, whatever, so I printed it.
>
> Q[:] Now, did the instructor see you [print it]?
> . . .
>
> A[:]  People were just doing whatever they wanted to do.  It was a break, so it wasn't like they were - - they weren't like, watching us or anything like that.
>
> Q[:] Do you know how it came to the attention of the people in Bridgeport that you had accessed your AOL account to read the e-mail from your cousin?
>
> A[:] Well, the reason why is because I must have misplaced it when I printed it, or maybe I left  it on the desk or something, because the class was starting, so I just shoved it under a thing.  I didn't think much of it.
>
> Q[:] Much to your surprise, you learned on the 15th that it worked its way into the hands of someone in the region.

---

[17]Plaintiff's e-mail service is AOL, which is evident by her e-mail address.  (See 3/8/00 E-mail).  The printed e-mail offered as defendants' Exhibit 3 is printed from Excite, a different e-mail service. (See id.; Plaintiff's Aff't ¶ 22).

A[:] Yes. The thing about that is they uploaded what I had - - like the computer that I sat on, they uploaded it.  They didn't have the actual  - -

(Plaintiff's Depo. at 32-33).

_____ Further, plaintiff averred that she saw Jeff Smythe access his personal e-mail, and "[h]e sent graphics and large e[-]mails to friends.  Mr. Desmond told him to stop. He was not punished."  (Plaintiff's Aff't ¶ 26).    However, at her deposition, plaintiff testified that, "I cannot swear that Jeff was on the Internet . . . ."  (Plaintiff's Depo. at 38).[18]

"[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  Hayes v. New York City Dept. of Corr., 84 F.3d 614, 619 (2d Cir. 1996), citing Perma Res. & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969).  This rule exists because "[i]f a party who has been examined at length at a deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, . . . the utility of summary judgment as a procedure for screening out sham issues of fact" would be "greatly diminish[ed]."  Perma, 410 F.2d at 578 (citations omitted).[19]

In addition to plaintiff's affidavit directly conflicting with her deposition testimony, which affidavit,  as stated above, may not be used to create an issue of material fact, plaintiff

_____

[18]At her deposition, while plaintiff could only identify "Jeff Smart" and "Martha" as similarly situated people who may have been disciplined for similar conduct, defendants were able to deduce that Jeff Smart actually was Jeff Smythe; defendants were on notice of plaintiff's claim that Jeff Smythe was a similarly situated employee who received favorable treatment.  (See Dkt. #178, at 4 & n.1; Dkt. #166-2, at 8).

[19]"Although a party does not show a triable issue of fact merely by submitting an affidavit that disputes his own prior sworn testimony, a material issue of fact may be revealed by his subsequent sworn testimony that amplifies or explains, but does not merely contradict, his prior testimony." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)(citations omitted).  In this case, however, plaintiff's affidavit, sworn to subsequent to her deposition taken in 2002, "merely contradict[s]" her prior testimony.

cannot offer evidence to defeat summary judgment that she did not disclose during discovery.  While plaintiff alleges in her Third Amended Complaint that "[a]t least two Caucasian Social Worker Trainees who attended the same training programs with plaintiff Whilby, and who conducted the same acts as plaintiff Whilby during class breaks did not have the[ir] employment terminated," (at ¶ 88), plaintiff did not provide support for this allegation in her discovery responses, other than to rehash this one sentence in her complaint.  (See Dkt. #178, Exh. 2, Answer to Interr. #4, ¶ 13 & Exh. C).  Yet in her affidavit, plaintiff, for the first time, provided specifics about the individuals involved in the conduct she alleges and specifics about their alleged conduct.  (See Plaintiff's Aff't ¶¶ 9, 11, 12, 15-17, 21-22, 26).  Namely, plaintiff now asserts that she "know[s] with absolute certainty that two co-trainees, Marsha Martelli and Jeffrey Smythe, both of whom are white, participated in activities that were later declared to be inappropriate [and] . . . [n]either of them were disciplined." (Plaintiff's Aff't ¶ 16; see id. ¶ 17).

