RYAN WILLIAMS ET AL. v. KRISTINE RAGAGLIA ET AL.
3:01 CV 1398 (JGM)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2006 U.S. Dist. LEXIS 4148

January 25, 2006, Decided
January 25, 2006, Filed

SUBSEQUENT HISTORY: Motion denied by *Williams v. Ragaglia*, 2006 U.S. Dist. LEXIS 16285 (D. Conn., Mar. 16, 2006)

COUNSEL: [*1] For Ryan Williams, Plaintiff: Francis A. Miniter, Miniter & Associates, Hartford, CT.

For Trevor Johnson, Nana Oko Darko, Irene Cohen, Alice Hood, Patricia Williamson, Regina Whilby, F. Joseph Ovide, Jr., Plaintiffs: Francis A. Miniter, Miniter & Associates, Hartford, CT; Michael T. Landino, Miniter & Associates, Hartford, CT.

For Kristine D. Regalia, Comm CT Dept Children & Families, I/O, Debra Collins, I/O, Marcia Weaver, I/O, Beverly Hublebank, I/O, Dorothy Hamilton, I/O, Mary Solera, I/O, Judith Kallen, I/O, Wanda Estrella, I/O, James Moore, I/O, Gayle Hoffman, I/O, Rudolph Brooks, I/O, Ada Sanchez, I/O, Tara Lewis, I/O, Linda Harris, I/O, Leticia Lacomba, I/O, Patricia Simpson, I/O, Nancy Wilcox, I/O, Janet Lyons, I/O, Defendants: Joseph A. Jordano, Attorney General's Office Employment Rights, Hartford, CT.

JUDGES: Joan Glazer Margolis, United States Magistrate Judge.

OPINION BY: Joan Glazer Margolis

OPINION

RULING ON DEFENDANTS' MOTION FOR [PARTIAL] SUMMARY JUDGMENT

On July 25, 2001, plaintiffs commenced this action (Dkt. # 1), followed by an Amended Complaint on December 11, 2001 (Dkt. # 31), a Second Amended Complaint on June 12, 2002 (Dkt. # 40), and a Third Amended Complaint[*2] on December 18, 2002 (Dkt. # 57). The Third Amended Complaint included twenty-six counts, alleging violations of the *Fourteenth Amendment* and *42 U.S.C. § 1983*, *42 U.S.C. § 1981*, and intentional infliction of emotional distress by each of the seven plaintiffs against his or her various supervisors (Counts One to Three -- plaintiff Williams; Counts Four to Six -- plaintiff Johnson; Counts Ten to Thirteen -- plaintiff Cohen; n1 Counts Fourteen to Sixteen -- plaintiff Hood; Counts Seventeen to Nineteen -- plaintiff Williamson; Counts Twenty to Twenty-five -- plaintiff Whilby; n2 Counts Thirty to Thirty-two -- plaintiff Ohene, n3 and lastly Count Thirty-Three, brought under *42 U.S.C. § 1983* by all plaintiffs against all individual defendants). n4

-----------------Footnotes-----------------

n1 The additional count (Count Twelve) is for wrongful discharge.

n2 The additional counts (Counts Twenty-three through Twenty-five) are for wrongful discharge, and Title VII and *CONN. GEN. STAT. § 46a-60(a)(1)* claims against defendant DCF.

n3 This Court granted summary judgment as to plaintiff Ohene on June 24, 2005. (Dkt. # 98).

[*3]

Case 3:01-cv-01398-JGM   Document 180-2   Filed 02/25/2008   Page 2 of 11

Page 5
2006 U.S. Dist. LEXIS 4148, *

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 On June 10, 2003, defendants' Motion for Default Judgment against plaintiffs Darko and Ovide was granted (Dkts. ## 68-69), thus eliminating Counts Seven to Nine -- plaintiff Darko, and Counts Twenty-Six to Twenty-nine -- plaintiff Ovide.