Rule 26(e)(2) of the Federal Rules of Civil Procedure imposes upon a party "a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to other parties during the discovery process or in writing."  The purpose of this rule is "to avoid 'surprise' or 'trial by ambush.'" Am. Stock Exch., LLC v. MOPEX, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002)(citations omitted).  A party who violates this rule may not use the previously undisclosed information as evidence "at a trial, at a hearing, or on a motion . . . ." See id.; FED. R. CIV. P. 37(c)(1).  "Rule 37(c)(1)'s preclusionary sanction is 'automatic' absent a determination of either 'substantial justification' or 'harmlessness,'" Am. Stock Exch., LLC, 215

F.R.D. at 93 (multiple citations omitted), and in this case, plaintiff's failure to disclose this information is neither harmless, nor does plaintiff offer any justification for her actions; moreover, the burden to prove substantial justification or harmlessness rests with the dilatory party. Id. (citations omitted). "Although preclusion is ordered only rarely under this rule, . . . such preclusion is at the discretion of the trial court," Cunningham v. Consol. Edison, Inc., No. CV-03-3522(CPS), 2006 WL 842914, at *14 (E.D.N.Y. Mar. 28, 2006), recon. denied, 2007 WL 841816 (E.D.N.Y. Mar. 19, 2007), and in this case, allowing this information would preclude summary judgment, and in the absence of substantial justification, it would be inequitable and would impose great harm upon defendants to allow this information to be considered in this pending motion.

Additionally, the foregoing notwithstanding, plaintiff is unable to overcome two additional hurdles.  First, despite the reasons that plaintiff now articulates for her separation from service, defendants articulated a legitimate, nondiscriminatory reason for plaintiff's termination from DCF, namely plaintiff was informed that she was separated during her working test period for "misuse of state property" in violation of DCF E-mail Guidelines Policy, the Governor's Policy on Computer Use and the State of Connecticut Public Records Administration and State Archives General Letter 98-1 regarding electronic and voice mail. (DCF Response to CHRO Compl. & Atts., Encl. 2 & Encl. 9, 3/16/00 Ltr.).  In reaching her decision to terminate plaintiff, defendant Estrella "concluded that [plaintiff's] decision to use the DCF e[-]mail to access personal AOL e[-]mails, print[ ] several e-mails on the state equipment, and leave a racially charged e[-]mail for others to see showed poor judgment and

violated the DCF computer policy." (Estrella Aff't ¶ 17).[20]  Thus, based on the evidence that would not be subject to preclusion under Rule 37(c)(1), plaintiff cannot satisfy her burden of proving that defendants' stated reason is false and that it was her race or gender that was the true motivating reason for her termination.

Second, at her deposition and in the DCF meetings leading up to her termination, plaintiff generally claimed that "everybody" accessed computers for personal reasons, but refused to give the  names of other people who were engaged in the same type of conduct as the conduct for which she was fired.  (See Plaintiff's Depo. at 34; DCF Response to CHRO Compl. & Atts., Encl. 8, 3/14/00 E-mail).  Plaintiff cannot show that defendants treated similarly situated individuals differently if there is no evidence that defendants knew of other individuals engaged in similar conduct.  Shumway, 118 F.3d at 64-65; see DCF Response to CHRO Compl. & Atts., Encl. 8, 3/14/00 E-mail).

        b. LACK OF PERSONAL INVOLVEMENT

        As to the foregoing issues, defendants correctly contend that plaintiff cannot carry her burden of showing direct personal involvement by defendants Ragaglia, Hamilton, Kallen, Solera, Hubblebank and Estrella.[21]  (Dkt. #166-2, at 9-10).  Relying on defendant  Ragaglia's August 24, 2000 testimony before the CHRO, Part VIII of a Consent Decree entered by DCF

---

[20]Additionally, as for Jeff Smythe, while it is undisputed that Smythe sent an e-mail to a classmate (Estrella Aff't ¶ 15; Plaintiff's Aff't ¶ 17), as stated above, plaintiff testified at her deposition that, "[she] cannot swear that Jeff was on the Internet . . . ," (Plaintiff's Depo. at 38), and defendant Estrella avers that the e-mail was sent within the academy without access to Smythe's personal e-mail (Estrella Aff't ¶ 15), and he did not print personal material using the DCF equipment, as plaintiff did (id., Plaintiff's Depo. at 32-33), nor did he leave racially inappropriate e-mails for other trainees to see.  (Estrella Aff't ¶ 15). Based on the foregoing, in Estrella's "professional judgment, Jeff Smythe was not similarly situated in all material respects."  (Estrella Aff't ¶ 19).