n5 The index of exhibits in support of defendants' Motion (Dkt. # 104) includes the following fifteen exhibits: copy of excerpts from deposition testimony of Irene Cohen, taken on June 26, 2003 ["Cohen Depo."] (Exh. 1); affidavit of James Richard Moore, sworn to November 14, 2005 ["Moore Aff't"] (Exh. 2); copy of Third Amended Complaint, dated December 16, 2002 ["Third Amended Complaint"] (Exh. 3); copy of performance appraisal of plaintiff, dated February 18, 1994 ["February 1994 Appraisal"] (Exh. 4); copy of performance appraisal of plaintiff, dated October 28, 1994 ["October 1994 Appraisal"] (Exh. 5); copy of performance appraisal of plaintiff, dated October 20, 1995 ["October 1995 Appraisal"] (Exh. 6); copy of performance appraisal of plaintiff, dated October 1, 1996 ["October 1996 Appraisal"] (Exh. 7); copy of performance appraisal of plaintiff, dated September 14, 1997 ["September 1997 Appraisal"] (Exh. 8); copy of performance appraisal of plaintiff, dated September 9, 1998 ["September 1998 Appraisal"] (Exh. 9); copy of grievance filed by Cohen, dated January 27, 1999 and copy of revised performance appraisal of plaintiff, dated February 19, 1999 ["January 1999 Grievance"] (Exh. 10); copy of performance appraisal of plaintiff, dated September 28, 1999 ["September 1999 Appraisal"] (Exh. 11); copy of performance appraisal of plaintiff for the period of 9/1/99 to 8/31/00, dated September 30, 2000 ["September 2000 Appraisal"] (Exh. 12); copy of letter from Leticia Lacomba to plaintiff, dated December 13, 2000 ["December 13, 2000 Letter"] (Exh. 13); copy of arbitration award, dated September 3, 2002 ["Arbitration Award"] (Exh. 14); and copy of plaintiff's responses to defendants' Interrogatories and Requests for Production, dated February 14, 2003 ["Plaintiff's Responses"] and copy of supplementary response to Interrogatory No. 4 ["Plaintiffs Supp. Response"] (Exh. 15).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

On June 24, 2005, this Court granted defendants' Motion for Summary Judgment, absent objection, as to plaintiff Ohene's claims, familiarity with which ruling is presumed ["June 2005 Ruling"]. (Dkt. # 98). The remaining six plaintiffs in the Third Amended Complaint are former employees of the Connecticut Department of Children and Families ["DCF"]; the twenty-one defendants include the DCF and twenty of its supervisors and administrators, including its then Commissioner, Kristine Ragaglia. (Third Amended Complaint, PP 3-4). The only defendants named in Counts Ten to Thirteen are: Leticia Lacomba, a DCF Regional Administrator; James Moore, a DCF Supervisor; and Commissioner Ragaglia. (Third Amended Complaint, PP 4.O, I. & A &, 404-72).

On March 3, 2003, the parties consented to trial before this Magistrate Judge. (Dkt. # 65). The deadline for the completion[*4] of discovery was extended on several occasions, until June 1, 2004. (See Dkt. # 67 & 5/21/03 endorsement thereon, # 70 & 8/14/03 endorsement thereon, ## 71-76). At a settlement conference held on September 29, 2004, counsel agreed that after this Court issued its ruling on defendants' Motion for Summary Judgment with respect to plaintiff Ohene, a continued settlement/status conference would be held during which the dates would be set for filing the next motion for summary judgment. (Dkt. # 85, P 6. See also June 2005 Ruling, at 14, n.6). Thereafter, counsel communicated to the Court that defendants would file their Motion for Summary Judgment regarding plaintiff Irene Cohen on November 29, 2005. (See Dkt. # 99, P 3). After an extension of time was granted (Dkt. # 100), defendants filed the pending Motion for [Partial] Summary Judgment, brief, index of exhibits and Local Rule 56(a)1 Statement of Material Facts on December 13, 2005. (Dkts. ## 101-04). n5 Plaintiff Cohen has failed to file a timely brief in opposition.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*5] For the reasons stated below, defendants' Motion for Summary Judgment (Dkt. # 101) is granted absent objection.

I. DISCUSSION

The standard for summary judgment is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *FED. R. CIV. P. 56(c)*. Upon motion, following adequate time for discovery, *Rule 56(c)* requires that summary judgment be entered against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).*[*6]

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." *FED. R. CIV. P. 56(c)*. "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)*, quoting *United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)*. "If reasonable minds could differ as to the import of the evidence, . . . the moving party simply cannot obtain summary judgment." *R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)*(citations & internal quotation marks omitted). Thus, the party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact." *Adickes, 398 U.S. at 153*.

As stated above, plaintiff Cohen has failed to file a timely brief in opposition to defendants' Motion for Summary Judgment or Local Rule 56(a)2 Statement. *Federal Rule of Civil Procedure 56*[*7] provides that if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, if appropriate, shall be entered against" her. *FED. R. CIV. P. 56(e)*(emphasis added). As this Court observed in its June 2005 Ruling, the Second Circuit has made clear that when a nonmoving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy BearCo., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)*(citation omitted). If the moving party's evidence does not satisfy the burden of production, "then summary judgment must be denied even if no opposition evidentiary matter is presented." Id. (internal quotations, citation & emphasis omitted).

If a non-moving party fails to file a counter statement, the facts in the moving party's Local Rule Statement are deemed admitted. See D. CONN. L. CIV. R. 56(a)1("All material facts set forth in said statement will be deemed admitted [*8]unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2."); see also *Booze v. Shawmut Bank, Conn., 62 F. Supp. 2d 593, 595 (D. Conn. 1999)*(discussing statements of fact required by motions for summary judgment sought pursuant to former Local Rule 9(c)(1) and 9(c)(2)). The Second Circuit requires, however, that there be support in the record for the unopposed Rule 56(a) statements before such statements may be accepted as true. See *Giannullo v. City of New York, 322 F.3d 139, 140, 143, n.5 (2d Cir. 2003)*; see also *Vermont Teddy Bear, 373 F.3d at 244*. Thus, an "unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Vermont Teddy Bear, 373 F.3d at 244* (internal quotations & multiple citations omitted). The district court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Id. at 246* (citations & internal quotations omitted).