[21]In her brief in opposition, plaintiff only addresses the personal involvement of Ragaglia and Estrella.  (Dkt. #173-3, at 17-19).

on January 7, 1991, relating to the hiring and promotion of social workers and support staff, and a study conducted by Union President Sal Luciano, plaintiff claims that the "discipline [at DCF] was overtly biased against black minority personnel," such that neither defendants Estrella nor Ragaglia "could have ignored it," and it is enough that Ragaglia "acquiesce[d] in the discriminatory acts of others." (Dkt. #173-3, at 16-19; see Luciano Aff't; Dkt. #173-8, Exhs. 1-2).[22]

As the Second Circuit has made clear, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' For this reason, the doctrine of respondeat superior cannot be used to establish liability . . . . " Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999), quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)(additional citations omitted). A plaintiff can establish personal involvement by demonstrating that the defendants: "(i) personally participated in the alleged constitutional violation, (ii) [were] grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring."

---

[22]Plaintiff relies on Sorlucco v. New York City Police Dept., 971 F.2d 864, 871-72 (2d Cir. 1992), wherein the Second Circuit concluded that while a municipal agency cannot be held liable under 42 U.S.C. § 1983 for isolated unconstitutional acts of its employees, if the subordinate's discriminatory practice is so manifest as to imply constructive acquiescence of senior policy making officials, liability may be implicated under 42 U.S.C. § 1983. In that case, however, in addition to a study done by the defendant regarding the suspension and termination of probationary officers, of which plaintiff was one, which showed that all of the female probationers that were arrested were terminated, plaintiff also "presented ample facts concerning her treatment at the hand of her superiors from which a jury, in conjunction with the statistical evidence, could have reasonably inferred that there was a custom of sex bias within the NYPD and governing its disciplinary decisions, at least as to probationary officers." Id. at 871-72 (citations omitted). In this case, plaintiff does not present "ample facts," and her reliance on the Luciano affidavit, Ragaglia's testimony and Part VII of the Consent Decree just do not yield evidence "sufficiently egregious to warrant an inference" of an unconstitutional departmental practice of discrimination. See id. at 873.

Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001)(citation omitted).  Plaintiff has

not offered any evidence that defendants personally participated in the alleged constitutional

violation, were grossly negligent in their supervision of subordinates who committed wrongful

acts, or exhibited deliberate indifference.  On the contrary, the evidence proffered by plaintiff

of Ragaglia's testimony and the Consent Decree demonstrate Ragaglia's efforts to remedy,

rather than perpetuate, any outstanding issues within the DCF.  Further, plaintiff cannot show

that any of the defendants (1) failed to take corrective action after learning of a subordinate's

unlawful conduct; (2) created a policy or custom fostering unlawful conduct; (3) exhibited

gross negligence in supervising subordinates who commit unlawful acts; or (4) were

deliberately  indifferent to rights of others by failing to act on information regarding unlawful

conduct of subordinates.  Hayut v. State University of New York, 352 F.3d 733, 753 (2d Cir.

2003).[23]  There is no evidence upon which this Court may rely (see Section I.B.1.a. supra),

that demonstrates unlawful conduct, let alone evidences a policy or custom of fostering

unlawful conduct, exhibiting gross negligence in the supervision of subordinates, or deliberate

indifference to the rights of others.  Accordingly, Count Twenty against defendants also fails

for lack of personal involvement.

### 2. COUNT TWENTY-ONE – 42 U.S.C. § 1981 CLAIM AGAINST DEFENDANTS HUBBLEBANK, HAMILTON, KALLEN, SOLERA, ESTRELLA AND RAGALIA

In  Count  Twenty-One  of  the  Third  Amended  Complaint,  plaintiff  alleges  that

defendants Hubblebank, Hamilton, Kallen, Solera, Estrella and Ragaglia, in violation of 42

U.S.C. § 1981, knew of ongoing discrimination against plaintiff, due to her race, and failed

---

[23]In Hayut, the plaintiff urged the same rationale plaintiff posits in this case, which the
Second Circuit rejected, namely, that in that case, the sexual harassment and discrimination at
defendant was "rampant" and the individual defendants "knew or should have known that about
many instances of instructors exhibiting harassing and discriminatory behavior" and that their
failure to act suffices as "direct and personal involvement."  Id. at 753.

to remedy the wrong while occupying positions in which they were required to do so. (At 27-28). Defendants contend that contrary to plaintiff's assertions, since plaintiff's claims involve a "state actor," plaintiff's exclusive remedy lies in her action under 42 U.S.C. § 1983. (Dkt. #166-2, at 11-13).