A. FACTUAL [*9] BACKGROUND

Because plaintiff has failed to file a Rule 56(a)2 counter statement to defendants' Rule 56(a)1 statement of facts, the following factual summary is drawn from defendants' Local Rule 56(a)1 Statement of Facts, filed December 13, 2005 (Dkt. # 103) ["Defendants' Statement"], and the accompanying affidavit, excerpts of deposition testimony and exhibits. (See Dkt. # 104). See *Giannullo, 322 F.3d at 140, 143, n.5*. Such factual summary, therefore, does not represent factual findings of the Court.

DCF hired plaintiff n6 as a social worker in 1993 and after completing her training period in early 1994, she was assigned to the DCF Rockville Office. (Defendants' Statement PP 2-3; Cohen Depo. at 9-12). Plaintiffs initial training supervisor was Joanne Burgess, MSW, who, in February 1994, rated plaintiff as "satisfactory" on her annual service rating. (Defendants' Statement P 4;

February 1994 Appraisal). While working at the DCF Rockville Office, plaintiff was under the direct supervision of Janet Labelle, n7 a Social Worker Supervisor, until sometime in 1995. (Defendants' Statement P 5; Cohen Depo. at 10-12). During the time that plaintiff worked under the supervision[*10] of Labelle in the DCF Rockville office, she maintained the same job title, duties, wages and benefits and she was never suspended or disciplined in any manner that affected her wages or job duties. (Defendants' Statement P 42; Cohen Depo. at 63).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n6 Plaintiff is an African American female. (Third Amended Complaint, P 3.E).

n7 Neither Labelle nor DCF are named defendants in this case as to the claims by plaintiff. (Defendants' Statement P 12; Third Amended Complaint, Counts 10-13).

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Social workers at DCF receive annual performance evaluations in September of each year and the evaluation period runs from July 1 to August 30 of the following year. (Defendants' Statement P 6; Moore Aff't P 10). A proposed evaluation is prepared by the Social Worker Supervisor and then is reviewed by the Program Supervisor and Program Director; all three managers must sign off on the final evaluation. (Id.). The evaluation includes a comments section that discusses specific areas of performance. (Id.). The Program Supervisor[*11] must review all of the proposed service ratings prepared by the Social Worker Supervisors for social workers in their unit(s). (Defendants' Statement P 7; Moore Aff't P 11). The Program Supervisor would then provide input based on his/her observations and if deemed necessary, he/she would adjust the service rating up or down. (Id.). The proposed service rating was then reviewed by the Program Director. (Id.).

In October 1994, plaintiff received her first annual service rating of her performance, in which she was rated "satisfactory" by Labelle. (Defendants' Statement P 8; October 1994 Appraisal). According to plaintiff, Labelle refused or forgot to send in documentation for plaintiff's reclassification after her working test period was completed, but plaintiff admits that the matter was promptly taken care of by the Program Supervisor. (Defendants' Statement P 9; Cohen Depo. at 18-19, 21, 24).

In October 1995, plaintiff received a "fair" service rating from Labelle, in which Labelle noted that plaintiff's problem areas included both the quantity of work and the need to better document client contacts. (Defendants' Statement P 10; October 1995 Appraisal; Plaintiff's Responses, [*12] at 5 & Plaintiff's Supp. Response). Plaintiff alleges that Labelle tried to reduce her service rating in 1994 or 1995, but plaintiff testified at her deposition that Labelle never actually did so. (Defendants' Statement P 11; Cohen Depo. at 28-29).

In 1995, plaintiff was assigned to a new Social Worker Supervisor named Sherry Rautenberg, under whom plaintiff worked until October 1996. (Defendants' Statement P 13; Cohen Depo. at 12). Plaintiff does not allege that Rautenberg took any discriminatory acts towards her. (Defendants' Statement P 14; Cohen Depo. at 31). In October 1996, plaintiff received a satisfactory service rating from Rautenberg, who noted that plaintiff received a written reprimand in September 1996 for exercising poor judgment. (Defendants' Statement P 15; October 1996 Appraisal).