"[W]hen a person's rights protected by § 1981 are violated by a state actor (as opposed to a private person), the aggrieved party has a cause of action pursuant to 42 U.S.C. § 1983, not 42 U.S.C. § 1981." Smith v. Conn. Dep't of Corr., No. 3:03 CV 386(AWT), 2003 WL 22834676, at *2 (D. Conn. Nov. 25, 2003)(citation omitted); see also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989); Coger v. Conn., Dep't of Admin. Servs., 309 F. Supp. 2d 274, 281 (D. Conn. 2004), aff'd mem. on other grounds, 143 Fed. Appx. 372 (2d Cir. 2005). Section 1983 provides "the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." Jett, 491 U.S. at 733 (emphasis added). Furthermore, 42 U.S.C. § 1983 is "a method for vindicating federal rights elsewhere conferred," Baker v. McCollan, 443 U.S. 137,144, n. 3 (1979), "such as those conferred by § 1981." Patterson v. County of Oneida, NY, 375 F.3d 206, 225 (2d Cir. 2004). A plaintiff must allege and prove that the individual defendants' acts were "purposefully discriminatory and racially motivated." Albert v. Carovano, 851 F.2d 561, 571-72 (2d Cir. 1998)(multiple citations omitted).

Plaintiff claims that 42 U.S.C. § 1983, in the wake of the 1991 amendments, no longer provides the exclusive federal damages remedy for violations of 42 U.S.C. § 1981, as the 1991 amendment overruled Jett. (Dkt. #173-3, at 19-23). In 2005, Senior United States District Judge Dominic J. Squatrito addressed this precise issue:

> After the Supreme Court decided Jett, . . . Congress, in 1991, added subsection (c) to § 1981, which states that "[t]he rights protected by this

> section are protected against impairment by nongovernmental discrimination
> and impairment under color of State law." After the 1991 amendment, some
> courts have found that § 1981(c) statutorily overruled, at least in part, the
> holdings in <u>Jett</u>. Indeed, the enactment of subsection (c) has caused a circuit
> split as to whether <u>Jett</u>'s holdings were overruled, casting doubt on <u>Jett</u>'s
> viability.

<u>Bond v. City of Middletown</u>, 389 F. Supp. 2d 319, 327-28 (D. Conn. 2005)(multiple citations

omitted)(alterations in original); <u>see also M.O.C.H.A. Society, Inc. v. City of Buffalo</u>, No. 98-

CV-99C, 2007 WL 3354211, at *5 (W.D.N.Y. Nov. 9, 2007). As noted by the lower courts

in this district, the Second Circuit has not made an "express finding" on this issue. <u>See Bond</u>,

389 F. Supp. 2d at 328; <u>M.O.C.H.A. Society</u>, 2007 WL 3354211, at *5; <u>see Anderson v.

Conboy</u>, 156 F.3d 167, 178, n.19 (2d Cir. 1998)("Section 1981(c) may be ambiguous as to

whether it creates an implied private right of action against state actors under Section 1981,"

statutorily overruling <u>Jett</u>.). This Court, as Judge Squatrito held, "will not deviate from the

Supreme Court's analysis of § 1981" "in the absence of controlling authority to the contrary."

<u>Bond</u>, 389 F. Supp. 2d at 328.

    Moreover, defendants correctly contend that even if this Court were to find that

plaintiff has standing to sue under § 1981, plaintiff's § 1981 claim fails to state a claim upon

which relief can be granted, as plaintiff cannot put forth any evidence that defendants

Hamilton, Solera, Ragaglia, Hubblebank, Kallen and Estrella acted towards plaintiff in a

discriminatory manner because of her race. (Dkt. #166-2, at 13-14). To state a claim under

§ 1981, a plaintiff must establish the following elements: "(1) the plaintiff is a member of a

racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3)

the discrimination concerned one or more of the activities enumerated in the statute . . . ."

<u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993)(citations

omitted). Further, as stated above, plaintiff must allege and prove that the individual

22

defendants' acts were "purposefully discriminatory and racially motivated." Albert , 851 F.2d at 571-72 (multiple citations omitted). For the reasons stated in Section I.B.1.a. supra, plaintiff cannot sustain her burden of proof to state a claim under 42 U.S.C. § 1981, so that Count Twenty-One similarly does not survive summary judgment.