Later in 1996, plaintiff was transferred to the DCF New Britain Investigations Unit, which had its offices in Hartford. n8 (Defendants' Statement P 16; Moore Aff't PP 3 and 7). Plaintiffs supervisor was Susan Hamilton. (Id.). Plaintiff worked under several Social Worker Supervisors while in the New Britain Investigations Unit and in July 1997, defendant James Moore was promoted to the[*13] Unit's Program Supervisor. (Defendants' Statement P 17; Moore Aff't P 4). As Program Supervisor, Moore oversaw several Social Worker Supervisors and numerous social workers, including plaintiff. (Defendants' Statement P 18; Moore Aff't P 4). Additionally, Moore reviewed the proposed service rating prepared by the Social Worker Supervisors for social workers in his unit, including plaintiff. (Defendants' Statement P 21; Moore Aff't PP 9, 11-12). In his more than eight years as a Program Supervisor, Moore reviewed and adjusted the service ratings of numerous white, black and Hispanic social workers, sometimes increasing a rating or lowering a rating that he felt best reflected the employee's performance.

(Defendants' Statement P 22; Moore Aff't P 12). This evaluation process includes not only objective measurements, but also subjective elements. (Id.).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n8 DCF Region IV, known then as the North Central Region, consisted of the Hartford, New Britain and Manchester offices; that region was headed by Leticia LaComba, who was the Regional Director. (Defendants' Statement P 20; Moore Aff't P 6).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*14] In July 1997, plaintiffs immediate supervisor was Social Worker Supervisor Joy Pizzuto. (Defendants' Statement P 19; Moore Aff't P 8). In September 1997, plaintiff received an overall "good" evaluation from Pizzuto for the 1996-97 period, which evaluation Moore signed off on after it went through the review process. (Defendants' Statement P 23; Moore Aff't PP 9, 13; September 1997 Appraisal).

In September 1998, when plaintiff's Social Worker Supervisor was David Melchionne, plaintiff received a "satisfactory" service rating for the 1997-98 period. (Defendants' Statement P 24; September 1998 Appraisal). Four months later, in January 1999, plaintiff grieved the 1998 service rating. (Defendants' Statement P 25; Moore Aff't P 15; January 1999 Grievance). Moore reviewed the rating as the initial step in the grievance process, which included the rating in each category and the written comments by the Social Worker Supervisor. (Defendants' Statement P 25; Moore Aff't P 15). Moore concluded that based on the comments, the overall rating should be "good," and Moore instructed Melchionne to adjust the rating up one level from "satisfactory" to "good." (Defendants' Statement P 26; Moore Aff't[*15] P 15; see September 1998 Appraisal; January 1999 Grievance). Moore never instructed Melchionne to rate plaintiff's service rating as "unsatisfactory." (Defendants' Statement P 35; Moore Aff't P 22; see September 1998 Appraisal; January 1999 Grievance). Plaintiff does not have knowledge about whether Moore adjusted any other social worker's job evaluations or whether other social workers under Melchionne's supervision had their evaluations changed. (Defendants' Statement PP 27-28; Cohen Depo. at 38-39). During the time plaintiff worked under the supervision of Moore in the Hartford office, she maintained the same job title, duties, wages and benefits and she was never suspended or disciplined in any manner that affected her wages or job duties. (Defendants' Statement P 42; Cohen Depo. at 64-65).

In July 1999, Moore was transferred to the Manchester office but before he left the Hartford office, he was required to complete the evaluations for social workers in the New Britain Investigations Unit. (Defendants' Statement P 29; Moore Aff't P 16). In September 1999, plaintiff received a "satisfactory" service rating for the 1998-99 period, when her Social Worker Supervisor was Andrea[*16] Chamberlain, a black female. n9 (Defendants' Statement P 30; Moore Aff't P 17; September 1999 Appraisal). Throughout the time that Moore supervised the social workers conducting New Britain Investigations, plaintiff never received an unsatisfactory service rating and Moore never took any type of adverse action against plaintiff. (Defendants' Statement PP 33-34; Moore Aff't PP 20-21). After Moore was transferred to the Manchester office, he had no dealings with plaintiff nor was he involved with the agency's decision to terminate plaintiff. (Defendants' Statement P 31; Moore Aff't P 18; Cohen Depo. at 23-24). Other than allegedly instructing Melchionne to change her service rating, plaintiff does not claim that Moore did anything discriminatory towards her. (Defendants' Statement P 43; Cohen Depo. at 55-56).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n9 Moore avers that it was his experience as a Program Supervisor that black female social workers were promoted to the position of Social Worker Supervisor, such as Andrea Chamberlain, a black female, who was promoted to a Social Worker Supervisor in the New Britain Investigations unit. (Defendants' Statement P 32; Moore Aff't P 17).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*17] In September 2000, plaintiff received a "good" service rating from her supervisor, who at that time was Isabel LaLuz, MSW. (Defendants' Statement P 37; September 2000 Appraisal). Three months later, in

Case 3:01-cv-01398-JGM   Document 180-2   Filed 02/25/2008   Page 6 of 11

Page 9
2006 U.S. Dist. LEXIS 4148, *

December 2000, plaintiff was placed on paid administrative leave pending an investigation into allegations that she failed to complete an investigation and had falsified DCF records. (Defendants' Statement P 38; December 13, 2000 Letter; Cohen Depo. at 51-52). After the completion of the investigation, plaintiff was terminated on March 13, 2001 for falsifying records. (Defendants' Statement P 39; Cohen Depo. at 45-46). When plaintiff was terminated, she was not under the supervision of either Moore or Labelle. (Defendants' Statement P 40; Cohen Depo. at 45-46). Plaintiff grieved her dismissal and an independent arbitrator upheld the termination. (Defendants' Statement P 39; Arbitration Award; Cohen Depo. at 47-48).