### 3. COUNT TWENTY-TWO – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS HUBBLEBANK, HAMILTON, KALLEN, SOLERA, ESTELLA AND RAGALIA

Plaintiff alleges in Count Twenty-two of her Third Amended Complaint a count for intentional infliction of emotional distress. (At 28). In her brief in opposition, plaintiff has withdrawn this claim. (Dkt. #173-2, at 26).

### 4. COUNT TWENTY-THREE – WRONGFUL DISCHARGE AGAINST DEFENDANTS HUBBLEBANK, HAMILTON, KALLEN, SOLERA, ESTRELLA AND RAGAGLIA

Plaintiff alleges in Count Twenty-three of her Third Amended Complaint a claim for wrongful termination of "plaintiff's employment on account of her race, color and gender in violation of a recognized public policy against said conduct." (At 28-29, & ¶ 718). None of the three briefs address this claim. Accordingly, defendants shall file supplemental briefs limited to Count Twenty-Three **on or before March 7, 2008**, plaintiff shall file her brief in opposition **on or before March 17, 2008**, and defendants may file a reply brief, if any, **on or before March 24, 2008**.

### 5. COUNT TWENTY-FOUR -- TITLE VII AS TO DEFENDANT DCF

Plaintiff alleges in her Third Amended Complaint that the acts, practices and treatments of the defendants intentionally subjected her to discrimination on the basis of her race, color and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq, and that as a result, plaintiff has suffered compensable loss,

including loss of civil rights, economic losses in the form of back pay, seniority, pension and benefits related to her employment.  (At 29).    The allocation of burdens and order of presentation of proof in a Title VII case alleging discrimination are set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).   Under the McDonnell Douglas burden shifting analysis, a plaintiff must first establish a prima facie case, which gives rise to a presumption of discrimination.   411 U.S. at 802-03.   A plaintiff must show that: (1) the plaintiff is a member of a class of protected persons under Title VII; (2) the plaintiff satisfactorily performed her job; (3) the plaintiff suffered an adverse employment decision; and (4) the circumstances surrounding the adverse employment decision gave rise to an inference of discrimination.  See Graham, 230 F.3d at 38 (citation omitted); McDonnell Douglas, 411 U.S. at 802.   "The burden of establishing a prima facie case of disparate treatment is not onerous."   Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).   Plaintiff is an African-American woman, who satisfactorily performed her job (see DCF Response to CHRO Compl. & Atts., Attendance Records), who was terminated (id., 3/16/00 Ltr.), and because plaintiff maintained that Caucasians engaged in the same behavior that gave rise to plaintiff's termination, but were not terminated (Third Amended Compl. ¶ 88), plaintiff satisfies her minimal burden of establishing a prima facie case of discrimination.

Proof of a prima facie case shifts the burden to the defendant "to produce evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason.  This burden is one of production, not persuasion; it can involve no credibility assessment."   Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)(internal citations, quotations & alterations omitted).  Defendant may satisfy its burden if the proffered evidence "'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse

action.'" <u>Schnabel v. Abramson</u>, 232 F.3d 83, 88 (2d Cir. 2000), <u>quoting</u> <u>St. Mary's Honor</u> <u>Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)(additional citations omitted).

In this case, defendants argue that even assuming that plaintiff can satisfy her prima facie case, defendants have met their burden of proffering a legitimate, nondiscriminatory justification. (<u>See</u> Dkt. #166-2, at 16-17). Defendants proffer that plaintiff was separated from service for violating the DCF E-mail Guidelines Policy, the Governors Policy on Computer Use and the State of Connecticut Public Records Administration and State Archives General Letter 98-1 regarding electric and voice mail by accessing her personal e-mail account on DCF equipment, printing e-mails on DCF equipment, and leaving a racially charged e-mail out for others to see.

If an employer articulates a legitimate, nondiscriminatory reason for the plaintiff's termination, the burden shifts back to show that the defendant's reason is a mere pretext for discrimination. <u>See Texas Dep't of Cmty. Affairs</u>, 450 U.S. at 253. Plaintiff may satisfy this burden by challenging the veracity of defendants' articulated reason. <u>See Reeves</u>, 530 U.S. at 143 (citations omitted).