Plaintiff testified at her deposition that she applied for promotions in 1995, 1996 and possibly 1997, but was denied because her evaluations were mediocre. (Defendants' Statement P 41; Cohen Depo. at 32-33, 40, 56). Plaintiff, however, does not make any claim against DCF[*18] supervisors Hamilton and Rautenberg who prepared the evaluations. (Defendants' Statement P 41; Cohen Depo. at 32-34). Plaintiff contends that she was wrongfully denied promotions to which she was entitled and for which she was qualified, but that plaintiff's white coworkers were promoted instead. (Plaintiff's Supp. Response). Moore avers that, to his knowledge, during the 1996-99 time period that he served as the Program Supervisor for the New Britain Investigations Unit, plaintiff never applied for a promotion. (Defendants' Statement P 36; Moore Aff't P 23).

B. DEFENDANTS' MOTION

Defendants assert that plaintiff's claim based on alleged conduct by Janet Labelle is not actionable because she is not a named defendant and there is no evidence that can impute her conduct to the named defendants (Dkt. # 102, at 6); plaintiff cannot prove a constitutional claim premised on a violation of her right to equal protection in that plaintiff cannot show that defendants Ragaglia, LaComba and Moore intentionally violated her constitutional rights by treating her differently than similarly treated employees because of her race (id. at 6-10); plaintiffs claim against the individual defendants[*19] pursuant to *Section 1983* fails for lack of personal involvement (id. at 10-13); plaintiff's *Section 1981* claim fails because *Section 1983* is the exclusive federal remedy for the alleged violation of constitutional rights (id. at 13-15); plaintiff's *Section 1981* claim fails to state a claim upon which relief can be granted (id. at 15-16); defendants are entitled to judgment in their favor on plaintiffs state law claim of intentional infliction of emotional distress (id. at 16-17); and there is no cause of action against the individual defendants for wrongful discharge. (Id. at 17-18).

1. COUNT TEN -- EQUAL PROTECTION CLAIM AGAINST DEFENDANTS LACOMBA, MOORE AND RAGAGLIA n10

------------------Footnotes------------------

n10 Although plaintiff testified at her deposition regarding her claims against Janet Labelle, Labelle is not mentioned in Counts Ten through Thirteen, nor is she named as a defendant in this litigation. (Third Amended Complaint, P 4). Therefore, as defendants correctly observe, plaintiff/s claims based on alleged conduct by Labelle are not actionable. (Dkt. # 102, at 6).

------------------End Footnotes------------------

[*20] In Count Ten of the Third Amended Complaint, plaintiff alleges that she was subjected to disparate treatment in her work environment resulting from her race, ethnic origin and gender, in violation of the *Fourteenth Amendment* and *42 U.S.C. § 1983*, namely that plaintiff was wrongfully terminated from her employment on March 13, 2001. (At 20-21). Defendants argue that under the present facts, plaintiff cannot show that the three defendants in this case intentionally violated her constitutional rights by treating her differently than similarly treated employees because of her race. (Dkt. # 102, at 8).

As this Court observed in the June 2005 Ruling (at 9-10), to state a claim under the *Equal Protection Clause of the Fourteenth Amendment*, plaintiff must allege that (1) she, compared with other similarly-situated individuals, was selectively treated, and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)*[*21] (citations & internal quotation marks omitted). With respect to the second element, "this Circuit has traditionally required that a plaintiff alleging selective treatment show an illicit motivation or animus on the part of the defendant." *Zavatsky v. Anderson, 2004 U.S. Dist. LEXIS 7440, No. Civ.3:00 CV 844(AVC), 2004 WL*

*936170, at \* 8 (D. Conn. Mar. 9, 2004)*, citing *Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001)*. A "demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith."*Crowley v. Courville, 76 F.3d 47, 53 (2d Cir. 1996)*.

a. ANNUAL SERVICE RATINGS

Defendants contend that plaintiff has always received acceptable service ratings and her "chief complaints" relate to "petty matters such [as] a delay in upgrading her position in 1994 or alleged attempts' to reduce her service ratings in 1997 or 1998, which never actually occurred." (Dkt. # 102, at 8).