Defendants observe that all of the alleged wrongdoers are women, and the two trainers at issue, Desmond and Sharpe, are African-American; Desmond found plaintiff's personal e-mail and reported her actions to his supervisors. (Dkt. #166-2, at 17). Plaintiff's claim of disparate treatment rests on the one comparator she identified (<u>see</u> Section I.B.1.a. <u>supra</u>), Jeff Smythe, who, consistent with plaintiff's deposition testimony, was found to have sent an e-mail to a fellow classmate complaining about the class. There is no evidence (<u>see</u> Section I.B.1.a. <u>supra</u>) that he accessed his personal e-mail account or printed personal documents on DCF equipment. Further, although plaintiff contends that there was not

25

discipline for others, who she did not name until this dispositive motion,[24] Estrella avers that "DCF disciplines employees on a case by case basis[, and] [b]etween 1998 and 2000, fourteen people were disciplined for misuse of state property, including the dismissals of white, black and Hispanic employees." (Estrella Aff't ¶ 21; see DCF Response to CHRO Compl. & Atts., Encl. 11G & Att. Ltrs.).  "The ultimate burden of persuading the trier of fact that the defendant[s] intentionally discriminated against . . . plaintiff remains at all times with . . . plaintiff," and in light of the admissible evidence, or lack thereof, before the Court, plaintiff cannot satisfy this burden.  Texas Dep't of Cmty. Affairs, 450 U.S. at 253.

### 6. COUNT TWENTY-FIVE - CONN. GEN. STAT. § 46a-60(a)(1) AS TO DEFENDANT DCF

In her Third Amended Complaint, plaintiff alleges that during the term of her employment, defendants subjected plaintiff to discriminatory treatment due to plaintiff's race and color in violation of the CFEPA,  CONN. GEN. STAT. § 46a-60(a)(1).  (At 29-30).[25] Defendants contend that the plaintiff is barred from bringing the CFEPA claim as the State of Connecticut and its agencies are immune to suits in federal court under the auspices of the Eleventh Amendment.  (Dkt. #166-2, at 19-22).

The Eleventh Amendment prohibits a private party from suing a state or its agencies

---

[24]For the reasons stated in Section I.B.1.a. supra, the Court may not rely on plaintiff's new assertions in her affidavit.

[25]CONN. GEN. STAT. § 46a-100 reads:

Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83a or 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or office may be brought in the superior court for the judicial district of Hartford.

in federal court unless the state unequivocally consents to be sued.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  "A state may be subject to suit in federal court one of two ways: (1) Congress can divest a state of immunity through a statutory enactment, as it has done with Title VII; or (2) a state may waive its immunity and agree to be sued in federal court."  Delrio v. Univ. of Conn. Health Care, 292 F. Supp. 2d 412, 419 (D. Conn. 2003), citing Close v. New York, 125 F. 3d 31, 39 (2d Cir. 1997).   Thus, while under CONN. GEN. STAT. § 46a-60(a)(1), Connecticut waives its immunity for suits brought in state court for claims asserted under CFEPA, a state does not consent to suit in federal court by consenting to suit in the courts of its own creation.  See Smith v. Reeves, 178 U.S. 436, 441-45 (1900).  Furthermore, although Connecticut waives its immunity for suit in state court for CFEPA claims, the state has "not clearly expressed a waiver to suit in federal court." Delrio, 292 F. Supp. 2d at 419.  "Therefore, the courts of this district have consistently found that CFEPA claims against the state or its agents are barred by the Eleventh Amendment." Id. (citation omitted); see also Alungbe v. Bd. of Trustees of Conn. State Univ., 283 F. Supp. 2d 674, 687-88 (D. Conn. 2003); Walker v. Conn., 106 F. Supp. 2d 364, 370 (D. Conn. 2000) (in absence of a "clear declaration" of the state's intention to consent to jurisdiction, this court lacks jurisdiction over CFEPA claims).[26]   Accordingly, plaintiff's Count Twenty-Five cannot survive summary judgment.

## II. CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (Dkt. #166) is **granted as to Counts Twenty, Twenty-One, Twenty-Two, Twenty-Four and**

---

[26]In their reply brief, defendants also contend that all of the individual defendants are entitled to qualified immunity.  (Dkt. #178, at 8-10).  In light of the conclusions reached above, the Court need not address this final issue.

**Twenty-Five** and plaintiff's Motion to Strike (Dkt. #174) is **denied**.[27]

Dated this 20th day of February, 2008, at New Haven, Connecticut.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

---

[27]Counsel shall contact the Magistrate Judge's Chambers to schedule a settlement conference **for mid March** to address the sole remaining plaintiff, and if the case does not settle, to set deadlines for the completion of the last summary judgment motion in this aged case.