In October 1994, plaintiff received her first annual service rating of her performance, in which she was rated "satisfactory" by Labelle. (Defendants' Statement P 8; October 1994 Appraisal). In October 1995, plaintiff received [\*22]a "fair" service rating from Labelle, in which Labelle noted that plaintiff's problem areas included both the quantity of work and the need to better document client contacts. (Defendants' Statement P 10; October 1995 Appraisal; Plaintiff's Responses, at 5 & Plaintiff's Supp. Responses). Although plaintiff alleges that Labelle tried to reduce her service rating in 1994 or 1995, plaintiff testified at her deposition that Labelle never actually did so and plaintiff does not contest her "fair" service rating. (Defendants' Statement P 11; Cohen Depo. at 28-29).

In October 1996, plaintiff received a "satisfactory" service rating from her then supervisor Rautenberg. (Defendants' Statement P 15; October 1996 Appraisal). According to plaintiff, "in 1997, defendant James Moore made plaintiff's supervisor David [Melchionne] change his evaluation of plaintiff, which was positive to negative" and plaintiff's white coworkers were not subjected to such evaluation changes. n11 (Plaintiffs Supp. Response; see Cohen Depo. at 29). However, plaintiff's September 1997 Appraisal reflects that plaintiff received an overall "good" evaluation for the 1996-97 period, which evaluation Moore signed off[\*23] on after it went through the review process. (Defendants' Statement P 23; Moore Aff't P 13; September 1997 Appraisal). Plaintiff received a "satisfactory" service rating in September 1998, which rating she grieved, the result of which was that Moore instructed Melchionne to adjust the rating up one level from "satisfactory" to "good." (Defendants' Statement PP 24-26; September 1998 Appraisal; January 1999 Grievance; Moore Aff't PP 14-15)(emphasis added). n12

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n11 At her deposition, plaintiff testified that she relies on what was said by "a couple of people" as her basis for claiming that other white coworkers were not subject to the same treatment; plaintiff does not know who, she was "just talking in general." (Cohen Depo. at 39).

n12 Plaintiff does not have knowledge whether Moore adjusted any other social worker's job evaluations or whether other social workers under Melchionne's supervision had their evaluations changed. (Defendants' Statement PP 27-28; Cohen Depo. at 38-39).

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Plaintiff again received[\*24] a "satisfactory" service rating in September 1999, when her Social Worker Supervisor was Andrea Chamberlain, a black female. (Defendants' Statement P 30; Moore Aff't P 17; September 1999 Appraisal). In September 2000, plaintiff received a "good" service rating from her supervisor, who at that time was Isabel LaLuz, MSW. (Defendants' Statement P 37; September 2000 Appraisal). Throughout the time that Moore supervised the social workers conducting New Britain Investigations, plaintiff never received an unsatisfactory service rating and Moore never took any type of adverse action against plaintiff. (Defendants' Statement PP 33-34; Moore Aff't PP 20-21).

In the seven years that plaintiff received service ratings, she consistently received positive evaluations and service ratings that ranged from satisfactory to good (with the sole exception of her 1994 evaluation, about which she does not complain and plaintiff did not name Labelle, her evaluator, as a defendant). n13 The receipt of satisfactory or positive service ratings, even if they are lower than previous ratings, does not constitute adverse employment action. *Meredith v. Beech Aircraft Co., 18 F.3d 890, 896 (10th Cir. 1994)*.[\*25] Moreover, there is no evidence that plaintiff suffered adverse employment

Case 3:01-cv-01398-JGM    Document 180-2    Filed 02/25/2008    Page 8 of 11

Page 11
2006 U.S. Dist. LEXIS 4148, *

action related to her service ratings that can be attributed to the individual defendants.

- - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n13 Additionally, plaintiff commenced this action on July 24, 2001, almost seven years after the October 1994 service rating. Any claim relating to this service rating would be barred by the three year statute of limitations for *Section 1983* and *1981* actions. See *Walker v. Jastremski, 159 F.3d 117, 119 (2d Cir. 1998)*(three year statute of limitations for § *1983* action filed in the *District of Connecticut); Holt v. KMI-Continental, Inc., 95 F.3d 123, 131 (2d Cir 1996)*(three year statute of limitations for § *1981* action filed in the District of Connecticut), cert. denied, *520 U.S. 1228, 117 S. Ct. 1819, 137 L. Ed. 2d 1027 (1997)*; see also *Lewis v. Connecticut Dep't of Corr., 355 F. Supp. 2d 607, 621 n.10 (D. Conn. 2005)*.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

b. PROMOTIONS

Plaintiff testified at her deposition that she applied for promotions in 1995, [*26] 1996 and possibly 1997, but was denied because her evaluations were mediocre. (Defendants' Statement P 41; Cohen Depo. at 32-33, 39-40, 56; see Cohen Depo. at 15-21). Plaintiff, however, does not make any claim against DCF supervisors Hamilton and Rautenberg, who prepared the evaluations plaintiff contends inhibited her from being promoted. (Defendants' Statement P 41; Cohen Depo. at 32-34). Although plaintiff asserts that the failure to promote African Americans is the "unspoken" "culture" at DCF (Cohen Depo. at 34), Moore avers that it was his experience as a Program Supervisor that black female social workers were promoted to the position of Social Worker Supervisor, such as Andrea Chamberlain, a black female who supervised plaintiff in 1999, who was promoted to a Social Worker Supervisor in the New Britain Investigations Unit. (Defendants' Statement P 32; Moore Aff't PP 19, 17). Additionally, defendant Moore averred that to his knowledge, during the 1996-99 time period that he served as the Program Supervisor for the New Britain Investigations Unit, plaintiff never applied for a promotion. (Defendants' Statement P 36; Moore Aff't P 23).

Plaintiff asserts a blanket contention[*27] that she "was wrongfully denied promotions to which she was entitled and qualified for, which plaintiff's white coworkers received." (Plaintiff's Supp. Responses). Plaintiff testified at her deposition that she "would need to see a list of the coworkers who were in the office during that time [period]" before she could say to whom she was comparing herself when she said that other white coworkers received promotions for which she was qualified. (Cohen Depo. at 41). When pressed for more detailed information, plaintiff responded with the name "Joy somebody", though plaintiff acknowledges that she was "not similarly situated with [her] because she [did not] have her Master's at the time . . ." (Id.). Although plaintiff has contended that white coworkers received promotions to which she was entitled and for which she was qualified, plaintiff has not supplemented this response or her deposition testimony with evidence to support this claim, without which plaintiffs claim as to wrongful denial of promotions cannot survive summary judgment. n14

- - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n14 All of this notwithstanding, any claim of denial of promotion in 1995, 1996 or 1997 is barred by the three year statute of limitations for *Section 1983* and *1981* actions. See note 13 supra.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*28] c. TERMINATION

Plaintiff contends she was wrongfully charged with respect to her termination in 2001 for falsifying DCF records. n15 (Plaintiffs Supp. Response). As to this claim, there is no evidence of unequal treatment before the Court. In December 2000, plaintiff was placed on paid administrative leave pending an investigation into allegations that she failed to complete an investigation that resulted in a substantiated finding of abuse, and had falsified DCF records. (Defendants' Statement P 38; December 13, 2000 Letter; Cohen Depo. at 51-52). Plaintiff testified at her deposition that the claim of

falsifying records was made by a parent, not by a DCF employee. (Cohen Depo. at 45). After the completion of the investigation, plaintiff was terminated on March 13, 2001 for falsifying records. (Defendants' Statement P 39; Cohen Depo. at 45-46). Plaintiff grieved her dismissal and an independent arbitrator upheld the termination after concluding that the dismissal was for "just cause." (Defendants' Statement P 39; Arbitration Award; Cohen Depo. at 47-48).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n15 Plaintiff also contends that she was wrongfully terminated for taking an unauthorized leave of absence from work. (Plaintiff's Supp. Response).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*29] Additionally, as to each of these three issues (annual service ratings, the denial of promotions and plaintiff's termination), defendants correctly contend that plaintiff cannot carry her burden of proof showing sufficient personal involvement by the individual defendants. (Dkt. # 102, at 10-12). n16

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n16 Specifically, for example, when asked at her deposition which defendant made the decision to fire her, she responded, "Personnel." (Cohen Depo. at 46).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

Thus, viewing inferences that may be drawn from the underlying facts contained in defendants' materials in the "light most favorable to the party opposing the motion," *Adickes, 398 U.S. at 158-59* (citation omitted), plaintiff's Count Ten does not survive summary judgment.

2. COUNT ELEVEN -- *42 U.S.C. § 1981* CLAIM AGAINST DEFENDANTS LACOMBA, MOORE AND RAGAGLIA

In Count Eleven of the Third Amended Complaint, plaintiff alleges that defendants Lacomba, Moore and Ragaglia knew of ongoing discrimination against plaintiff[*30] and failed to remedy the wrong while occupying positions in which they were required to do so, due to plaintiff's race, in violation of *42 U.S.C. § 1981*. (At 21).

As this Court held in the June 2005 Ruling (at 12), defendants correctly observe that "when a person's rights protected by *§ 1981* are violated by a state actor (as opposed to a private person), the aggrieved party has a cause of action pursuant to *42 U.S.C. § 1983*, not *42 U.S.C. § 1981*." *Smith v. Connecticut Dep't of Corr., 2003 U.S. Dist. LEXIS 21239, No. 3:03 CV 386(AWT), 2003 WL 22834676, at \* 2 (D. Conn. Nov. 25, 2003)*; see also *Coger v. State of Conn. Dep't of Admin. Servs., 309 F. Supp. 2d 274, 281 (D. Conn. 2004)*, aff'd, *143 Fed. Appx. 372 (2d Cir. 2005)*. Furthermore, *42 U.S.C. § 1983* is "a method for vindicating federal rights elsewhere conferred," *Baker v. McCollan, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433, n. 3 (1979)*, "such as those conferred by *§ 1981*." *Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004)*.

Even assuming arguendo that plaintiff can maintain a *§ 1981*[*31] claim against state actors, plaintiff must . . . prove that the individual defendants' acts were "purposefully discriminatory and racially motivated." *Albert v. Carovano, 851 F.2d 561, 571-72 (2d Cir. 1998)*(multiple citations omitted). For the reasons stated in Section I.B.1 supra, plaintiff cannot sustain her burden of proof to state a claim under *42 U.S.C. § 1981*, so that Count Eleven similarly does not survive summary judgment.

3. COUNT TWELVE -- WRONGFUL DISCHARGE AGAINST DEFENDANTS LACOMBA, MOORE AND RAGAGLIA

In Count Twelve of the Third Amended Complaint, plaintiff alleges that defendants Lacomba, Moore and Ragaglia wrongfully terminated plaintiff's employment in violation of public policy as set out in the *Fourteenth Amendment* and *42 U.S.C. §§ 1981* and *1983*. (At 21-22). Defendants correctly contend that Count Twelve fails because plaintiff does not allege, nor can she prove, that she was employed by the defendants in their individual capacities, as opposed to their official

Case 3:01-cv-01398-JGM    Document 180-2    Filed 02/25/2008    Page 10 of 11

Page 13
2006 U.S. Dist. LEXIS 4148, *

capacities. (Dkt. # 102, at 17-18). Rather, plaintiff pleads that she was employed by DCF from 1993 to 2001 (Third Amendment Complaint[*32] P 5), and any claim made by plaintiff against the conduct of defendants in their official capacities must be directed against the state and is subject to the jurisdiction of the Connecticut Claims Commissioner. *CONN. GEN. STAT. § 4-141.* Accordingly, plaintiff's Count Twelve fails as this Count is directed against the individual defendants who have only been sued in their personal capacities.

### 4. COUNT THIRTEEN -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count Thirteen of the Third Amended Complaint, plaintiff alleges that defendants Lacomba, Moore and Ragaglia intended to inflict emotional distress, or knew or should have known that emotional distress was likely to occur as a result of their conduct; they acted maliciously, in bad faith, with improper motive and with reckless disregard for the consequences that their actions would have on plaintiff; their conduct was extreme and outrageous; and plaintiff's emotional trauma was severe and as a result, plaintiff suffered anxiety, humiliation, embarrassment and emotional distress. (At 22).

As this Court observed in the June 2005 Ruling (at 13), under Connecticut law, the common law tort of intentional[*33] infliction of emotional distress requires that four elements be established: (1) the defendant intended to inflict emotional distress or knew that it would result; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the plaintiff's distress; and (4) the plaintiffs resulting emotional distress was severe. *Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986)*(multiple citations omitted). Extreme and outrageous conduct is that which "goes beyond all possible bounds of decency, [is] regarded as atrocious, and [is] utterly intolerable in a civilized society." *Appleton v. Board of Ed. of the Town of Stonington, 254 Conn. 205, 211, 757 A.2d 1059 (2000)*(quotations & citation omitted). It does not include conduct that is "merely insulting or displays bad manners or results in hurt feelings." Id. (citation omitted).

As discussed in detail in Sections I.B.1 & 3. supra, plaintiff received satisfactory performance evaluations and was justly terminated for falsifying records. Plaintiff has not alleged that any of the defendants did anything egregious towards plaintiff or engaged in conduct rising to the level of extreme and outrageous. It is clear[*34] that suspension and termination as a result of plaintiff's failure to conduct the required investigations of families' environments in which domestic violence issues are suspected, and as a result of plaintiff's falsification of records relating to such issues, is simply not conduct that arises beyond "all possible bounds of decency." *Appleton, 254 Conn. at 211.* Therefore, Count Thirteen does not survive summary judgment. n17

------------------Footnotes---------------------

n17 Plaintiff Cohen is included in Count Thirty-three, brought by "all plaintiffs against all individual defendants," which alleges a *§ 1983* violation for having created "a chilling effect across each workplace of [DCF], wherein highly disproportional amounts of discipline and verbal harassment are dispensed upon African American male employees, the consequences of which create an overwhelming atmosphere of fear designed to discourage black males from seeking to improve their position." (At 34-35).

For the reasons stated in Section I.B. supra, the facts do not support these claims with respect to plaintiff Cohen (see also June 2005 Ruling, at 14 n.5), especially, as defense counsel points out, because plaintiff Cohen is a female. (Dkt. # 102, at 2, n.2).

------------------End Footnotes---------------

[*35]II. CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (Dkt. # 101) is granted absent objection. n18

------------------Footnotes---------------------

n18 A status/settlement conference will be held in Chambers on February 13, 2006, at: 2:00 p.m., to address the remaining five plaintiffs ( Williams, Johnson, Hood, Williamson, and Whilby).

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

Dated this 25th day of January, 2006, at New Haven, Connecticut.

Joan Glazer Margolis

United States Magistrate Judge